UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x

GREGORY FLOYD, as President of LOCAL 237,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CORINTHIANS ANDREWS, PATRICIA ARMSTEAD
and BERNICE CHRISTOPHER, on behalf of themselves
and all other persons similarly situated,

                                     Plaintiffs,

                   -against-

THE CITY OF NEW YORK,

                                     Defendant.

--------------------------------------------------------------------- x

**NOTICE OF REMOVAL**

Case No. 10 Civ. 2436 (SHS)

ECF CASE

**TO:   THE UNITED STATES DISTRICT COURT,
       SOUTHERN DISTRICT OF NEW YORK**

           Defendant The City of New York ("Defendant"), by its attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully shows this Court as follows:

           1.  On or about March 5, 2010, the Defendant was personally served with a Summons and Complaint in the above-entitled action, pending in the Supreme Court of the State of New York, County of New York, Index No. 102946/2010, naming The City of New York as Defendant therein, and setting forth the claims for relief upon which the action is based.   Copies of the Summons, dated March 5, 2010, and the Complaint, dated March 5, 2010, are annexed hereto as Exhibit "1."

           2.  The above-captioned lawsuit is a civil action of which the District Court has original jurisdiction in that it includes a cause of action which arises under the laws of the United States, pursuant to 28 U.S.C. § 1331.  This action, therefore, is removable to the District

Court without regard to the citizenship or residence of the parties, pursuant to 28 U.S.C. § 1441(b).

       3.  Plaintiffs bring this lawsuit against the Defendant seeking, *inter alia*, injunctive and monetary relief to remedy employment discrimination on the basis of sex in violation of the Equal Pay Act, 29 U.S.C. § 206(d) *et seq.*  <u>See</u> Exhibit 1 at ¶ 5.

       4.  This Notice of Removal is timely because it is being filed within thirty days (30) days of receipt of the initial pleading.  <u>See</u> 28 U.S.C. § 1446(b).

       5.  Defendant will promptly file a copy of this Notice of Removal with the Clerk of the state court in which the action has been pending.

       6.  Defendant is unaware of any previous application for the relief requested herein.

       **WHEREFORE**, Defendant respectfully requests that the above-captioned action be removed from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

Dated:      New York, New York
             March 17, 2010

                             MICHAEL A. CARDOZO
                             Corporation Counsel of the
                              City of New York
                             Attorney for Defendant
                             100 Church Street, Room 2-139
                             New York, New York 10007
                             (212) 788-7970
                             kcomfrey@law.nyc.gov

             By:                           _____
                                  Kathleen M. Comfrey
                                  Assistant Corporation Counsel

TO:    MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
Attorneys for Plaintiffs
1350 Broadway, Suite 501
P.O. Box 822
New York, New York 10018-0026
(212) 239-4999


STROOCK & STROOCK & LAVAN LLP
Attorneys for Plaintiffs
180 Maiden Lane
New York, New York 10038
(212) 806-5400

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

2010-007226

------------------------------------------------------------X
GREGORY FLOYD, as President of LOCAL 237,      :
INTERNATIONAL BROTHERHOOD OF              :
TEAMSTERS, CORINTHIANS ANDREWS,           :
PATRICIA ARMSTEAD and BERNICE             :       Index No. 102946/2010
CHRISTOPHER, on behalf of themselves           :
and all other persons similarly situated,              :       Date Filed: March 5, 2010
                                                  :
                                                  :
                         Plaintiffs,              :       **SUMMONS**
                                                  :
      -against-                                   :
                                                  :
THE CITY OF NEW YORK,                      :       Plaintiff designates New York
                                                  :       County as the place for trial.  The
                         Defendant.               :       basis for venue is residence.  See
------------------------------------------------------------X       CPLR §503.

**TO THE ABOVE NAMED DEFENDANT:**

    You are hereby summoned and required to serve upon Plaintiffs' attorney an answer to the

complaint in this action within twenty (20) days service of this Summons upon you, exclusive of the

day of service, or within thirty (30) days after service is complete if this Summons is not personally

delivered to you within the State of New York.  In the case of your failure to answer, judgment will be

taken against you by default for the relief demanded in the annexed complaint.

Dated: March 5, 2010
        New York, New York

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By: _____
        Barry J. Peek
    Melissa S. Woods
    1350 Broadway, Suite 501
    P.O. Box 822
    New York, New York 10018-0026
    (212) 239-4999

        – and –

STROOCK & STROOCK & LAVAN LLP

By: _____
        Alan M. Klinger
    180 Maiden Lane
    New York, New York 10038
    (212) 806-5400

    *Co-Counsel for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
GREGORY FLOYD, as President of LOCAL 237,   :
INTERNATIONAL BROTHERHOOD OF   :
TEAMSTERS, CORINTHIANS ANDREWS,   :
PATRICIA ARMSTEAD and BERNICE   :    Index No. _10 2946/2010_
CHRISTOPHER, on behalf of themselves   :
and all other persons similarly situated,   :    IAS Part _____
  :
  :
                Plaintiffs,   :    COMPLAINT
  :
   -against-   :    JURY TRIAL
  :    REQUESTED
THE CITY OF NEW YORK,   :
  :
               Defendant.   :
-------------------------------------------------------------------x

Plaintiffs, Gregory Floyd ("Floyd"), as President of Local 237, International

Brotherhood of Teamsters (the "Union"), and the named plaintiffs Corinthians Andrews,

Patricia Armstead, and Bernice Christopher (collectively, the "Named Plaintiffs") and together

with Floyd, the Union and the class members they represent (collectively, the "Plaintiffs"), by

and through their attorneys, Meyer, Suozzi, English & Klein, P.C. and Stroock & Stroock &

Lavan LLP, for their Complaint, allege as follows:

## NATURE OF ACTION

1. The Named Plaintiffs and the class members they represent serve as School

Safety Agents, who provide security for the City School District of the City of New York (the

"City Schools"). Plaintiffs allege that defendant the City of New York (the "City" or

"Defendant") has discriminated against the Named Plaintiffs and the class members they

represent by setting their salaries and paying them at a rate that is substantially lower than the

wages paid to the predominantly male Special Officer title for the performance of substantially

equal work, particularly those Special Officers who perform work for the City's Health and

Hospitals Corporation, the Department of Homeless Services, and Human Resources Administration/Department of Social Services.

2.  The School Safety Agent title is a female-dominated workforce employed by the City.  Approximately 70% of School Safety Agents are female.

3.  The Special Officer title is a male-dominated workforce employed by the City.  Approximately 66% of Special Officers are male.

4.  The pay rates for both the School Safety Agents and the Special Officers are set forth in the Collective Bargaining Agreement for the period September 13, 2008 through September 25, 2010, by and between the City and related public employers (defined therein jointly as the "Employer") and the Union (the "Collective Bargaining Agreement").  A true and correct copy of the Collective Bargaining Agreement is annexed hereto as Exhibit A.

5.  Plaintiffs bring this action seeking injunctive and monetary relief to remedy employment discrimination on the basis of sex in violation of the Equal Pay Act, 29 U.S.C. §§ 206(d) *et seq.* (the "EPA") and the New York State Equal Pay Act, N.Y. Labor Law §§ 194 *et seq.* (the "NYEPA").

## PARTIES

6.  Plaintiff Floyd is a resident of the State of New York, and is the President of the Union.

7.  The Union is an unincorporated association with its principal place of business in the City and County of New York and is the recognized bargaining agent for more than 24,000 City employees working in government agencies and certain Long Island municipalities, including the Named Plaintiffs and the class members they represent.

8.  Plaintiff Corinthians Andrews has been a School Safety Agent since 1986 and currently works at Borough Command Training Unit School.

- 2 -

9.      Plaintiff Patricia Armstead has been a School Safety Agent since 1984 and currently works at South Shore High School.

10.     Plaintiff Bernice Christopher has been a School Safety Agent since 1981 and currently works at David A. Boodie Junior High School.

11.     Defendant the City is a municipal corporation organized and existing under the laws of the State of New York.

12.     Defendant employs School Safety Agents and Special Officers in the same establishment within the meaning of the EPA and NYEPA. The Collective Bargaining Agreement, pursuant to which each of the School Safety Agents and Special Officers are employed, defines the City as the "Employer."

13.     The City Commissioner of Labor Relations, James F. Hanley, is the lead negotiator for the City and each agency with respect to the terms and conditions of employment for the School Safety Agents and Special Officers as set forth in the Collective Bargaining Agreement.

## JURISDICTION AND VENUE

14.     This action arises under the EPA and the NYEPA.

15.     Venue is proper in New York County pursuant to CPLR 503(a) because some of the parties reside in this county and the challenged policies and practices were adopted in this county.

## COLLECTIVE ACTION

16.     With respect to the EPA claim, the Named Plaintiffs bring this action pursuant to 29 U.S.C. §§ 206(d) *et seq.* on behalf of themselves and all other persons similarly situated. The members of the class are all those employed by the City in the title of School

Safety Agents as of the commencement of this action and at any time during the preceding three-year period.

## CLASS ACTION

17.     With respect to the NYEPA claim, the named Plaintiffs bring this action pursuant to Article 9 of the Civil Practice Law and Rules ("CPLR") on behalf of themselves and all others similarly situated.

18.     The members of this class are all those employed by the City as School Safety Agents as of the commencement of this action and at any time during the preceding six-year period.

19.     There are approximately 5,000 School Safety Agents.  Accordingly, the class is so numerous that joinder of all members is impracticable.

20.     The named Plaintiffs' claims are typical of the claims of the other members of the class.  They have all sustained substantial damages as a result of the unlawful acts of the Defendant as described herein.

21.     Common questions of law and fact exist as to the class, which predominate over any questions affecting only individual members of the class.  These common questions of law and fact include, but are not limited to, whether the job duties performed by School Safety Agents are substantially similar to those performed by Special Officers, such that the stark disparity in pay rates (which are standardized and contained in the Collective Bargaining Agreement) is unlawful.

22.     The claims or defenses of the representative parties are typical of the claims or defenses of the class because each Named Plaintiff is a School Safety Agent, with the same job responsibilities and subject to the same pay scale.

23.     The representative parties will fairly and adequately protect the interests of the class because the Union is the statutorily-recognized bargaining agent for the Named Plaintiffs herein, and Plaintiff Floyd is the President of the Union. These Plaintiffs have associational standing to protect the interests of their members. The Named Plaintiffs have interests in this action, which are coincident with and not adverse to the members of the class that they seek to represent, have substantial financial interest in this action, and will therefore adequately protect the interests of the class.

24.     Plaintiffs' counsel are experienced litigators and will vigorously prosecute this action on behalf of the class.

25.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy because it avoids duplication of potentially thousands of individual claims based upon the same law and facts as well as the risk of inconsistent results. In addition, many class members' claims might otherwise go unlitigated given that the class members' resources and size of each claim is small relative to the cost of litigation.

## FACTUAL ALLEGATIONS

26.     The Named Plaintiffs are School Safety Agents who are paid less than their counterparts who are employed by the City as Special Officers.

27.     The Office of Labor Relations acts as the City's representative in the conduct of all labor relations, as well as lead negotiator between the City and the Union, with respect to all titles in the bargaining units covered by the Collective Bargaining Agreement, including School Safety Agents and Special Officers.

28.     School Safety Agents and Special Officers are employed by the City, which has a centralized personnel administration. For example, the New York City Office of Payroll Administration is the central City office responsible for, among other things, City

employee and retiree payrolls, maintaining and enforcing uniform payroll policies and procedures, coordinating payroll matters among central agencies, ensuring compliance with federal, state, and City taxing authorities, and managing and reconciling the City's payroll accounts.

29.     The titles of School Safety Agent and Special Officer are both classified as competitive titles in the classified civil service of the City of New York.

30.     All persons who wish to take the examination to become a Special Officer or a School Safety Agent submit an online application for the applicable examination through a centralized application site established by the City of New York Department of Citywide Administrative Services ("DCAS") Application Unit.  In addition, DCAS establishes General Examination Regulations that are applicable to the examinations required to be taken by applicants for School Safety Agent and Special Officer positions.

31.     Upon information and belief, the tests administered by the City for the position of School Safety Agent and Special Officer are substantially similar.

32.     To become a School Safety Agent, you must achieve a score of at least 70% on a multiple choice test, which includes questions designed to assess:  written comprehension, written expression, memorization, problem sensitivity, deductive reasoning, inductive reasoning, information ordering, spatial orientation, and visualization.  An applicant's score on this test determines his or her place on an eligible list.

33.     To become a Special Officer, you must achieve a score of at least 70% on a multiple choice test, which includes questions designed to assess:  written comprehension, written expression, memorization, problem sensitivity, deductive reasoning, inductive

reasoning, information ordering, flexibility of closure, and visualization.  An applicant's score

on this test determines his or her place on an eligible list.

## Job Duties and Responsibilities

      34.    School Safety Agents perform equal work on jobs requiring equal skill,

effort and responsibility as Special Officers and do so under similar working conditions.

      35.    The duties and responsibilities of a School Safety Agent include:

    a.   patrolling school buildings and the surrounding premises to maintain order, preserve the peace, and safeguard life and property against fire, vandalism, theft, etc.;

    b.   protecting students from unauthorized individuals entering or remaining in the schools and protecting students as they enter and exit the buildings, including at times, patrolling the public sidewalks between the school buildings and subway entrances;

    c.   intervening in verbal or physical altercations between students and/or faculty, including, at times, gang and drug-related violence;

    d.   confiscating weapons and other contraband from students;

    e.   effecting arrests and/or issuing summonses to law violators, notifying the supervisor, the borough school Security Office Central school security office and the local police precinct; escorting persons in custody to the local precinct; processing arrests, and testifying in court regarding arrests;

    f.   giving routine information to visitors and directing them to the proper personnel and offices.  Requesting identification of, and removing from the premises, any unauthorized persons;

    g.   maintaining records of persons entering and leaving buildings. At times, monitoring security camera systems to ensure that multiple entrances to a facility are secure;

    h.   apprehending students and others violating Department of Education Rules and Regulations; preparing reports and testifying regarding these violations at a Superintendent's or Principal's hearing;

i.   making required oral and written reports on all unusual occurrences and criminal incidents, and actions taken in response to such events;

j.   operating and maintaining metal detection devices at relevant locations;

k.   transporting detainees to appropriate booking facilities;

l.   testifying in court regarding school-related incidents and arrests;

m.   remaining available on an "on-call" basis to patrol and protect public areas for non-school-related emergencies, including buildings suspected to be targeted for violence, such as synagogues following the September 11, 2001 terrorist attacks;

n.   aiding sick and injured persons and students, and calling ambulances when necessary;

o.   recording daily activities in memo book;

p.   operating a two-way radio; and

q.   providing information to visitors.

36.   The job duties and responsibilities of a Special Officer include:

a.   performing work of ordinary difficulty and responsibility relating to physical security, safety, loss prevention and maintenance of order, including patrolling designated areas of public buildings to maintain order, preserve the peace, and safeguard life and property against fire, vandalism, theft, etc.;

b.   giving routine information to visitors and clients and directing them to the proper individuals and offices;

c.   discouraging and ejecting loiterers and disorderly persons, including, when appropriate, arresting and issuing summonses to law violators on premises;

d.   transporting, escorting and/or arranging for transport of persons in custody to police precinct and having arrest recorded on police blotter, preparing and transmitting documents related to arrest and testify in court;

e.   reporting security incidents and unusual occurrences by telephone or radio and making subsequent written reports;

     f.   providing assistance to the sick, injured, mentally and physically disabled, calling for ambulance and/or medical attention when necessary, and completing and forwarding forms thereon.

     g.   recording daily actions in memo book;

     h.   keeping bulletin board in his or her area current;

     i.   maintaining records of persons entering or leaving buildings outside regular hours of employment; and

     j.   making clock rounds as required; may control vehicular traffic on grounds and/or premises.

37. Upon information and belief, the positions of School Safety Agent and Special Officer require the same degree of skill, including the same type of experience, training, education, and ability.

38. The qualification requirements for the School Safety Agent and Special Officer positions are substantially similar.

39. To be considered for employment as a School Safety Agent, an individual must:

     a.   Have a four-year high school diploma or its equivalent;

     b.   Pass a civil service exam;

     c.   Be at least twenty-one years of age;

     d.   Be a United States citizen and resident of the City;

     e.   Pass a drug screening test;

     f.   Pass a character and background investigation (including payment of a $75.00 fingerprinting fee);

     g.   Meet minimum medical and psychological requirements; and

     h.   Maintain NYC Special Patrolman status.

40. To be considered for employment as a Special Officer, an individual must:

a. Have a four-year high school diploma or its educational equivalent;

b. Pass a civil service exam;

c. Be at least twenty years of age;

d. Be a United States citizen and resident of the City;

e. Be of good character; and

f. Maintain peace officer status.

41. The training requirements for the School Safety Agent and Special Officer positions are substantially similar.

42. Upon successful completion of the preliminary testing process, described above, a School Safety Agent must undergo fourteen weeks of training at the NYPD School Safety Agent Recruit Training School.

43. Upon successful completion of the preliminary testing process, a Special Officer must undergo five weeks of training through The City University of New York Public Safety Academy.

44. Upon information and belief, School Safety Agents and Special Officers must complete a minimum one-year probationary period upon commencement of employment in such position.

45. The School Safety Agent and Special Officers positions require the same amount of effort in that each position demands substantially the same amount of physical or mental exertion.

46. School Safety Agents and Special Officers exercise substantially the same degree of responsibility, require the same degree of accountability and entail job duties with substantially equal performance requirements.

**School Safety Agents and Special Officers**
**Perform Their Duties Under Similar Working Conditions**

47. School Safety Agents and Special Officers perform their job duties and responsibilities under similar working conditions.

48. School Safety Agents and Special Offers are required to provide security within public buildings, facing similar types of hazards.

49. School Safety Agents secure multi-level public school buildings, and patrol the perimeters of those buildings, including surrounding City streets. In the course of performing their duties, School Safety Agents face potential violence from both students and outsiders and must protect students and school personnel from authorized visitors and unauthorized third parties who enter and attempt to enter the schools and their perimeters.

50. Special Officers secure multi-level public buildings, such as City hospitals and social service centers, and patrol the perimeters of those buildings, including surrounding City streets. In the course of performing their duties, Special Officers face potential violence from visitors and must protect building personnel from authorized visitors and unauthorized third parties who enter and attempt to enter the buildings and their perimeters.

51. School Safety Agents and Special Officers wear substantially similar summer and winter uniforms.

52. School Safety Agent uniforms consist of eight-point cap, long or short sleeve shirt and tie, duty trousers, black shoes or boots, and an optional v-neck sweater, as well as a duty jacket, optional turtle neck, and black gloves in the winter.

53. Special Officer uniforms consist of an eight-point hat or a patched blue baseball cap, short or long sleeve shirt, tie in winter, standard or semi-tactical pants, trouser

belt, duty belt, black socks and black shoes or boots, and a duty jacket and black gloves in winter.

54. School Safety Agents and Special Officers carry substantially similar equipment while on duty.

55. Mandatory equipment for a School Safety Agent includes a black leather pen and pencil holder, memo book and black leather holder, flashlight and flashlight holder, black scabbard holder, handcuffs, black leather handcuffs holder, spare set of handcuffs and a protective mask.

56. Mandatory equipment for a Special Officer includes a black leather pen and pencil holder, memo book and black leather holder, flashlight and flashlight holder; expandable ASP baton 21-inch, black scabbard holder, handcuffs, black leather handcuffs holder, and spare set of handcuffs and a protective mask.

**Compensation**

57. The current maximum annual pay rate for a School Safety Agent is $35,349.

58. The current maximum annual pay rate for a Special Officer is $42,332.

59. Depending upon their seniority, School Safety Agents may be paid up to $6,982 less than their predominantly male counterparts in the Special Officer title despite the fact that School Safety Agents perform substantially similar work under similar working conditions.

60. While the starting salaries of School Safety Agents and Special Officers are approximately equal, within three years of service, they diverge dramatically although School Safety Agents and Special Officers continue to perform substantially similar work under similar working conditions.

61. School Safety Agents and Special Officers are eligible to participate in substantially similar employee benefit programs, such as group health plans and pension plans and receive substantially similar paid time off benefits.

## AS AND FOR PLAINTIFFS' FIRST CAUSE OF ACTION
## (EQUAL PAY ACT)

62.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 60 as if fully set forth herein.

63.    This claim is brought under the federal Equal Pay Act, 29 U.S.C. § 206(d) *et seq.*

64.    Defendant compensates the predominantly female School Safety Agent workforce at a lower rate of pay than it compensates the predominantly male Special Officers.

65.    School Safety Agents and Special Officers perform equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions within the same establishment.

66.    The acts, practices and policies of Defendant, as set forth above, constitute ongoing discrimination against the Named Plaintiffs and the class members they represent to whom they are similarly situated in violation of the Equal Pay Act, 29 U.S.C. §§ 206(d) *et seq.*

## AS AND FOR PLAINTIFFS' SECOND CAUSE OF ACTION
## (NEW YORK STATE EQUAL PAY ACT)

67.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 65 as if fully set forth herein.

68.    This claim is brought under the New York State Equal Pay Act, N.Y. Labor Law §§ 194 *et seq.*

69.     Defendant compensates the predominantly female School Safety Agent workforce at a lower rate of pay than it compensates the predominantly male Special Officers.

70.     School Safety Agents and Special Officers perform equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions within the same establishment.

71.     The acts, practices and policies of Defendant, as set forth above, constitute ongoing discrimination against the Named Plaintiffs and the class members they represent in violation of the New York State Equal Pay Act, N.Y. Labor Law §§ 194 *et seq.*

**WHEREFORE,** Plaintiffs respectfully request that this Court:

(i)     Designate this action as a collective action;

(ii)    Designate this action as a class action;

(iii)   Certify the class of Plaintiffs described herein pursuant to the New York State Equal Pay Act;

(iv)    Declare that Defendant discriminated against Plaintiffs in violation of the Equal Pay Act and the New York State Equal Pay Act;

(v)     Enter a permanent injunction enjoining the Defendant from violating the Equal Pay Act and the New York State Equal Pay Act by paying women at rates lower than it pays men;

(vi)    Award Plaintiffs back pay together with all other benefits to which Plaintiffs are entitled, with prejudgment interest;

(vii)   Award Plaintiffs liquidated damages due to Defendant's willful and intentional conduct directed at Plaintiffs in violation of their rights;

(viii)    Award Plaintiffs reasonable attorneys' fees, expenses and costs of this proceedings; and

(ix)    Grant such other relief as the Court deems is just and proper.

Dated: New York, New York
March 5, 2010

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By: _____
Barry J. Peek
Melissa S. Woods
1350 Broadway, Suite 501
P.O. Box 822
New York, New York 10018-0026
(212) 239-4999

– and –

STROOCK & STROOCK & LAVAN LLP

By: _____
Alan M. Klinger
180 Maiden Lane
New York, New York 10038
(212) 806-5400
*Co-Counsel for Plaintiffs*

- 15 -

106348

## VERIFICATION

STATE OF NEW YORK    )
                         : ss.:
COUNTY OF NEW YORK  )

        Gregory Floyd, being duly sworn, says: that he is the President of Local 237,

International Brotherhood of Teamsters, a plaintiff in the within proceeding, united in interest

with the other plaintiffs, he has read the foregoing Complaint and knows the contents thereof;

the same is true to plaintiff's own knowledge, except as to matters stated to be alleged upon

information and belief, and as to those matters, he believes it to be true.

                                         _____
                                          Gregory Floyd

Sworn to before me this
3 rd day of March, 2010

_____
Notary Public

**LILLIAN RODRIGUEZ**
**NOTARY PUBLIC, STATE OF NEW YORK**
**No. 01RO4708079**
**Qualified in Richmond County**
**Commission Expires November 30, 2013**

106349

# EXHIBIT A

# SPECIAL OFFICERS

## CONTRACT
### SEPTEMBER 13, 2008 - SEPTEMBER 25, 2010



INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 237
216 WEST 14TH STREET
NEW YORK, N.Y. 10011



Local 237, Teamsters
Executive Board

President: Gregory Floyd
Secretary-Treasurer: Ruben Torres

Vice President: Richard Hendershot
Recording Secretary: Patricia Stryker

Trustees

Steven Gordon          Noreen Hollingsworth          Edmund Kane

International Brotherhood of Teamsters
City Employees Union Local 237
216 West 14th Street
New York, N.Y. 10011
(212) 924-2000



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

TO:          HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM:     JAMES F. HANLEY, COMMISSIONER

SUBJECT: EXECUTED CONTRACT: SPECIAL OFFICERS

TERM:      SEPTEMBER 13, 2008 TO SEPTEMBER 25, 2010


  Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations and the Health and Hospitals Corporation on behalf of the City of New York and the International Brotherhood of Teamsters, AFL-CIO, Local 237 on behalf of the incumbents of positions listed in Article I of said contract.

  The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED: JUL 1 3 2009

```
┌─────────────────────────────────────┐
│      OFFICE OF LABOR RELATIONS       │
│           REGISTRATION               │
│                                      │
│  OFFICIAL            CONTRACT        │
│                                      │
│                                      │
│                                      │
│                                      │
│  NO:                  DATE:          │
│  1 0.0 0 3         JUL 1 3 2009      │
└─────────────────────────────────────┘
```

# Local 237, IBT
## 2008-2010 Special Officers, et al. Agreement

### TABLE OF CONTENTS

ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION ............................................ 2

ARTICLE II - DUES CHECKOFF ........................................................ 4

ARTICLE III - SALARIES ........................................................ 5

ARTICLE IV - WELFARE FUND ........................................................ 22

ARTICLE V - PRODUCTIVITY AND PERFORMANCE ........................................................ 23

ARTICLE VI - GRIEVANCE PROCEDURE ........................................................ 24

ARTICLE VII - BULLETIN BOARDS: EMPLOYER FACILITIES ........................................................ 32

ARTICLE VIII - NO STRIKES ........................................................ 32

ARTICLE IX - CITYWIDE ISSUES ........................................................ 32

ARTICLE X - UNION ACTIVITY ........................................................ 32

ARTICLE XI - LABOR-MANAGEMENT COMMITTEE ........................................................ 32

ARTICLE XII - FINANCIAL EMERGENCY ACT ........................................................ 33

ARTICLE XIII - APPENDICES ........................................................ 33

ARTICLE XIV - SAVINGS CLAUSE ........................................................ 33

Appendix A ........................................................ 35

10.003.

# Local 237, IBT
## 2008-2010 Special Officers, et al. Agreement

*AGREEMENT* entered into this 13 day of July , 2009 by and between the **City of New York** and related public employers pursuant to and limited to their respective elections or statutory requirement to be covered by the New York City Collective Bargaining Law and their respective authorizations to the City to bargain on their behalf and the **New York City Health and Hospitals Corporation** (hereinafter referred to jointly as the "Employer"), and **Local 237, International Brotherhood of Teamsters, AFL-CIO** (hereinafter referred to as the "Union"), for the period from September 13, 2008 to September 25, 2010.

## W I T N E S S E T H :

**WHEREAS,** the parties hereto have entered into collective bargaining and desire to reduce the results thereof to writing,

**NOW, THEREFORE,** it is mutually agreed as follows:

## ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION

### Section 1.

The Employer recognizes the Union as the sole and exclusive collective bargaining representative for the bargaining unit set forth below, consisting of employees of the Employer, wherever employed, whether full-time, part-time per annum, hourly or per diem, in the below listed title(s), and in any successor title(s) that may be certified by the Board of Certification of the Office of Collective Bargaining to be part of the unit herein for which the Union is the exclusive collective bargaining representative and in any positions in Restored Rule X titles of the Classified Service the duties of which are or shall be equated by the City Personnel Director and the Director of the Budget for salary purposes to any of the below listed title(s):

| TC# | TITLE |
| --- | --- |
| 31313 | Asbestos Handler |
| 31314 | Asbestos Handler Supervisor |
| 80605 | Assistant Building Custodian**** |
| 91105 | Assistant Bridge Operator |
| 12207 | Assistant Stock Handler** |
| 41122 | Associate Parking Control Specialist, Level I and II |
| 35143 | Associate Taxi and Limousine Inspector, Levels I and II |
| 34620 | Associate Water Use Inspector, Level I, II, III |
| 31815 | Blasting Inspector |
| 91110 | Bridge Operator |
| 91135 | Bridge Operator-in-Charge |
| 80610 | Building Custodian**** |
| 80609 | Custodian, Level I, II, III, IV |
| 71022 | Evidence and Property Control Specialist Level I and II |

10.003

| | |
|---|---|
| 70830 | Hospital Security Officer |
| 81901 | Hostler |
| 80601 | Junior Building Custodian**** |
| 03977 | Maintenance and Control Planner |
| 03978 | Maintenance Planning and Control Supervisor |
| 41120 | Parking Control Specialist |
| 33415 | Pipe Laying Inspector |
| 00017 | Preventive Maintenance Inspector |
| 05186 | Principal Special Officer (HRA)*** |
| 12225 | Principal Storekeeper** |
| 34660 | Principal Water Use Inspector |
| 00065 | Refrigeration Service Helper |
| 00066 | Refrigeration Service Mechanic |
| 70204 | School Guard (School Safety Agent) |
| 31835 | Senior Blasting Inspector |
| 80635 | Senior Building Custodian**** |
| 33435 | Senior Pipe Laying Inspector |
| 70815 | Senior Special Officer |
| 12220 | Senior Storekeeper** |
| 35134 | Senior Taxi and Limousine Inspector |
| 35136 | Senior Taxi and Limousine Inspector (Motor Vehicles)** |
| 35135 | Senior Transportation Inspector |
| 34635 | Senior Water Use Inspector** |
| 70810 | Special Officer |
| 12214 | Stock Handler** |
| 12200,960910,960920 | Stock Worker, Level I and II |
| 12215 | Storekeeper** |
| 31840 | Supervising Blasting Inspector |
| 00067 | Supervising Refrigeration Service Technician |
| 70817 | Supervising Special Officer |
| 35140 | Supervising Taxi and Limousine Inspector |
| 35142 | Supervising Taxi and Limousine Inspector (Motor Vehicles) |
| 34655 | Supervising Water Use Inspector** |
| 90935 | Supervisor (Traffic Device Maintenance) ** |
| 91160 | Supervisor of Bridge Operations**** |
| 80660 | Supervisor of Building Custodians |
| 12202,962410,960430 | Supervisor of Stock Workers, Level I, II, III |
| 90904 | Supervisor of Traffic Device Maintainers |
| 35116 | Taxi and Limousine Inspector |
| 35117 | Taxi and Limousine Inspector (Motor Vehicles)** |
| 35115 | Transportation Inspector |
| 34600 | Water Meter Reader** |
| 34601 | Water Use Inspector Trainee |
| 92205 | Bricklayer * |
| 92210 | Cement Mason * |
| 90710 | Elevator Mechanic * |
| 90711 | Elevator Mechanic's Helper* |
| 90719 | Harness Maker * |
| 92320 | Horseshoer * |
| 90698,907260 | Maintenance Worker * |
| 92225 | Mason's Helper * |
| 92235 | Plasterer * |
| 90735 | Roofer * |
| 92271 | Supervisor Bricklayer * |
| 90769 | Supervisor Elevator Mechanic * |
| 92272 | Supervisor Plasterer * |
| 90775 | Supervisor Roofer * |

10.003.

Note Article I:   \*       Indicated titles come within the purview of Section 220 of the New York State Labor Law. The rates of pay and perquisites are governed by the relevant Comptroller Determination. Therefore, Articles III, IV and IX are inapplicable to employees in this Category. All employees thus indicated are covered by this agreement solely for the non-economic provisions contained herein. Provisions of this agreement from which these employees have been specifically excluded has been indicated throughout this agreement.

            \*\*       Earmarked for Present Incumbents only.

            \*\*\*       Excluding specific positions not in the bargaining unit.

            \*\*\*\*       Title consolidated into new title, Custodian, with four assignment levels on May 25, 1997.

## Section 2.

The terms "Employee" and "Employees" as used in this Agreement shall mean only those persons in the unit described in Section 1 of this Article.

# ARTICLE II - DUES CHECKOFF

## Section 1.

a.     The Union shall have the exclusive right to the checkoff and transmittal of dues on behalf of each employee in accordance with the Mayor's Executive Order No. 98, dated May 15, 1969, entitled "Regulations Relating to the Checkoff of Union Dues" and in accordance with the Mayor's Executive Order No. 107, dated December 29, 1986, entitled "Procedures for Orderly Payroll Check-Off of Union Dues and Agency Shop Fees."

b.     Any Employee may consent in writing to the authorization of the deduction of dues from the Employee's wages and to the designation of the Union as the recipient thereof. Such consent, if given, shall be in a proper form acceptable to the City, which bears the signature of the Employee.

## Section 2.

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference into this Agreement.

10003

# ARTICLE III - SALARIES

## Section 1.

a.   This Article III is subject to the provisions, terms and conditions of the Alternative Career and Salary Pay Plan Regulations, dated March 15, 1967 as amended, except that the specific terms and conditions of this Article shall supersede any provisions of such Regulations inconsistent with this Agreement subject to the limitations of applicable provisions of law.

b.   Unless otherwise specified, all salary provisions of this Agreement, including minimum and maximum salaries, advancement or level increases, general increases, education differentials and any other salary adjustments, are based upon a normal work week of varying hours of duration as indicated in Section 1 (c) of this Article. In accordance with Article IX, Section 24 of the 1995 – 2001 Citywide Agreement, an Employee who works on a full-time, per-diem basis shall receive their base salary (including salary increment schedules) and/or additions-to-gross payment in the same manner as a full-time, per-annum employee. An Employee who works on a part-time per annum basis and who is eligible for any salary adjustments provided in this Agreement shall receive the appropriate pro-rata portion of such salary adjustment computed on the relationship between the number of hours regularly worked each week by such Employee and the number of hours in the said normal work week, unless otherwise specified.

c.   Employees who work on a part time per diem or hourly basis and who are eligible for any salary adjustment provided in this Agreement shall receive the appropriate pro-rata portion of such salary adjustment computed as follows, unless otherwise specified:

Per diem rate   -     1/261 of the appropriate minimum basic salary.

Hourly Rate     -     40 hour week basis - 1/2088 of the appropriate minimum basic salary.

                -     37.5 hour week basis 1/1957.5 of the appropriate minimum basic salary.

                -     35 hour week basis 1/1827 of the appropriate minimum basic salary.

d.   The maximum salary for a title shall not constitute a bar to the payment of any salary adjustment or pay differentials provided for in this Agreement but the said increase above the maximum shall not be deemed a promotion.

e.   Employees in titles preceded by an asterisk (*) in Article I, Section 1 are excluded from the provisions of Article III, including all sections contained herein.



## Section 2.

Employees in the following titles(s) shall be subject to the following specified salary(ies), salary adjustment(s) and/or salary range(s):

## a. **Effective October 10, 2008 (first year rate)**

| TITLE | i. Minimum (1)Hiring Rate *** | (2)Incumbent Rate | ii. Maximum Rate |
|---|---|---|---|
| Asbestos Handler | $61,465 | $69,456 | Flat rate |
| Asbestos Handler Supervisor | $64,541 | $72,931 | Flat rate |
| Assistant Bridge Operator @ | $30,093 | $34,005 | $40,645 |
| Assistant Stock Handler * | $27,121 | $30,647 | $40,882 |
| Associate Parking Control Specialist | | | |
| Level I | $43,086 | $48,687 | $53,555 |
| Level II | $48,828 | $55,176 | $63,292 |
| Associate Taxi & Limousine Inspector | | | |
| Level I | $39,243 | $44,345 | $53,336 |
| Level II | $43,565 | $49,228 | $60,148 |
| Associate Water Use Inspector | | | |
| Level I | $43,250 | $48,872 | $61,149 |
| Level II | $49,770 | $56,240 | $63,611 |
| Level III | $56,293 | $63,611 | $70,977 |
| Blasting Inspector | $36,427 | $41,163 | $50,798 |
| Bridge Operator | | | |
| Level I | $30,093 | $34,005 | $40,645 |
| Level II | $34,012 | $38,433 | $47,282 |
| Bridge Operator-In-Charge | $38,904 | $43,962 | $49,495 |
| Custodian | | | |
| Level I | $27,800 | $31,414 | $39,168 |
| Level II | $29,488 | $33,322 | $47,182 |
| Level III | $37,139 | $41,967 | $56,092 |
| Level IV | $44,954 | $50,798 | $67,411 |
| Evidence & Property Control Specialist | | | |
| Level I | $41,627 | $47,038 | $59,584 |
| Level II | $47,873 | $54,096 | $66,641 |
| Hospital Security Officer | $45,913 | $51,882 | Flat Rate |
| Hostler | $29,150 | $32,940 | $40,194 |
| Maint. Planning & Control Supervisor | $44,609 | $50,408 | $59,333 |
| Maintenance & Control Planner | $38,083 | $43,034 | $52,032 |
| Parking Control Specialist | $33,750 | $38,137 | $45,441 |
| Parking Control Specialist Trainee ####, @ | See footnote | $31,820 | Flat Rate |
| After one year | | $34,183 | |
| Pipe Laying Inspector | $36,427 | $41,163 | $50,798 |
| Preventive Maintenance Inspector | $36,142 | $40,840 | $50,634 |
| Principal Special Officer (DSS) ** | $53,009 | $59,900 | $64,199 |
| Principal Storekeeper * | $45,658 | $51,593 | $70,442 |
| Refrigeration Service Helper | $28,341 | $32,025 | $37,273 |
| Refrigeration Service Mechanic | $33,456 | $37,805 | $44,552 |
| School Guard | $30,057 | $33,964 | Flat Rate |
| (School Safety Agent) | $14.41 | $16.28 | per hour |
| Senior Blasting Inspector | $40,319 | $45,560 | $56,475 |
| Senior Pipe Laying Inspector | $40,319 | $45,560 | $56,475 |
| Senior Special Officer | $40,073 | $45,282 | Flat Rate |

10003

| | | | |
|---|---|---|---|
| Senior Storekeeper * | $37,846 | $42,766 | $58,059 |
| Senior Taxi & Limousine Inspector | $39,243 | $44,345 | $53,336 |
| Sr. Taxi & Limousine Inspector (M.V.) * | $39,243 | $44,345 | $53,336 |
| Senior Transportation Inspector | $36,427 | $41,163 | $50,798 |
| Senior Water Use Inspector * | $37,206 | $42,043 | $53,111 |
| Special Officer | | | |
|     Hiring Rate # | $29,096 | $32,879 | |
|     After 1 Year # | | $34,207 | |
|     After 2 Years # | | $35,350 | |
|     After 3 Years # | | $40,704 | |
| Stock Handler * | $29,916 | $33,805 | $44,730 |
| Stock Worker | | | |
|     Level I | $27,121 | $30,647 | $40,882 |
|     Level II | $29,916 | $33,805 | $44,730 |
| Storekeeper * | $32,249 | $36,441 | $49,810 |
| Supervising Blasting Inspector ##### | $44,864 | $50,696 | $62,096 |
| Suprv. Refrigeration Service Tech. | $36,725 | $41,499 | $53,555 |
| Supervising Special Officer | $46,054 | $52,041 | Flat Rate |
| Sprvsg Taxi & Limousine Inspector | $43,565 | $49,228 | $60,148 |
| Sprvsg Taxi & Limousine Insp. (MV)* | $43,565 | $49,228 | $60,148 |
| Supervising Water Use Inspector * | $37,206 | $42,043 | $53,111 |
| Supervisor (Traffic Device Maint.) * | $46,117 | $52,112 | Flat Rate |
| Supervisor Of Bridge Operations | $47,588 | $53,774 | $55,985 |
| Supervisor of Stock Workers | | | |
|     Level I | $32,249 | $36,441 | $49,810 |
|     Level II | $37,846 | $42,766 | $58,059 |
|     Level III | $45,658 | $51,593 | $70,442 |
| Supervisor Of Traffic Device Maintainers | | | |
|     Minimum ### | $47,169 | $53,301 | |
|     After 1 Year ### | | $54,133 | |
| (4 Increments)  After 2 Years ### | | $54,966 | |
|     After 3 Years ### | | $56,545 | |
|     After 4 Years ### | $52,832 | $59,700 | |
| Taxi & Limousine Inspector | $33,360 | $37,697 | $47,046 |
| Taxi & Limousine Inspector (M.V.) * | $33,360 | $37,697 | $47,046 |
| Transportation Inspector | $32,234 | $36,424 | $45,103 |
| Water Meter Reader * | $27,419 | $30,984 | Flat Rate |
| Water Use Inspector | | | |
| | $37,928 | $42,859 | $52,681 |
| Water Use Inspector Trainee ## | $27,419 | $30,984 | $33,957 |

10.003

## b. **Effective October 10, 2008 (second year rate)**

| TITLE | i. Minimum (1)Hiring Rate *** | (2)Incumbent Rate | ii. Maximum Rate |
|---|---|---|---|
| Asbestos Handler | $63,142 | $69,456 | Flat rate |
| Asbestos Handler Supervisor | $66,301 | $72,931 | Flat rate |
| Assistant Bridge Operator @ | $30,914 | $34,005 | $40,645 |
| Assistant Stock Handler * | $27,861 | $30,647 | $40,882 |
| Associate Parking Control Specialist | | | |
| Level I | $44,261 | $48,687 | $53,555 |
| Level II | $50,160 | $55,176 | $63,292 |
| Associate Taxi & Limousine Inspector | | | |
| Level I | $40,314 | $44,345 | $53,336 |
| Level II | $44,753 | $49,228 | $60,148 |
| Associate Water Use Inspector | | | |
| Level I | $44,429 | $48,872 | $61,149 |
| Level II | $51,127 | $56,240 | $63,611 |
| Level III | $57,828 | $63,611 | $70,977 |
| Blasting Inspector | $37,421 | $41,163 | $50,798 |
| Bridge Operator | | | |
| Level I | $30,914 | $34,005 | $40,645 |
| Level II | $34,939 | $38,433 | $47,282 |
| Bridge Operator-In-Charge | $39,965 | $43,962 | $49,495 |
| Custodian | | | |
| Level I | $28,558 | $31,414 | $39,168 |
| Level II | $30,293 | $33,322 | $47,182 |
| Level III | $38,152 | $41,967 | $56,092 |
| Level IV | $46,180 | $50,798 | $67,411 |
| Evidence & Property Control Specialist | | | |
| Level I | $42,762 | $47,038 | $59,584 |
| Level II | $49,178 | $54,096 | $66,641 |
| Hospital Security Officer | $47,165 | $51,882 | Flat Rate |
| Hostler | $29,945 | $32,940 | $40,194 |
| Maint. Planning & Control Supervisor | $45,825 | $50,408 | $59,333 |
| Maintenance & Control Planner | $39,122 | $43,034 | $52,032 |
| Parking Control Specialist | $34,670 | $38,137 | $45,441 |
| Parking Control Specialist Trainee ####, @ | See footnote | $31,820 | Flat Rate |
| After one year | | $34,183 | |
| Pipe Laying Inspector | $37,421 | $41,163 | $50,798 |
| Preventive Maintenance Inspector | $37,127 | $40,840 | $50,634 |
| Principal Special Officer (DSS) ** | $54,455 | $59,900 | $64,199 |
| Principal Storekeeper * | $46,903 | $51,593 | $70,442 |
| Refrigeration Service Helper | $29,114 | $32,025 | $37,273 |
| Refrigeration Service Mechanic | $34,368 | $37,805 | $44,552 |
| School Guard | $30,876 | $33,964 | Flat Rate |
| (School Safety Agent) | $14.80 | $16.28 | per hour |
| Senior Blasting Inspector | $41,418 | $45,560 | $56,475 |
| Senior Pipe Laying Inspector | $41,418 | $45,560 | $56,475 |
| Senior Special Officer | $41,165 | $45,282 | Flat Rate |
| Senior Storekeeper * | $38,878 | $42,766 | $58,059 |
| Senior Taxi & Limousine Inspector | $40,314 | $44,345 | $53,336 |
| Sr. Taxi & Limousine Inspector (M.V.) * | $40,314 | $44,345 | $53,336 |
| Senior Transportation Inspector | $37,421 | $41,163 | $50,798 |

10·003

| Title | | | |
|---|---|---|---|
| Senior Water Use Inspector * | $38,221 | $42,043 | $53,111 |
| Special Officer | | | |
|    Hiring Rate # | | $32,879 | |
|    After 1 Year # | $31,097 | $34,207 | |
|    After 2 Years # | | $35,350 | |
|    After 3 Years # | | $40,704 | |
| Stock Handler * | $30,732 | $33,805 | $44,730 |
| Stock Worker | | | |
|    Level I | $27,861 | $30,647 | $40,882 |
|    Level II | $30,732 | $33,805 | $44,730 |
| Storekeeper * | $33,128 | $36,441 | $49,810 |
| Supervising Blasting Inspector ##### | $46,087 | $50,696 | $62,096 |
| Suprv. Refrigeration Service Tech. | $37,726 | $41,499 | $53,555 |
| Supervising Special Officer | $47,310 | $52,041 | Flat Rate |
| Sprvsg Taxi & Limousine Inspector | $44,753 | $49,228 | $60,148 |
| Sprvsg Taxi & Limousine Insp. (MV)* | $44,753 | $49,228 | $60,148 |
| Supervising Water Use Inspector * | $38,221 | $42,043 | $53,111 |
| Supervisor (Traffic Device Maint.) * | $47,375 | $52,112 | Flat Rate |
| Supervisor Of Bridge Operations | $48,885 | $53,774 | $55,985 |
| Supervisor of Stock Workers | | | |
|    Level I | $33,128 | $36,441 | $49,810 |
|    Level II | $38,878 | $42,766 | $58,059 |
|    Level III | $46,903 | $51,593 | $70,442 |
| Supervisor Of Traffic Device Maintainers | | | |
|    Minimum ### | | $53,301 | |
|    After 1 Year ### | $49,212 | $54,133 | |
| (4 Increments)  After 2 Years ### | | $54,966 | |
|    After 3 Years ### | | $56,545 | |
|    After 4 Years ### | | $59,700 | |
| Taxi & Limousine Inspector | $34,270 | $37,697 | $47,046 |
| Taxi & Limousine Inspector (M.V.) * | $34,270 | $37,697 | $47,046 |
| Transportation Inspector | $33,113 | $36,424 | $45,103 |
| Water Meter Reader * | $28,167 | $30,984 | Flat Rate |
| Water Use Inspector | $38,963 | $42,859 | $52,681 |
| Water Use Inspector Trainee ## | $28,167 | $30,984 | $33,957 |

## c. Effective October 10, 2009 (first year rate)

| TITLE | i. Minimum | | ii. Maximum Rate |
|---|---|---|---|
| | (1)Hiring Rate *** | (2)Incumbent Rate | |
| Asbestos Handler | $63,924 | $72,234 | Flat rate |
| Asbestos Handler Supervisor | $67,122 | $75,848 | Flat rate |
| Assistant Bridge Operator @ | $31,296 | $35,365 | $42,271 |
| Assistant Stock Handler * | $28,206 | $31,873 | $42,517 |
| Associate Parking Control Specialist | | | |
|    Level I | $44,809 | $50,634 | $55,697 |
|    Level II | $50,781 | $57,383 | $65,824 |
| Associate Taxi & Limousine Inspector | | | |
|    Level I | $40,813 | $46,119 | $55,469 |
|    Level II | $45,307 | $51,197 | $62,554 |
| Associate Water Use Inspector | | | |
|    Level I | $44,980 | $50,827 | $63,595 |
|    Level II | $51,761 | $58,490 | $66,155 |
|    Level III | $58,544 | $66,155 | $73,816 |
| Blasting Inspector | $37,885 | $42,810 | $52,830 |
| Bridge Operator | | | |

10003

| | | | |
|---|---|---|---|
| Level I | $31,296 | $35,365 | $42,271 |
| Level II | $35,372 | $39,970 | $49,173 |
| Bridge Operator-In-Charge | $40,460 | $45,720 | $51,475 |
| Custodian | | | |
| Level I | $28,912 | $32,671 | $40,735 |
| Level II | $30,668 | $34,655 | $49,069 |
| Level III | $38,625 | $43,646 | $58,336 |
| Level IV | $46,752 | $52,830 | $70,107 |
| Evidence & Property Control Specialist | | | |
| Level I | $43,292 | $48,920 | $61,967 |
| Level II | $49,788 | $56,260 | $69,307 |
| Hospital Security Officer | $47,750 | $53,957 | Flat Rate |
| Hostler | $30,317 | $34,258 | $41,802 |
| Maint. Planning & Control Supervisor | $46,393 | $52,424 | $61,706 |
| Maintenance & Control Planner | $39,606 | $44,755 | $54,113 |
| Parking Control Specialist | $35,099 | $39,662 | $47,259 |
| Parking Control Specialist Trainee ####, @ | See footnote | $33,093 | Flat Rate |
| After one year | | $35,550 | |
| Pipe Laying Inspector | $37,885 | $42,810 | $52,830 |
| Preventive Maintenance Inspector | $37,588 | $42,474 | $52,659 |
| Principal Special Officer (DSS) ** | $55,129 | $62,296 | $66,767 |
| Principal Storekeeper * | $47,484 | $53,657 | $73,260 |
| Refrigeration Service Helper | $29,474 | $33,306 | $38,764 |
| Refrigeration Service Mechanic | $34,794 | $39,317 | $46,334 |
| School Guard | $31,259 | $35,323 | Flat Rate |
| (School Safety Agent) | $14.98 | $16.93 | per hour |
| Senior Blasting Inspector | $41,931 | $47,382 | $58,734 |
| Senior Pipe Laying Inspector | $41,931 | $47,382 | $58,734 |
| Senior Special Officer | $41,675 | $47,093 | Flat Rate |
| Senior Storekeeper * | $39,360 | $44,477 | $60,381 |
| Senior Taxi & Limousine Inspector | $40,813 | $46,119 | $55,469 |
| Sr. Taxi & Limousine Inspector (M.V.) * | $40,813 | $46,119 | $55,469 |
| Senior Transportation Inspector | $37,885 | $42,810 | $52,830 |
| Senior Water Use Inspector * | $38,695 | $43,725 | $55,235 |
| Special Officer | | | |
| Hiring Rate # | $30,260 | $34,194 | |
| After 1 Year # | | $35,575 | |
| After 2 Years # | | $36,764 | |
| After 3 Years # | | $42,332 | |
| Stock Handler * | $31,112 | $35,157 | $46,519 |
| Stock Worker | | | |
| Level I | $28,206 | $31,873 | $42,517 |
| Level II | $31,112 | $35,157 | $46,519 |
| Storekeeper * | $33,539 | $37,899 | $51,802 |
| Supervising Blasting Inspector ##### | $46,658 | $52,724 | $64,580 |
| Suprv. Refrigeration Service Tech. | $38,194 | $43,159 | $55,697 |
| Supervising Special Officer | $47,896 | $54,123 | Flat Rate |
| Sprvsg Taxi & Limousine Inspector | $45,307 | $51,197 | $62,554 |
| Sprvsg Taxi & Limousine Insp. (MV)* | $45,307 | $51,197 | $62,554 |
| Supervising Water Use Inspector * | $38,695 | $43,725 | $55,235 |
| Supervisor (Traffic Device Maint.) * | $47,961 | $54,196 | Flat Rate |
| Supervisor Of Bridge Operations | $49,491 | $55,925 | $58,224 |
| Supervisor of Stock Workers | | | |
| Level I | $33,539 | $37,899 | $51,802 |
| Level II | $39,360 | $44,477 | $60,381 |
| Level III | $47,484 | $53,657 | $73,260 |

10003

| | | | |
|---|---|---|---|
| Supervisor Of Traffic Device Maintainers | | | |
| Minimum ### | $49,056 | $55,433 | |
| After 1 Year ### | | $56,298 | |
| (4 Increments)   After 2 Years ### | | $57,165 | |
| After 3 Years ### | | $58,807 | |
| After 4 Years ### | | $62,088 | |
| Taxi & Limousine Inspector | $34,695 | $39,205 | $48,928 |
| Taxi & Limousine Inspector (M.V.) * | $34,695 | $39,205 | $48,928 |
| Transportation Inspector | $33,523 | $37,881 | $46,907 |
| Water Meter Reader * | $28,516 | $32,223 | Flat Rate |
| Water Use Inspector | $39,445 | $44,573 | $54,788 |
| Water Use Inspector Trainee ## | $28,516 | $32,223 | $35,315 |

## d. Effective October 10, 2009 (second year rate)

| TITLE | i. Minimum | | ii. Maximum Rate |
|---|---|---|---|
| | (1)Hiring Rate *** | (2)Incumbent Rate | |
| Asbestos Handler | $65,667 | $72,234 | Flat rate |
| Asbestos Handler Supervisor | $68,953 | $75,848 | Flat rate |
| Assistant Bridge Operator @ | $32,150 | $35,365 | $42,271 |
| Assistant Stock Handler * | $28,975 | $31,873 | $42,517 |
| Associate Parking Control Specialist | | | |
| Level I | $46,031 | $50,634 | $55,697 |
| Level II | $52,166 | $57,383 | $65,824 |
| Associate Taxi & Limousine Inspector | | | |
| Level I | $41,926 | $46,119 | $55,469 |
| Level II | $46,543 | $51,197 | $62,554 |
| Associate Water Use Inspector | | | |
| Level I | $46,206 | $50,827 | $63,595 |
| Level II | $53,173 | $58,490 | $66,155 |
| Level III | $60,141 | $66,155 | $73,816 |
| Blasting Inspector | $38,918 | $42,810 | $52,830 |
| Bridge Operator | | | |
| Level I | $32,150 | $35,365 | $42,271 |
| Level II | $36,336 | $39,970 | $49,173 |
| Bridge Operator-In-Charge | $41,564 | $45,720 | $51,475 |
| Custodian | | | |
| Level I | $29,701 | $32,671 | $40,735 |
| Level II | $31,505 | $34,655 | $49,069 |
| Level III | $39,678 | $43,646 | $58,336 |
| Level IV | $48,027 | $52,830 | $70,107 |
| Evidence & Property Control Specialist | | | |
| Level I | $44,473 | $48,920 | $61,967 |
| Level II | $51,145 | $56,260 | $69,307 |
| Hospital Security Officer | $49,052 | $53,957 | Flat Rate |
| Hostler | $31,144 | $34,258 | $41,802 |
| Maint. Planning & Control Supervisor | $47,658 | $52,424 | $61,706 |
| Maintenance & Control Planner | $40,686 | $44,755 | $54,113 |
| Parking Control Specialist | $36,056 | $39,662 | $47,259 |
| Parking Control Specialist Trainee ####, | | | |
| @ | See footnote | $33,093 | Flat Rate |
| After one year | | $35,550 | |
| Pipe Laying Inspector | $38,918 | $42,810 | $52,830 |

10003

| | | | |
|---|---|---|---|
| Preventive Maintenance Inspector | $38,613 | $42,474 | $52,659 |
| Principal Special Officer (DSS) ** | $56,633 | $62,296 | $66,767 |
| Principal Storekeeper * | $48,779 | $53,657 | $73,260 |
| Refrigeration Service Helper | $30,278 | $33,306 | $38,764 |
| Refrigeration Service Mechanic | $35,743 | $39,317 | $46,334 |
| School Guard | $32,112 | $35,323 | Flat Rate |
| (School Safety Agent) | $15.39 | $16.93 | per hour |
| Senior Blasting Inspector | $43,075 | $47,382 | $58,734 |
| Senior Pipe Laying Inspector | $43,075 | $47,382 | $58,734 |
| Senior Special Officer | $42,812 | $47,093 | Flat Rate |
| Senior Storekeeper * | $40,434 | $44,477 | $60,381 |
| Senior Taxi & Limousine Inspector | $41,926 | $46,119 | $55,469 |
| Sr. Taxi & Limousine Inspector (M.V.) * | $41,926 | $46,119 | $55,469 |
| Senior Transportation Inspector | $38,918 | $42,810 | $52,830 |
| Senior Water Use Inspector * | $39,750 | $43,725 | $55,235 |
| Special Officer | | | |
| Hiring Rate # | $31,085 | $34,194 | |
| After 1 Year # | $32,341 | $35,575 | |
| After 2 Years # | | $36,764 | |
| After 3 Years # | | $42,332 | |
| Stock Handler * | $31,961 | $35,157 | $46,519 |
| Stock Worker | | | |
| Level I | $28,975 | $31,873 | $42,517 |
| Level II | $31,961 | $35,157 | $46,519 |
| Storekeeper * | $34,454 | $37,899 | $51,802 |
| Supervising Blasting Inspector ##### | $47,931 | $52,724 | $64,580 |
| Suprv. Refrigeration Service Tech. | $39,235 | $43,159 | $55,697 |
| Supervising Special Officer | $49,203 | $54,123 | Flat Rate |
| Sprvsg Taxi & Limousine Inspector | $46,543 | $51,197 | $62,554 |
| Sprvsg Taxi & Limousine Insp. (MV)* | $46,543 | $51,197 | $62,554 |
| Supervising Water Use Inspector * | $39,750 | $43,725 | $55,235 |
| Supervisor (Traffic Device Maint.) * | $49,269 | $54,196 | Flat Rate |
| Supervisor Of Bridge Operations | $50,841 | $55,925 | $58,224 |
| Supervisor of Stock Workers | | | |
| Level I | $34,454 | $37,899 | $51,802 |
| Level II | $40,434 | $44,477 | $60,381 |
| Level III | $48,779 | $53,657 | $73,260 |
| Supervisor Of Traffic Device Maintainers | | | |
| Minimum ### | $50,394 | $55,433 | |
| After 1 Year ### | $51,180 | $56,298 | |
| (4 Increments)   After 2 Years ### | | $57,165 | |
| After 3 Years ### | | $58,807 | |
| After 4 Years ### | | $62,088 | |
| Taxi & Limousine Inspector | $35,641 | $39,205 | $48,928 |
| Taxi & Limousine Inspector (M.V.) * | $35,641 | $39,205 | $48,928 |
| Transportation Inspector | $34,437 | $37,881 | $46,907 |
| Water Meter Reader * | $29,294 | $32,223 | Flat Rate |
| Water Use Inspector | $40,521 | $44,573 | $54,788 |
| Water Use Inspector Trainee ## | $29,294 | $32,223 | $35,315 |

NOTE:

* For Present Incumbents Only.
** Excluding specific positions not in the bargaining unit.
*** See Article III, Section 4, "New Hires"

10003

<sup></sup># Individuals shall advance yearly step on the January or July following the attainment of the required time.
## Upon completion of 1 year of satisfactory service the incumbent shall receive the rate shown herein as the maximum.
### Commencing each 9/1, any incumbent below the maximum salary rate with 1 year of continuous service in the title shall advance to the next higher salary rate.
#### footnote(***) is not applicable
##### Each appointment to this position above the October 23, 2006 hiring rates will be handled on a case by case basis.
@ To be deleted

## Section 3.  General Wage Increases and Lump Sum Payment

**a.**   The general increase, effective as indicated, shall be:

   **i.**   Effective October 10, 2008, Employees shall receive a general increase of 4.00%.

   **ii.**   Effective October 10, 2009, Employees shall receive a general increase of 4.00%.

   **iii.**   Part-time per annum, per session, hourly paid and part time per diem Employees (including seasonal appointees) and Employees whose normal work year is less than a full calendar year shall receive the increases provided in Sections 3 a. i. and 3 a. ii. on the basis of computations heretofore utilized by the parties for all such Employees.

**b.**   The increases provided for in Section 3 a. i. and 3 a. ii. above shall be calculated as follows:

   **i.**   The general increase in Section 3 a.i. shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on October 9, 2008.

   **ii.**   The general increase in Section 3 a.ii. shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on October 10, 2009.

**c.**   **i.**   The general increases provided for in this Section 3 a. i. and 3 a. ii. shall be applied to the base rates, and the minimum hiring rates, minimum incumbent rates and maximum rates (including levels), if any, fixed for the applicable titles.

   **ii.**   The general increases provided for in this Section 3 a. i. and 3 a. ii. shall not be applied to the following additions to gross: uniform allowances, assignment differentials, advancement increases and assignment (level) increases.

## Section 4. New Hires

**a.**   The following provisions shall apply to Employees newly hired on or after September 13, 2008:

10003

i.    During the first year of service, the "appointment rate" for a newly hired employee shall be thirteen percent (13%) less than the applicable "incumbent minimum" for said title that is in effect on the date of such appointment.

ii.   Upon completion of one (1) year of service, such employees shall be paid ten percent (10%) less than the indicated "incumbent minimum" for the applicable title that is in effect on the one (1) year anniversary of their original date of appointment.

iii.  Upon completion of two (2) years of service, such employees shall be paid the indicated "incumbent minimum" for the applicable title that is in effect on the two (2) year anniversary of their original date of appointment.

**b.**    For the purposes of Sections 4(a) and 4(c), employees 1) who were in active pay status before September 13, 2008, and 2) who are affected by the following personnel actions after said date shall not be treated as "newly hired" employees and shall be entitled to receive the indicated minimum "incumbent rate" set forth in subsections 2(a)(i)(2), 2(b)(i)(2), 2(c)(i)(2) and 2(d)(i)(2) of this Article III:

**i.**  Employees who return to active status from an approved leave of absence.

**ii.**  Employees in active status (whether full or part time) appointed to permanent status from a civil service list, or to a new title (regardless of jurisdictional class or civil service status) without a break in service of more than 31 days.

**iii.** Employees who were laid off or terminated for economic reasons who are appointed from a recall/preferred list or who were subject to involuntary redeployment.

**iv.** Provisional employees who were terminated due to a civil service list who are appointed from a civil service list within one year of such termination.

**v.**  Permanent employees who resign and are reinstated or who are appointed from a civil service list within one year of such resignation.

**vi.** Employees (regardless of jurisdictional class or civil service status) who resign and return within 31 days of such resignation.

**vii.** A provisional employee who is appointed directly from one provisional appointment to another.

**viii.** For employees whose circumstances were not anticipated by the parties, the First Deputy Commissioner of Labor Relations is empowered to issue, on a case-by-case basis, interpretations concerning application of this Section 4. Such case-by-case interpretations shall not be subject to the dispute resolution procedures set forth in Article VI of this Agreement.

10.003

c.   i.   For a title subject to an incremental pay plan, the employee shall be paid the appropriate increment based upon the employee's length of service.  Section 2 of this Article III reflects the correct amounts and has been adjusted in accordance with the provisions of Section 3 of this Article III.

ii.   Employees who change titles or levels before attaining two years of service, will be treated in the new title or level as if they had been originally appointed to said title or level on their original hiring date.

d.   The First Deputy Commissioner of Labor Relations may, after notification to the affected union(s), exempt certain hard to recruit titles from the provisions of subsection 4 (a).

## Section 5.

Each general increase provided herein, effective as of each indicated date, shall be applied to the rate in effect on the date as specified in Section 3 of this Article. In the case of a promotion or other advancement to the indicated title on the effective date of the general increase specified in Section 3 of this Article, such general increase shall not be applied, but the general increase, if any, provided to be effective as of such date for the title formerly occupied shall be applied.

## Section 6.

In the case of an Employee on leave of absence without pay the salary rate of such Employee shall be changed to reflect the salary adjustments specified in Article III.

## Section 7.

A person permanently employed by the Employer who is appointed or promoted on a permanent, provisional, or temporary basis in accordance with the Personnel Rules and Regulations of the City of New York or such other Rules or Regulations as are applicable to the public employer, without a break in service to any of the following title(s) from another title in the direct line of promotion or from another title in the Career and Salary Plan, the minimum rate of which is exceeded by at least 8 percent by the minimum rate of the title to which appointed or promoted, shall receive upon the date of such appointment or promotion either the minimum basic salary for the title to which such appointment or promotion is made, or the salary received or receivable in the lower title plus the specified advancement increase, whichever is greater:

10003

# ADVANCEMENT INCREASE

| TITLE | 9/13/08 |
|---|---|
| ASSISTANT BUILDING CUSTODIAN •• | $655 |
| ASSOCIATE TAXI & LIMOUSINE INSPECTOR LEVEL I | $846 |
| BRIDGE OPERATOR •• | $846 |
| BRIDGE OPERATOR-IN-CHARGE | $883 |
| BUILDING CUSTODIAN •• | $731 |
| CUSTODIAN LEVEL I | $576 |
| JUNIOR BUILDING CUSTODIAN •• | $576 |
| MAINTENANCE PLANNER & CONTROL SUPERVISOR | $922 |
| PRINCIPAL STOREKEEPER • | $1,185 |
| PRINCIPAL WATER USE INSPECTOR | $1,076 |
| REFRIGERATION SERVICE MECHANIC | Min Of Grade |
| SENIOR BLASTING INSPECTOR | $922 |
| SENIOR BUILDING CUSTODIAN •• | $846 |
| SENIOR PIPE LAYING INSPECTOR | $961 |
| SENIOR STOREKEEPER • | $971 |
| SENIOR TAXI & LIMOUSINE INSPECTOR • | $846 |
| SENIOR TAXI & LIMOUSINE INSPECTOR (MV) • | $846 |
| SENIOR TRANSPORTATION INSPECTOR | $883 |
| SENIOR WATER USE INPSECTOR | $846 |
| STOCK HANDLER • | $693 |
| STOCK WORKER | $693 |
| STOREKEEPER • | $848 |
| SUPERVISING BLASTING INSPECTOR | $1,076 |
| SUPERVISING TAXI & LIMOUSINE INSPECTOR • | Min Of Grade |
| SUPERVISING TAXI & LIMOUSINE INSPECTOR (MV) • | Min Of Grade |
| SUPERVISING WATER USE INSPECTOR | $961 |
| SUPERVISOR OF BRIDGE OPERATIONS | $922 |
| SUPERVISOR OF BUILDING CUSTODIANS •• | $961 |
| SUPERVISOR OF STOCK WORKERS LEVEL I | $848 |

## Section 8. Level Increases

An Employee, when assigned to a higher level within a class of positions listed in this subsection, shall receive for the period of such higher level assignment either the minimum basic salary of the assigned level or the rate received in the former assignment level plus the level increase specified below, whichever is greater.  Assignments to a higher level shall not be considered a promotion.

10003

| TITLE | 9/13/08 |
|---|---|
| ASSOCIATE TAXI & LIMOUSINE INSPECTOR LEVEL II | Min Of Grade |
| BRIDGE OPERATOR LEVEL II | $846 |
| CUSTODIAN | |
| LEVEL II | $655 |
| LEVEL III | $846 |
| LEVEL IV | $961 |
| STOCK WORKER LEVEL II | $693 |
| SUPERVISOR OF STOCK WORKERS LEVEL II | $971 |
| SUPERVISOR OF STOCK WORKERS LEVEL III | $1,185 |

## Section 9. Assignment Differential

The payment of the following assignment differentials shall continue only during the period of such assignment. The payment of any such differentials and any specified assignments on which they may be based shall not be construed as an advancement to any higher title and any such assignment is revocable at any time. In the event that an affected employee is removed from an assignment the assignment differential shall be discontinued.

a. Water Use Inspector, Senior Water Use Inspector and Associate Water Use Inspector Level I assigned on a continuing basis to the meter testing shall continue to receive an assignment differential in the following pro-rated annual amounts.

Effective 9/13/08
$560

b. The following differentials shall be continued for Senior Building Custodian and Custodian Level III assigned to responsibility for building space in the amounts of floor space or to a special assignment as indicated in the following schedule:

| (1) Square Foot of Building Floor Space | 9/13/08 |
|---|---|
| 100,000 to 200,000 | $554 |
| 200,000 to 250,000 | $916 |
| 250,000 to 300,000 | $1,327 |
| 300,000 to 400,000 | $1,695 |
| 400,000 to 600,000 | $2,076 |
| 600,000 to 800,000 | $2,458 |
| 800,000 to 1,000,000 | $2,838 |

10.003

**(2) Special Assignment**

| | | Effective 9/13/08 |
|---|---|---|
| i. | Assigned as custodial instructor | $1,202 |
| ii. | Assigned as supervisor of custodial Services at City Hall & Municipal Building | $3,062 |
| iii. | Assigned as borough inspector in the Borough of Manhattan and in the Borough of Brooklyn, in the Human Resources Administration (DSS) and Department of Health | $2,910 |

c. The following differentials shall be continued for the Supervisor of Building Custodians Level IV assigned to each of the following:

| | | Effective 9/13/08 |
|---|---|---|
| i. | Department of Environmental Protection | $3,456 |
| ii. | Department of Health | $3,456 |
| iii. | Human Resources Administration (DSS) | $3,456 |
| iv. | Police Department | $3,456 |
| v. | Department of Citywide Administrative Services | $3,456 |

d. An assignment differential in the pro-rated amount indicated below, shall continue to be paid to Hospital Security Officer who is responsible for the security of a hospital center or large hospital or Corporation headquarters as specified:

| | Assignment | Effective 9/13/08 |
|---|---|---|
| i. | Jacobi, Bellevue, Kings County, Queens General, Metropolitan, Harlem, Lincoln & Corporation Headquarters | $1,285 |
| ii. | Elmhurst, Coney Island, North Central Bronx & Woodhull | $641 |

e. Full-time Employees in the titles of Assistant Building Custodian, Custodian L. II, Junior Building Custodian, Custodian L.I, Building Custodian, Custodian Level II, Senior Building Custodian Custodian Level III and Custodian Level IV, assigned on a regular basis to perform the duties and responsibilities of Fire Safety Director shall be paid the following assignment differentials in the pro-rated annual amounts set forth below:

10.0003

|  | Effective 9/13/08 |
|---|---|
| Up to 149,000 square feet of building space | $668 |
| 149,000 to 400,000 square feet of building space | $1,335 |
| Over 400,000 square feet of building space | $2,004 |
| Swing Fire Safety Director | $668 |

f.   Full-time Employees in the titles of Associate Taxi & Limousine Inspector, Level I, II, Senior Taxi & Limousine Inspector, Supervising Taxi & Limousine Inspector and Taxi and Limousine Inspector assigned to the Taxi & Limousine Commission's Seizure program performing tow-truck operations shall, be paid the following assignment differentials in the pro-rated annual amount set forth below.

|  | Effective 9/13/08 |
|---|---|
| Associate Tax & Limousine Insp. Level I, II | $3,340 |
| Senior Taxi & Limousine Inspector | $3,340 |
| Supervising Taxi & Limousine Inspector | $3,340 |
| Taxi & Limousine Inspector | $3,340 |

g.   An assignment differential shall be paid in the following amounts specified below for performance of the specified duties in the title of School Guard (School Safety Agent):

| School Guard (School Safety Agent) | 9/11/08 | 9/12/08 | 9/13/08 |
|---|---|---|---|
| - assigned as "Group Leader" | $2,862(annual) $1.38(per hour) | $4,714 (annual) $2.26 (per hour) | $4,714 (annual) $2.26 )per hour) |
| - assigned as "Mobile Task Force Members" | $1,433(annual) $.69(per hour) | $1,433(annual) $.69(per hour) | $1,433(annual) $.69(per hour) |
| - participating in the school metal detector screening program | $421(annual) $0.21(per hour) | $421(annual) $0.21(per hour) | $421(annual) $0.21(per hour) |

h.   An assignment differential shall be paid to employees in the title of Stock Worker, Level I and II when assigned in the Department of Finance; in addition to their other duties, without direct supervision; to distribute, load, unload place, reconfigure and relocate office components, modular furniture, Herman Miller workstations, office equipment and furniture, using racks, hand trucks and other aids as necessary for heavy items and to drive departmental vehicles on a temporary basis to perform the above-mentioned duties.

9/13/08
$2,273

10.003

i.   An assignment differential shall be paid to employees in the title of Supervisor of Traffic Device Maintainer.

**9/12/08**
$1,500 per annum

## Section 10 - Uniform and/or Clothing Allowance

The following pro-rated annual amount shall continue to be paid to Employees in the below indicated titles who are required to wear uniforms and to those Employees who are entitled to a clothing allowance:

| TITLE | 9/13/08 |
|-------|---------|
| ASSISTANT BRIDGE OPERATOR ** | $367 |
| ASSOCIATE PARKING CONTROL SPECIALIST | $642 |
| ASSOCIATE TAXI & LIMOUSINE INSPECTOR LEVEL I, II | $680 |
| BRIDGE OPERATOR LEVEL I, II | $367 |
| BRIDGE OPERATOR-IN-CHARGE | $367 |
| HOSPITAL SECURITY OFFICER | $202 |
| HOSTLER | $301 |
| PARKING CONTROL SPECIALIST | $642 |
| PRINCIPAL SPECIAL OFFICER (DSS) | $668 |
| SCHOOL GUARD (School Safety Officer) | $668 |
| SENIOR BLASTING INSPECTOR | $335 |
| SENIOR SPECIAL OFFICER | $668 |
| SENIOR TAXI & LIMOUSINE INSPECTOR * | $680 |
| SENIOR TAXI & LIMOUSINE INSPECTOR (MV) * | $680 |
| SPECIAL OFFICER | $668 |
| SUPERVISING BLASTING INSPECTOR | $335 |
| SUPERVISING SPECIAL OFFICER | $668 |
| SUPERVISING TAXI & LIMOUSINE INSPECTOR * | $680 |
| SUPERVISING TAXI & LIMOUSINE INSPECTOR (MV) * | $680 |
| SUPERVISOR OF BRIDGE OPERATIONS | $367 |
| TAXI & LIMOUSINE INSPECTOR | $680 |
| TAXI & LIMOUSINE INSPECTOR (MV) * | $680 |

## Section 11. Longevity Increment

a.   Employees with 15 years or more of "City" service in pay status who are not already eligible for a longevity differential or service increment established by the Salary Review or Equity Panel shall receive a longevity increment of $500 per annum.

10003

**b.**     The rules for eligibility for the longevity increment described above in subsection a, shall be set forth in Appendix A of this Agreement and are incorporated by reference herein. Additional rules for eligibility for the longevity increment described above in subsection a may be established.

## Section 12. Annuity Fund

**a.**     The Employer shall contribute to an existing annuity on behalf of covered full-time per annum and full-time per diem employees, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each paid working day which amount shall not exceed $1,189.51 for each Employee in full pay status in the prescribed twelve (12) month period subject to the terms of a signed supplemental agreement approved by the Corporation Counsel. For covered Employees who work less than the number of hours for their full-time equivalent title, the Employer shall pay into the fund, on a twenty-eight (28) day cycle basis, a pro-rated daily contribution calculated against the number of hours associated with their full time equivalent title, which amount shall not exceed $1,189.51 per annum for each Employee in full pay status in the prescribed twelve (12) month period.

**b.**     For Employees who work a compressed work week, the Employer shall pay into the fund, on a twenty-eight (28) day cycle basis, a pro-rata daily contribution for each set of paid working hours which equate to the daily number of hours that title is regularly scheduled to work, which amount shall not exceed $1,189.51 per annum for each Employee in full-pay status in the prescribed twelve (12) month period.

**c.**  **i.**   For the purpose of Section 12 (c), excluded from paid working days are all scheduled days off, all days in non-pay status, and all paid overtime.

    **ii.**   "All days in non-pay status" as used in this Section 12(c) shall be defined as including, but not limited to, the following:

        **(a)**   time on preferred or recall lists;

        **(b)**   time on the following approved unpaid leaves:

            **(i)**    maternity/childcare leave;

            **(ii)**   military leave;

            **(iii)**  unpaid time while on jury duty;

            **(iv)**   unpaid leave for union business pursuant to Executive Order 75;

            **(v)**    unpaid leave pending workers' compensation determination;

            **(vi)**   unpaid leave while on workers' compensation option 2;

10003

| | | |
|---|---|---|
| **(vii)** | approved unpaid time off due to illness or exhaustion of paid sick leave; |
| **(viii)** | approved unpaid time off due to family illness; and |
| **(ix)** | other pre-approved leaves without pay; |

**(c)** time while on absence without leave;

**(d)** time while on unapproved leave without pay; or

**(e)** time while on unpaid suspensions.

**d.   DEFINITIONS:**

scheduled days off shall mean:  An Employee's regular days off ("RDO's"). For example, Saturday and Sunday would be the scheduled days off for a full-time per annum Employee working a  Monday through Friday schedule.

## ARTICLE IV - WELFARE FUND

### Section 1.

**a.**   In accordance with the election by the Union pursuant to the provisions of Article XIII of the *1995 – 2001 Citywide Agreement* as amended between the City of New York and related public employers, or its successor Agreement(s), the Welfare Fund provisions of that *Citywide Agreement* as amended or any successor(s) thereto shall apply to Employees covered by this Agreement.

**b.**   When an election is made by the Union pursuant to the provisions of Article XIII, Section l(b), of the *1995-2001 Citywide Agreement* as amended between the City of New York and related public employers or any successor(s) thereto, the provisions of Article XIII, Section l(b) of the *Citywide Agreement* as amended or any successor(s) thereto, shall apply to Employees covered by this Agreement, and when such election is made, the Union hereby waives its right to training, education and/or legal services contributions provided in this Agreement. In no case shall the single contribution provided in Article XIII, Section l(b) of the *Citywide Agreement* as amended or any successor(s) thereto, exceed the total amount that the Union would have been entitled to receive if the separate contributions had continued.

### Section 2.

The unions agree to provide welfare fund benefits to domestics partners of covered Employees in the same manner as those benefits are provided to spouses of married covered Employees.

10.003

## Section 3.

In accordance with the Health Benefits Agreement dated January 11, 2001, each welfare fund shall provide welfare fund benefits equal to the benefits provided on behalf of an active Employee to widow(er)s, domestic partners and/or children of any Employee who dies in the line of duty as that term is referenced in Section 12-126(b)(2) of the New York City Administrative Code. The cost of providing this benefit shall be funded by the Stabilization Fund.

# ARTICLE V - PRODUCTIVITY AND PERFORMANCE

## Introduction

Delivery of municipal services in the most efficient, effective and courteous manner is of paramount importance to the Employer and the Union. Such achievement is recognized to be a mutual obligation of both parties within their respective roles and responsibilities. To achieve and maintain a high level of effectiveness, the parties hereby agree to the following terms:

## Section 1. - Performance Levels

a.    The Union recognizes the Employer's right under the New York City Collective Bargaining Law to establish and/or revise performance standards or norms notwithstanding the existence of prior performance levels, norms or standards. Such standards, developed by usual work measurement procedures, may be used to determine acceptable performance levels, to prepare work schedules and to measure the performance of each Employee or group of Employees. Notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on Employees are within the scope of collective bargaining. The Employer will give the Union prior notice of the establishment and/or revision of performance standards or norms hereunder.

b.    Employees who work at less than acceptable levels of performance may be subject to disciplinary measures in accordance with applicable law.

## Section 2. - Supervisory Responsibility

a.    The Union recognizes the Employer's right under the New York City Collective Bargaining Law to establish and/or revise standards for supervisory responsibility in achieving and maintaining performance levels of supervised Employees for Employees in supervisory positions listed in Article I, Section 1, of this Agreement. Notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees are within the scope of collective bargaining. The Employer will give the Union prior notice of the establishment and/or revision of standards for supervisory responsibility hereunder.

10.003

b.   Employees who fail to meet such standards may be subject to disciplinary measures in accordance with applicable law.

## Section 3.  Performance Compensation

The Union acknowledges the Employer's right to pay additional compensation for outstanding performance.

The Employer agrees to notify the Union of its intent to pay such additional compensation.

# ARTICLE VI - GRIEVANCE PROCEDURE

## Section 1. - Definition:

The term **"Grievance "** shall mean:

a.   A dispute concerning the application or interpretation of the terms of this Agreement;

b.   A claimed violation, misinterpretation or misapplication of the rules or regulations, written policy or orders of the Employer applicable to the agency which employs the grievant affecting terms and conditions of employment; provided, disputes involving the Personnel Rules and Regulations of the City of New York or the Rules and Regulations of the Health and Hospitals Corporation with respect to those matters set forth in the first paragraph of Section 7390.1 of the Unconsolidated Laws shall not be subject to the grievance procedure or arbitration;

c.   A claimed assignment of Employees to duties substantially different from those stated in their job specifications;

d.   A claimed improper holding of an open-competitive rather than a promotional examination;

e.   A claimed wrongful disciplinary action taken against a permanent Employee covered by Section 75(1) of the Civil Service Law or a permanent employee covered by the Rules and Regulations of the Health and Hospitals Corporation upon whom the agency head has served written charges of incompetence or misconduct while the Employee is serving in the Employee's permanent title or which affects the Employee's permanent status.

f.   A claimed wrongful disciplinary action taken against a provisional Employee who has served for two years in the same or similar title or related occupational group in the same agency.

10003

### Section 2.

The Grievance Procedure, except for grievances as defined in Sections 1(d) and 1(e) of this Article, shall be as follows:

Employees may at any time informally discuss with their supervisors a matter which may become a grievance. If the results of such a discussion are unsatisfactory, the Employees may present the grievance at **Step I**.

All grievances must be presented in writing at all steps in the grievance procedure. For all grievances as defined in Section 1(c), no monetary award shall in any event cover any period prior to the date of the filing of the **Step I** grievance.

**Step I**  The Employee and/or the Union shall present the grievance in the form of a memorandum to the person designated for such purpose by the agency head no later than 120 days after the date on which the grievance arose except that grievances alleging a miscalculation of salary rate resulting in a payroll error of a continuing nature shall be presented no later than 120 days after the first date on which the grievant discovered the payroll error. The Employee may also request an appointment to discuss the grievance. The person designated by the Employer to hear the grievance shall take any steps necessary to a proper disposition of the grievance and shall issue a determination in writing by the end of the third work day following the date of submission.

**NOTE:**  *The following STEP I(a) shall be applicable only in the Health and Hospitals Corporation in the case of grievances arising under Section 1(a) through 1(c) of this Article and shall be applied prior to Step II of this Section:*

**STEP I(a)**  An appeal from an unsatisfactory determination at **Step I** shall be presented in writing to the person designated by the agency head for such purpose. The appeal must be made within five (5) work days of the receipt of the **Step I** determination. The person designated to receive the appeal at this Step shall meet with the Employee and/or the Union for review of the grievance and shall issue a determination to the Employee and/or the Union by the end of the fifth work day following the day on which the appeal was filed.

**STEP II**  An appeal from an unsatisfactory determination at **STEP I** or **STEP I(a)**, where applicable, shall be presented in writing to the agency head or the agency head's designated representative who shall not be the same person designated in **STEP I**. The appeal must be made within five (5) work days of the receipt of the **STEP I** or **STEP I(a)** determination. The agency head or designated representative, if any, shall meet with the Employee and/or the Union for review of the grievance and shall issue a determination in writing by the end of the tenth work day following the date on which the appeal was filed.

**STEP III**  An appeal from an unsatisfactory determination at **STEP II** shall be presented by the Employee and/or the Union to the Commissioner of Labor Relations in writing within ten (10) work days of the receipt of the **STEP II** determination. The grievant or the Union should submit copies of the **STEP I** and **STEP II** grievance filings and any agency responses thereto. Copies of such appeal shall be sent to the agency head. The Commissioner of Labor Relations or the Commissioner's designee shall review all appeals from **STEP II** determinations and shall issue a determination on such appeals within fifteen (15) work days following the date on which the appeal was filed.

10.003

**STEP IV**    An appeal from an unsatisfactory determination at **STEP III** may be brought solely by the Union to the Office of Collective Bargaining for impartial arbitration within fifteen (15) work days of receipt of the **STEP III** determination. In addition, the Employer shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined herein as a "grievance". The Employer shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining. A copy of the notice requesting impartial arbitration shall be forwarded to the opposing party. The arbitration shall be conducted in accordance with Title 61 of the Rules of the City Of New York. The costs and fees of such arbitration shall be borne equally by the Union and the Employer.

The assigned arbitrator shall hold a hearing at a time and place convenient to the parties and shall issue an award within 30 days after the completion of the hearing.

The arbitrator's decision, order or award (if any) shall be limited to the application and interpretation of the Agreement, and the arbitrator shall not add to, subtract from or modify the Agreement or any rule, regulation, written policy or order mentioned in Section 1 of this Article. The arbitrator's award shall be final and binding and enforceable in any appropriate tribunal in accordance with Article 75 of the Civil Practice Law and Rules. The arbitrator may provide for and direct such relief as the arbitrator deems necessary and proper, subject to the limitations set forth above and any applicable limitations of law.

## Section 3.

As a condition to the right of the Union to invoke impartial arbitration set forth in this Article, including the arbitration of a grievance involving a claimed improper holding of an open-competitive rather than a promotional examination, the Employee or Employees and the Union shall be required to file with the Director of the Office of Collective Bargaining a written waiver of the right, if any, of the Employee and the Union to submit the underlying dispute to any other administrative or judicial tribunal except for the purpose of enforcing the arbitrator's award.

## Section 4.

a.    Any grievance under Section 1 (d) relating to a claimed improper holding of an open-competitive rather than a promotional examination shall be presented in writing by the employee or the Union representative to the Commissioner of Labor Relations not later than thirty (30) days after the notice of the intention to conduct such open-competitive examination, or copy of the appointing officer's request for such open-competitive examination, as the case may be, has been posted in accordance with Section 51 of the Civil Service Law. The grievance shall be considered and passed upon within ten (10) days after its presentation. The determination shall be in writing, copies of which shall be transmitted to both parties to the grievance upon issuance.



b.    A grievance relating to the use of an open-competitive rather than a promotional examination which is unresolved by the Commissioner of Labor Relations may be brought to impartial arbitration as provided in Sections 2 and 3 above. Such a grievance shall be presented by the Union, in writing, for arbitration within 15 days of the presentation of such grievance to the Commissioner of Labor Relations, and the arbitrator shall decide such grievance within 75 days of its presentation to the arbitrator. The party requesting such arbitration shall send a copy of such request to the other party. The costs and fees of such arbitration shall be borne equally by the Employer and the Union.

## Section 5.

In any case involving a grievance under Section 1(e) of this Article, the following procedure shall govern upon service of written charges of incompetence or misconduct:

**STEP A**    Following the service of written charges, a conference with such Employee shall be held with respect to such charges by the person designated by the agency head to review a grievance at **STEP I** of the Grievance Procedure set forth in this Agreement. The Employee may be represented at such conference by a representative of the Union. The person designated by the agency head to review the charges shall take any steps necessary to a proper disposition of the charges and shall issue a determination in writing by the end of the fifth day following the date of the conference.

If the Employee is satisfied with the determination in **STEP A** above, the Employee may choose to accept such determination as an alternative to and in lieu of a determination made pursuant to the procedures provided for in Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation. As a condition of accepting such determination, the Employee shall sign a waiver of the Employee's right to the procedures available to him or her under Sections 75 and 76 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation.

**STEP B(i)**    If the Employee is not satisfied with the determination at **STEP A** above then the Employer shall proceed in accordance with the disciplinary procedures set forth in Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation. As an alternative, the Union with the consent of the employee may choose to proceed in accordance with the Grievance Procedure set forth in this Agreement, including the right to proceed to binding arbitration pursuant to **STEP IV** of such Grievance Procedure. As a condition for submitting the matter to the Grievance Procedure the employee and the Union shall file a written waiver of the right to utilize the procedures available to the employee pursuant to Sections 75 and 76 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation or any other administrative or judicial tribunal, except for the purpose of enforcing an arbitrator's award, if any. Notwithstanding such waiver, the period of an Employee's suspension without pay pending hearing and determination of charges shall not exceed thirty (30) days.

10003

**STEP B(ii)**   If the election is made to proceed pursuant to the Grievance Procedure, an appeal from the determination of **STEP A** above, shall be made to the agency head or designated representative. The appeal must be made in writing within five (5) work days of the receipt of the determination. The agency head or designated representative shall meet with the Employee and the Union for review of the grievance and shall issue a determination to the Employee and the Union by the end of the tenth work day following the day on which the appeal was filed. The agency head or designated representative shall have the power to impose the discipline, if any, decided upon, up to and including termination of the accused Employee's employment. In the event of such termination or suspension without pay totaling more than thirty (30) days, the Union with the consent of the grievant may elect to skip **STEP C** of this Section and proceed directly to **STEP D**.

**STEP C**   If the grievant is not satisfied with the determination of the agency head or designated representative the grievant or the Union may appeal to the Commissioner of Labor Relations in writing within ten (10) days of the determination of the agency head or designated representative. The Commissioner of Labor Relations shall issue a written reply to the grievant and the Union within fifteen (15) work days.

**STEP D**   If the grievant is not satisfied with the determination of the Commissioner of Labor Relations, the Union with the consent of the grievant may proceed to arbitration pursuant to the procedures set forth in **STEP IV** of the Grievance Procedure set forth in this Agreement.

## Section 6.

In any case involving a grievance under Section 1(f) of this Article, the following procedure shall govern upon service of written charges of incompetence or misconduct:

**STEP A**   Following the service of written charges, a conference with such Employee shall be held with respect to such charges by the person designated by the agency head to review a grievance at **STEP I** of the Grievance Procedure set forth in this Agreement. The Employee may be represented at such conference by a representative of the Union. The person designated by the agency head to review the charges shall take any steps necessary to a proper disposition of the charges and shall issue a determination in writing by the end of the fifth day following the date of the conference.

**STEP B(i)**   If the Employee is not satisfied with the determination at **STEP A** above, then the Employee may choose to proceed in accordance with the Grievance Procedure set forth in this Agreement through **STEP III**. The Union, with the consent of the employee, shall have the right to proceed to binding arbitration pursuant to **STEP IV** of such Grievance Procedure. The period of an Employee's suspension without pay pending hearing and determination of charges shall not exceed thirty (30) days.

**STEP B(ii)**   An appeal from the determination of **STEP A** above shall be made to the agency head or designated representative. The appeal must be made in writing within five (5) work days of the receipt of the determination. The agency head or designated representative shall meet with the Employee and the Union for review of the grievance and shall issue a determination to the employee and the Union by the end of the tenth work day following the day on which the appeal was filed. The agency head or designated representative shall have the power to impose the discipline, if any, decided upon, up to and including termination of the accused Employee's employment. In the event of such termination or suspension without pay totaling more than thirty (30) days, the Union with the consent of the grievant may elect to skip **STEP C** of this Section and proceed directly to **STEP D**.

10.0003

**STEP C**    If the grievant is not satisfied with the determination of the agency head or designated representative the grievant or the Union may appeal to the Commissioner of Labor Relations in writing within ten (10) days of the determination of the agency head or designated representative. The Commissioner of Labor Relations shall issue a written reply to the grievant and the Union within fifteen (15) work days.

**STEP D**    If the grievant is not satisfied with the determination of the Commissioner of Labor Relations, the Union with the consent of the grievant may proceed to arbitration pursuant to the procedures set forth in **STEP IV** of the Grievance Procedure set forth in this Agreement.

## Section 7.

A grievance concerning a large number of Employees and which concerns a claimed misinterpretation, inequitable application, violation or failure to comply with the provisions of this Agreement may be filed directly at **STEP III** of the grievance procedure except that a grievance concerning employees of the Health and Hospitals Corporation may be filed directly at **STEP II** of the grievance procedure.  Such "group" grievance must be filed no later than 120 days after the date on which the grievance arose, and all other procedural limits, including time limits, set forth in this Article shall apply.  All other individual grievances in process concerning the same issue shall be consolidated with the "group" grievance.

## Section 8.

If a determination satisfactory to the Union at any level of the Grievance Procedure is not implemented within a reasonable time, the Union may re-institute the original grievance at **STEP III** of the Grievance Procedure; or if a satisfactory **STEP III** determination has not been so implemented, the Union may institute a grievance concerning such failure to implement at **STEP IV** of the Grievance Procedure.

## Section 9.

If the Employer exceeds any time limit prescribed at any step in the Grievance Procedure, the grievant and/or the Union may invoke the next step of the procedure, except that only the Union may invoke impartial arbitration under **STEP IV**.

## Section 10.

The Employer shall notify the Union in writing of all grievances filed by Employees, all grievance hearings, and all determinations. The Union shall have the right to have a representative present at any grievance hearing and shall be given forty-eight (48) hours' notice of all grievance hearings.

## Section 11.

Each of the steps in the Grievance Procedure, as well as time limits prescribed at each step of this Grievance Procedure, may be waived by mutual agreement of the parties.

10003

## Section 12.

A non-Mayoral agency not covered by this Agreement but which employs Employees in titles identical to those covered by this Agreement may elect to permit the Union to appeal an unsatisfactory determination received at the last step of its Grievance Procedure prior to arbitration on fiscal matters only to the Commissioner of Labor Relations. If such election is made, the Union shall present its appeal to the Commissioner of Labor Relations in writing within ten (10) work days of the receipt of the last step determination. The Union should submit copies of the grievance filings at the prior steps of its Grievance Procedure and any agency responses thereto. Copies of such appeals shall be sent to the agency head. The Commissioner of Labor Relations, or the Commissioner's designee, shall review all such appeals and answer all such appeals within fifteen (15) work days. An appeal from a determination of the Commissioner of Labor Relations may be taken to arbitration under procedures, if any, applicable to the non-Mayoral agency involved.

## Section 13.

The grievance and the arbitration procedure contained in this Agreement shall be the exclusive remedy for the resolution of disputes defined as "grievances" herein. This shall not be interpreted to preclude either party from enforcing the arbitrator's award in court. This Section shall not be construed in any manner to limit the statutory rights and obligations of the Employer under Article XIV of the Civil Service Law.

## Section 14. Expedited Arbitration Procedure

a.    The parties agree that there is a need for an expedited arbitration process which would allow for the prompt adjudication of the grievances as set forth below.

b.    The parties voluntarily agree to submit matters to final and binding arbitration pursuant to the New York City Collective Bargaining Law and under the jurisdiction of the Office of Collective Bargaining. An arbitrator or panel of arbitrators, as agreed to by the parties, will act as the arbitrator of any issue submitted under the expedited procedure herein.

c.    The selection of those matters which will be submitted shall include, but not limited to, out-of-title cases concerning all titles, disciplinary cases wherein the proposed penalty is a monetary fine of one week or less or written reprimand, and other cases pursuant to mutual agreement by the parties. The following procedures shall apply.

i.    **SELECTION AND SCHEDULING OF CASES:**

(1)    The Deputy Chairperson for Disputes of the Office of Collective Bargaining shall propose which cases shall be subject to the procedures set forth in Section 14 and notify the parties of proposed hearing dates for such cases.



(2)    The parties shall have ten business days from the receipt of the Deputy Chairpersons proposed list of cases and hearing schedule(s) to raise any objections thereto.

(3)    If a case is not proposed by the Deputy Chairperson for expedited handling, either party may, at any time prior to the scheduling of an arbitration hearing date for such case, request in writing to the other party and to the Deputy Chairperson of Disputes of the Office of Collective Bargaining that said case be submitted to the expedited procedure. The party receiving such request shall have ten business days from the receipt of the request to raise any objections thereto.

(4)    No case shall be submitted to the expedited arbitration process without the mutual agreement of the parties.

## ii.    CONDUCT OF HEARINGS:

(1)    The presentation of the case, to the extent possible, shall be made in the narrative form. To the degree that witnesses are necessary, examination will be limited to questions of material fact and cross examination will be similarly limited. Submission of relevant documents, etc., will not be unreasonably limited and may be submitted as a packet exhibit.

(2)    In the event either party is unable to proceed with hearing a particular case, the case shall be rescheduled. However, only one adjournment shall be permitted. In the event that either party is unable to proceed on a second occasion, a default judgment may be entered against the adjourning party at the Arbitrator's discretion absent good cause shown.

(3)    The arbitrator shall not be precluded from attempting to assist the parties in settling a particular case.

(4)    A decision will be issued by the Arbitrator within two weeks. It will not be necessary in the Award to recount any of the facts presented. However, a brief explanation of the Arbitrator's rationale may be included. Bench decisions may also be issued by the Arbitrator.

(5)    Decisions in this expedited procedure shall not be considered as precedent for any other case nor entered into evidence in any other forum or dispute except to enforce the Arbitrator's award.

(6)    The parties, shall whenever possible, exchange any documents intended to be offered in evidence at least one week in advance of the first hearing date and shall endeavor to stipulate to the issue in advance of the hearing date.

10003

## ARTICLE VII - BULLETIN BOARDS: EMPLOYER FACILITIES

The Union may post notices on bulletin boards in places and locations where notices usually are posted by the Employer for the Employees to read. All notices shall be on Union stationery, and shall be used only to notify employees of matters pertaining to Union affairs. Upon request to the responsible official in charge of a work location, the Union may use Employer premises for meetings during Employees' lunch hours, subject to availability of appropriate space and provided such meetings do not interfere with the Employer's business.

## ARTICLE VIII - NO STRIKES

In accordance with the New York City Collective Bargaining Law, as amended, neither the Union nor any employee shall induce or engage in any strikes, slowdowns, work stoppages, mass absenteeism, or induce any mass resignations during the term of this Agreement.

## ARTICLE IX - CITYWIDE ISSUES

This Agreement is subject to the provisions, terms and conditions of the Agreement which has been or may be negotiated between the City and the Union recognized as the exclusive collective bargaining representative on Citywide matters which must be uniform for specified Employees, including the Employees covered by this Agreement.

Employees in Rule X titles shall receive the benefits of the *Citywide Agreement* unless otherwise specifically excluded herein.

## ARTICLE X - UNION ACTIVITY

Time spent by Employee representatives in the conduct of labor relations with the City and on Union activities shall be governed by the terms of Executive Order No. 75, as amended, dated March 22, 1973, entitled "Time Spent on the Conduct of Labor Relations between the City and Its employees and on Union Activity" or any other applicable Executive Order.

## ARTICLE XI - LABOR-MANAGEMENT COMMITTEE

**Section 1.**

The Employer and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee in each of the agencies having at least fifty employees covered by this Agreement.



## Section 2.

Each labor-management committee shall consider and recommend to the agency head changes in the working conditions of the Employees within the agency who are covered by this Agreement.

Matters subject to the Grievance Procedure shall not be appropriate items for consideration by the labor-management committee.

## Section 3.

Each labor-management committee shall consist of six members who shall serve for the term of this Agreement. The Union shall designate three members and the agency head shall designate three members. Vacancies shall be filled by the appointing party for the balance of the term to be served. Each member may designate one alternate. Each committee shall select a chairperson from among its members at each meeting. The chairpersonship of each committee shall alternate between the members designated by the agency head and the members designated by the Union. A quorum shall consist of a majority of the total membership of a committee. A committee shall make its recommendations to the agency head in writing.

## Section 4.

The labor-management committee shall meet at the call of either the Union members or the Employer members at times mutually agreeable to both parties. At least one week in advance of a meeting the party calling the meeting shall provide, to the other party, a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of the committee.

# ARTICLE XII - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law, including the New York State Financial Emergency Act for the City of New York as amended.

# ARTICLE XIII - APPENDICES

The Appendix or Appendices, if any, attached hereto and initialed by the undersigned shall be deemed a part of this Agreement as if fully set forth herein.

# ARTICLE XIV - SAVINGS CLAUSE

In the event that any provision of this Agreement is found to be invalid, such invalidity shall not impair the validity and enforceability of the remaining provisions of this Agreement.

10.003

**WHEREFORE,** we have hereunto set our hands and seals this 13ᵗʰ day of *July* , 2009.

**FOR THE CITY OF NEW YORK
AND RELATED PUBLIC EMPLOYERS
AS DEFINED HEREIN:**

**FOR LOCAL 237, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
AFL -CIO:**

BY: _James F. Hanley_
     **JAMES F. HANLEY**
     Commissioner of Labor Relations

BY: _____
     **GREGORY FLOYD**
     President

**FOR THE NEW YORK CITY
HEALTH AND HOSPITALS CORPORATION**

BY: _____
     **Frank J. Cirillo**
     Senior Vice President

**APPROVED AS TO FORM:**

BY: _____
     **Paul T. Rephen**
     Acting Corporation Counsel

```
OFFICE OF LABOR RELATIONS
        REGISTRATION
OFFICIAL              CONTRACT

NO:
10 003        DATE:
              JUL 1 3 2009
```

**DATE   SUBMITTED   TO   THE   FINANCIAL   CONTROL   BOARD:**
_____, 2009

**UNIT:  Special Officers**

**TERM:     September 13, 2008 - September 25, 2010**

## Appendix A

### Longevity Increment Eligibility Rules

The following rules shall govern the eligibility of Employees for the longevity increments provided for in Article III, Section 10 of the *Special Officers 2008-2010 Agreement*:

1.  Only service in pay status shall be used to calculate the 15 years of service, except that for other than full time per annum Employees only a continuous year of service in pay status shall be used to calculate the 15 years of service. A continuous year of service shall be a full year of service without a break of more than 31 days. Where the regular and customary work year for a title is less than a twelve month year, such as a school year, such regular and customary year shall be credited as a continuous year of service counting towards the 15 years of service. If the normal work year for an Employee is less than the regular and customary work year for the employee's title, it shall be counted as a continuous year of service if the Employee has customarily worked that length work year and the applicable agency verifies that information.

2.  Service in pay status prior to any breaks in service of more than one year shall not be used to calculate the 15 years of service. Where an Employee has less than seven years of continuous service in pay status, breaks in service of less than one year shall be aggregated. Where breaks in service aggregate to more than one year they shall be treated as a break in service of more than one year and the service prior to such breaks and the aggregated breaks shall not be used to calculate the 15 years of service. No break used to disqualify service shall be used more than once.

3.  The following time in which an Employee is not in pay status shall not constitute a break in service as specified in Section 2 above:

    a.  Time on a leave approved by the proper authority which is consistent with the **Rules and Regulations of the City of New York** or the appropriate personnel authority of a covered organization.

    b.  Time prior to a reinstatement.

    c.  Time on a preferred list pursuant to **Civil Service Law Sections 80 and 81** or any similar contractual provision.

    d.  Time not in pay status of 31 days or less.

    Notwithstanding the above, such time as specified in subsections a, b and c above shall not be used to calculate the 15 years of service.

10003

4.  Once an Employee has completed the 15 years of "City" service in pay status and is eligible to receive the $500 longevity increment, the $500 shall become part of the Employee's base rate for all purposes. Fifteen months after the Employee begins to receive the $500 longevity increment, such $500 longevity increment shall become pensionable and as part of the Employee's base rate, the $500 longevity increment shall be subject to the general increases provided in Article III, Section 3(a) of this **Agreement**.

10.003



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

## 40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

September 11, 2008

Gregory Floyd, President
Local 237, IBT, AFL-CIO
216 West 14th Street
New York, NY 10011

### Re: 2008-2010 Local 237 Agreement

Dear Mr. Floyd:

This is to confirm certain mutual understandings and agreements regarding the above captioned Agreement.

For the purposes of Article III, Section 4(b)(i), "approved leave" is further defined to include:

a. maternity/childcare leave
b. military leave
c. unpaid time while on jury duty
d. unpaid leave for union business pursuant to Executive Order 75
e. unpaid leave pending workers' compensation determination
f. unpaid leave while on workers' compensation option 2
g. approved unpaid time off due to illness or exhaustion of paid sick leave
h. approved unpaid time off due to family illness
i. other pre-approved leaves without pay

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

*James F. Hanley*

JAMES F. HANLEY

AGREED AND ACCEPTED ON BEHALF OF
Local 237
BY: _____
    Gregory Floyd
    President

2008-2010 Special Officers Agreement        37        Local 237 IBT, AFL-CIO





THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

September 11, 2008

Gregory Floyd, President
Local 237, IBT
216 West 14th Street
New York, New York 10011

**Re: 2008-2010 Local 237 Agreement**

Dear Mr. Floyd:

This is to confirm certain mutual understandings and agreements regarding the above captioned Agreement.

1.      Two labor-management committees will be established to discuss family and safety related matters.

2.      The Citywide time and leave modifications effective July 1, 2004 shall not apply to the employees in this Unit Agreement.

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

*James F. Hanley*

JAMES F. HANLEY

**AGREED AND ACCEPTED ON BEHALF OF
Local 237**

BY: _____
Gregory Floyd
President

10003



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

September 11, 2008

Gregory Floyd, President
Local 237, IBT
216 West 14th Street
New York, New York 10011

**Re: 2008-2010 Local 237 Agreement**

Dear Mr. Floyd:

This is to confirm certain mutual understandings and agreements regarding the above captioned Agreement.

## Residency

The parties agree to continue to jointly support an amendment to Section 12-119 et seq. of the Administrative Code for the purpose of expanding permissible limits on residency to include the City of New York and Nassau, Westchester, Suffolk , Orange, Rockland or Putnam counties- with certain exceptions and limitations and except as may be prohibited by any other law requiring residency for appointment to certain positions including, but not limited to, the Public Officers Law – for employees covered by the terms of this Agreement.

Consistent with the above, Mayoral Directive 78-13, as amended July 26, 1978, and any other covered Employer's rules, regulations and/or operating procedures, shall be similarly modified to conform to the understanding of the parties. Upon enactment of legislation to implement the provisions herein, employees shall be subject to Section 1127 of the New York City Charter.

In the event that legislation substantially similar to that which was previously agreed to concerning the above referenced issue is passed for another similarly situated collective bargaining unit, and the substantially similar legislation does not include the members of IBT Local 237, the parties agree to jointly support similar legislation that would cover employees in IBT Local 237.



**NYCERS: Chapter 96 of the Laws of 1995**

In the event that legislation substantially similar to that which was previously agreed to, as specified in the March 29, 2007 side letter of the Local 237 2006-2008 Agreement, concerning the above referenced issue is passed for another similarly situated collective bargaining unit, and the substantially similar legislation does not include the members of IBT Local 237, the parties agree to jointly support similar legislation, as specified in the March 29, 2007 side letter of the Local 237 2006-2008 Agreement, that would cover employees in IBT Local 237. The parties continue to agree that Local 237, IBT shall be included in any recommendations made, as specified in the March 29, 2007 side letter of the Local 237 2006-2008 Agreement, regarding the establishment of revised additional contribution rate(s) and other remedies for members of the New York City Employees' Retirement System (NYCERS) and the Board of Education Retirement System (BERS) associated with Chapter 96 of the Laws of 1995.

If the above accords with your understanding, please indicate your agreement by executing the signature line below.

Very truly yours,

James F. Hanley

**AGREED AND ACCEPTED ON BEHALF OF LOCAL 237**

BY: _____

Gregory Floyd
President

10.003



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

September 11, 2008

Gregory Floyd, President
Local 237, IBT
216 West 14th Street
New York, New York 10011

**Re: 2008-2010 Local 237 Agreement**

Dear Mr. Floyd:

This is to confirm certain mutual understandings and agreements regarding the above captioned Agreement.

Effective on September 13, 2010, the bargaining unit shall have available funds not to exceed 0.25% to purchase recurring benefits, mutually agreed to by the parties, other than to enhance the general wage increases set forth in Section 2 a. i. and 2 a. ii. or the hiring rate for new employees set forth in Section 2 e. The funds available shall be based on the December 31, 2007 payroll, including spinoffs and pensions.

If the above accords with your understanding, please indicate your agreement by executing the signature line below.

Very truly yours,

James F. Hanley

**AGREED AND ACCEPTED ON BEHALF
OF LOCAL 237**

BY: _____
Gregory Floyd
President

10.003



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

September 11, 2008

Gregory Floyd, President
Local 237, IBT
216 West 14th Street
New York, NY 10011

**Re: 2008-2010 Local 237 Agreement**

Dear Mr. Floyd:

This is to confirm certain mutual understandings and agreements regarding the above captioned Agreement.

A labor-management committee shall be established with the Police Department to discuss:

1. safety related matters regarding school safety agents;

2. uniform related matters regarding school safety agents;

3. facility and equipment related matters regarding school safety agents.

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

James F. Hanley

**AGREED AND ACCEPTED ON BEHALF OF LOCAL 237**

BY: _____
Gregory Floyd
President

10003



THE CITY OF NEW YORK
# OFFICE OF LABOR RELATIONS
### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

September 12, 2008

Gregory Floyd, President
Local 237, IBT
216 West 14th Street
New York, New York 10011

**Re: 2008-2010 Local 237 Agreement**

Dear Mr. Floyd:

Labor management meetings shall be established with the NYC Health and Hospitals Corporation, Department of Education, Department of Transportation, and the Taxi and Limousine Commission to discuss mutual areas of concern.

Very truly yours,

James F. Hanley

10003



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

40 Rector Street, New York, NY 10006-1705

http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

September 11, 2008

Gregory Floyd, President
Local 237, IBT
216 West 14th Street
New York, NY 10011

Re: 2008-2010 Local 237 Agreement

Dear Mr. Floyd:

This is to confirm certain mutual understandings and agreements regarding the above captioned Agreement.

The execution of the collective bargaining agreement shall not be cited or referred to by either party to prejudice or enhance the respective positions of the parties in OCB Docket Nos. RE-178-08, RU-1249-05, RU-1250-05, AC-36-07, and RU-1255-08 or in any appeal that might flow therefrom.

The parties reserve their legal rights to pursue their respective claims regarding the cases specified above.

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

James F. Hanley

AGREED AND ACCEPTED ON BEHALF OF
LOCAL 237

BY:
Gregory Floyd
President

2008-2010 Special Officers Agreement                44                Local 237 IBT, AFL-CIO

10.003



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS
40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

**JAMES F. HANLEY**
*Commissioner*
**MARGARET M. CONNOR**
*First Deputy Commissioner*

September 11, 2008

Gregory Floyd, President
Local 237, IBT
216 West 14th Street
New York, NY 10011

**Re: 2008-2010 Local 237 Agreement**

Dear Mr. Floyd:

This is to confirm certain mutual understandings and agreements regarding the above captioned Agreement.

Effective April 10, 2009, there shall be a one-time lump sum cash payment to the welfare fund in the amount of $200.00 on behalf of each full-time active member and retiree who is receiving benefits on April 10, 2009.

If the above accords with your understanding, please execute the signature line provided below.

Very truly yours,

JAMES F. HANLEY

**AGREED AND ACCEPTED ON BEHALF OF**
**Local 237**

BY: _____
Gregory Floyd
President

10003