SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
GREGORY FLOYD, as President of LOCAL 237,
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CORINTHIANS ANDREWS,
PATRICIA ARMSTEAD and BERNICE
CHRISTOPHER, on behalf of themselves
and all other persons similarly situated,

                     Plaintiffs,

-against-

THE CITY OF NEW YORK,

                     Defendant.
------------------------------------------------------------------X

Index No. 102946/2010

Date Filed: March 5, 2010

**SUMMONS**

Plaintiff designates New York County as the place for trial. The basis for venue is residence. See CPLR §503.

TO THE ABOVE NAMED DEFENDANT:

      You are hereby summoned and required to serve upon Plaintiffs' attorney an answer to the complaint in this action within twenty (20) days service of this Summons upon you, exclusive of the day of service, or within thirty (30) days after service is complete if this Summons is not personally delivered to you within the State of New York. In the case of your failure to answer, judgment will be taken against you by default for the relief demanded in the annexed complaint.

Dated: March 5, 2010
New York, New York

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By: _____
Barry J. Peek
Melissa S. Woods
1350 Broadway, Suite 501
P.O. Box 822
New York, New York 10018-0026
(212) 239-4999

– and –

STROOCK & STROOCK & LAVAN LLP

By: _____
Alan M. Klinger
180 Maiden Lane
New York, New York 10038
(212) 806-5400

*Co-Counsel for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------x
GREGORY FLOYD, as President of LOCAL 237,
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CORINTHIANS ANDREWS,
PATRICIA ARMSTEAD and BERNICE
CHRISTOPHER, on behalf of themselves
and all other persons similarly situated,

          Plaintiffs,

 -against-

THE CITY OF NEW YORK,

          Defendant.
--------------------------------------------------------------------x

Index No. 102946/2010

IAS Part _____

COMPLAINT

JURY TRIAL
REQUESTED

  Plaintiffs, Gregory Floyd ("Floyd"), as President of Local 237, International Brotherhood of Teamsters (the "Union"), and the named plaintiffs Corinthians Andrews, Patricia Armstead, and Bernice Christopher (collectively, the "Named Plaintiffs") and together with Floyd, the Union and the class members they represent (collectively, the "Plaintiffs"), by and through their attorneys, Meyer, Suozzi, English & Klein, P.C. and Stroock & Stroock & Lavan LLP, for their Complaint, allege as follows:

## NATURE OF ACTION

  1. The Named Plaintiffs and the class members they represent serve as School Safety Agents, who provide security for the City School District of the City of New York (the "City Schools"). Plaintiffs allege that defendant the City of New York (the "City" or "Defendant") has discriminated against the Named Plaintiffs and the class members they represent by setting their salaries and paying them at a rate that is substantially lower than the wages paid to the predominantly male Special Officer title for the performance of substantially equal work, particularly those Special Officers who perform work for the City's Health and

Hospitals Corporation, the Department of Homeless Services, and Human Resources Administration/Department of Social Services.

2. The School Safety Agent title is a female-dominated workforce employed by the City. Approximately 70% of School Safety Agents are female.

3. The Special Officer title is a male-dominated workforce employed by the City. Approximately 66% of Special Officers are male.

4. The pay rates for both the School Safety Agents and the Special Officers are set forth in the Collective Bargaining Agreement for the period September 13, 2008 through September 25, 2010, by and between the City and related public employers (defined therein jointly as the "Employer") and the Union (the "Collective Bargaining Agreement"). A true and correct copy of the Collective Bargaining Agreement is annexed hereto as Exhibit A.

5. Plaintiffs bring this action seeking injunctive and monetary relief to remedy employment discrimination on the basis of sex in violation of the Equal Pay Act, 29 U.S.C. §§ 206(d) *et seq.* (the "EPA") and the New York State Equal Pay Act, N.Y. Labor Law §§ 194 *et seq.* (the "NYEPA").

### PARTIES

6. Plaintiff Floyd is a resident of the State of New York, and is the President of the Union.

7. The Union is an unincorporated association with its principal place of business in the City and County of New York and is the recognized bargaining agent for more than 24,000 City employees working in government agencies and certain Long Island municipalities, including the Named Plaintiffs and the class members they represent.

8. Plaintiff Corinthians Andrews has been a School Safety Agent since 1986 and currently works at Borough Command Training Unit School.

9. Plaintiff Patricia Armstead has been a School Safety Agent since 1984 and currently works at South Shore High School.

10. Plaintiff Bernice Christopher has been a School Safety Agent since 1981 and currently works at David A. Boodie Junior High School.

11. Defendant the City is a municipal corporation organized and existing under the laws of the State of New York.

12. Defendant employs School Safety Agents and Special Officers in the same establishment within the meaning of the EPA and NYEPA. The Collective Bargaining Agreement, pursuant to which each of the School Safety Agents and Special Officers are employed, defines the City as the "Employer."

13. The City Commissioner of Labor Relations, James F. Hanley, is the lead negotiator for the City and each agency with respect to the terms and conditions of employment for the School Safety Agents and Special Officers as set forth in the Collective Bargaining Agreement.

## JURISDICTION AND VENUE

14. This action arises under the EPA and the NYEPA.

15. Venue is proper in New York County pursuant to CPLR 503(a) because some of the parties reside in this county and the challenged policies and practices were adopted in this county.

## COLLECTIVE ACTION

16. With respect to the EPA claim, the Named Plaintiffs bring this action pursuant to 29 U.S.C. §§ 206(d) *et seq.* on behalf of themselves and all other persons similarly situated. The members of the class are all those employed by the City in the title of School

Safety Agents as of the commencement of this action and at any time during the preceding three-year period.

## CLASS ACTION

17. With respect to the NYEPA claim, the named Plaintiffs bring this action pursuant to Article 9 of the Civil Practice Law and Rules ("CPLR") on behalf of themselves and all others similarly situated.

18. The members of this class are all those employed by the City as School Safety Agents as of the commencement of this action and at any time during the preceding six-year period.

19. There are approximately 5,000 School Safety Agents. Accordingly, the class is so numerous that joinder of all members is impracticable.

20. The named Plaintiffs' claims are typical of the claims of the other members of the class. They have all sustained substantial damages as a result of the unlawful acts of the Defendant as described herein.

21. Common questions of law and fact exist as to the class, which predominate over any questions affecting only individual members of the class. These common questions of law and fact include, but are not limited to, whether the job duties performed by School Safety Agents are substantially similar to those performed by Special Officers, such that the stark disparity in pay rates (which are standardized and contained in the Collective Bargaining Agreement) is unlawful.

22. The claims or defenses of the representative parties are typical of the claims or defenses of the class because each Named Plaintiff is a School Safety Agent, with the same job responsibilities and subject to the same pay scale.

23. The representative parties will fairly and adequately protect the interests of the class because the Union is the statutorily-recognized bargaining agent for the Named Plaintiffs herein, and Plaintiff Floyd is the President of the Union. These Plaintiffs have associational standing to protect the interests of their members. The Named Plaintiffs have interests in this action, which are coincident with and not adverse to the members of the class that they seek to represent, have substantial financial interest in this action, and will therefore adequately protect the interests of the class.

24. Plaintiffs' counsel are experienced litigators and will vigorously prosecute this action on behalf of the class.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because it avoids duplication of potentially thousands of individual claims based upon the same law and facts as well as the risk of inconsistent results. In addition, many class members' claims might otherwise go unlitigated given that the class members' resources and size of each claim is small relative to the cost of litigation.

## FACTUAL ALLEGATIONS

26. The Named Plaintiffs are School Safety Agents who are paid less than their counterparts who are employed by the City as Special Officers.

27. The Office of Labor Relations acts as the City's representative in the conduct of all labor relations, as well as lead negotiator between the City and the Union, with respect to all titles in the bargaining units covered by the Collective Bargaining Agreement, including School Safety Agents and Special Officers.

28. School Safety Agents and Special Officers are employed by the City, which has a centralized personnel administration. For example, the New York City Office of Payroll Administration is the central City office responsible for, among other things, City

employee and retiree payrolls, maintaining and enforcing uniform payroll policies and procedures, coordinating payroll matters among central agencies, ensuring compliance with federal, state, and City taxing authorities, and managing and reconciling the City's payroll accounts.

29.     The titles of School Safety Agent and Special Officer are both classified as competitive titles in the classified civil service of the City of New York.

30.     All persons who wish to take the examination to become a Special Officer or a School Safety Agent submit an online application for the applicable examination through a centralized application site established by the City of New York Department of Citywide Administrative Services ("DCAS") Application Unit.  In addition, DCAS establishes General Examination Regulations that are applicable to the examinations required to be taken by applicants for School Safety Agent and Special Officer positions.

31.     Upon information and belief, the tests administered by the City for the position of School Safety Agent and Special Officer are substantially similar.

32.     To become a School Safety Agent, you must achieve a score of at least 70% on a multiple choice test, which includes questions designed to assess:  written comprehension, written expression, memorization, problem sensitivity, deductive reasoning, inductive reasoning, information ordering, spatial orientation, and visualization.  An applicant's score on this test determines his or her place on an eligible list.

33.     To become a Special Officer, you must achieve a score of at least 70% on a multiple choice test, which includes questions designed to assess:  written comprehension, written expression, memorization, problem sensitivity, deductive reasoning, inductive

reasoning, information ordering, flexibility of closure, and visualization. An applicant's score on this test determines his or her place on an eligible list.

**Job Duties and Responsibilities**

34. School Safety Agents perform equal work on jobs requiring equal skill, effort and responsibility as Special Officers and do so under similar working conditions.

35. The duties and responsibilities of a School Safety Agent include:

   a. patrolling school buildings and the surrounding premises to maintain order, preserve the peace, and safeguard life and property against fire, vandalism, theft, etc.;

   b. protecting students from unauthorized individuals entering or remaining in the schools and protecting students as they enter and exit the buildings, including at times, patrolling the public sidewalks between the school buildings and subway entrances;

   c. intervening in verbal or physical altercations between students and/or faculty, including, at times, gang and drug-related violence;

   d. confiscating weapons and other contraband from students;

   e. effecting arrests and/or issuing summonses to law violators, notifying the supervisor, the borough school Security Office Central school security office and the local police precinct; escorting persons in custody to the local precinct; processing arrests, and testifying in court regarding arrests;

   f. giving routine information to visitors and directing them to the proper personnel and offices. Requesting identification of, and removing from the premises, any unauthorized persons;

   g. maintaining records of persons entering and leaving buildings. At times, monitoring security camera systems to ensure that multiple entrances to a facility are secure;

   h. apprehending students and others violating Department of Education Rules and Regulations; preparing reports and testifying regarding these violations at a Superintendent's or Principal's hearing;

  i. making required oral and written reports on all unusual occurrences and criminal incidents, and actions taken in response to such events;

  j. operating and maintaining metal detection devices at relevant locations;

  k. transporting detainees to appropriate booking facilities;

  l. testifying in court regarding school-related incidents and arrests;

  m. remaining available on an "on-call" basis to patrol and protect public areas for non-school-related emergencies, including buildings suspected to be targeted for violence, such as synagogues following the September 11, 2001 terrorist attacks;

  n. aiding sick and injured persons and students, and calling ambulances when necessary;

  o. recording daily activities in memo book;

  p. operating a two-way radio; and

  q. providing information to visitors.

36.  The job duties and responsibilities of a Special Officer include:

  a. performing work of ordinary difficulty and responsibility relating to physical security, safety, loss prevention and maintenance of order, including patrolling designated areas of public buildings to maintain order, preserve the peace, and safeguard life and property against fire, vandalism, theft, etc.;

  b. giving routine information to visitors and clients and directing them to the proper individuals and offices;

  c. discouraging and ejecting loiterers and disorderly persons, including, when appropriate, arresting and issuing summonses to law violators on premises;

  d. transporting, escorting and/or arranging for transport of persons in custody to police precinct and having arrest recorded on police blotter, preparing and transmitting documents related to arrest and testify in court;

  e. reporting security incidents and unusual occurrences by telephone or radio and making subsequent written reports;

    f. providing assistance to the sick, injured, mentally and physically disabled, calling for ambulance and/or medical attention when necessary, and completing and forwarding forms thereon.

    g. recording daily actions in memo book;

    h. keeping bulletin board in his or her area current;

    i. maintaining records of persons entering or leaving buildings outside regular hours of employment; and

    j. making clock rounds as required; may control vehicular traffic on grounds and/or premises.

37. Upon information and belief, the positions of School Safety Agent and Special Officer require the same degree of skill, including the same type of experience, training, education, and ability.

38. The qualification requirements for the School Safety Agent and Special Officer positions are substantially similar.

39. To be considered for employment as a School Safety Agent, an individual must:

    a. Have a four-year high school diploma or its equivalent;

    b. Pass a civil service exam;

    c. Be at least twenty-one years of age;

    d. Be a United States citizen and resident of the City;

    e. Pass a drug screening test;

    f. Pass a character and background investigation (including payment of a $75.00 fingerprinting fee);

    g. Meet minimum medical and psychological requirements; and

    h. Maintain NYC Special Patrolman status.

40. To be considered for employment as a Special Officer, an individual must:

    a. Have a four-year high school diploma or its educational equivalent;

    b. Pass a civil service exam;

    c. Be at least twenty years of age;

    d. Be a United States citizen and resident of the City;

    e. Be of good character; and

    f. Maintain peace officer status.

41. The training requirements for the School Safety Agent and Special Officer positions are substantially similar.

42. Upon successful completion of the preliminary testing process, described above, a School Safety Agent must undergo fourteen weeks of training at the NYPD School Safety Agent Recruit Training School.

43. Upon successful completion of the preliminary testing process, a Special Officer must undergo five weeks of training through The City University of New York Public Safety Academy.

44. Upon information and belief, School Safety Agents and Special Officers must complete a minimum one-year probationary period upon commencement of employment in such position.

45. The School Safety Agent and Special Officers positions require the same amount of effort in that each position demands substantially the same amount of physical or mental exertion.

46. School Safety Agents and Special Officers exercise substantially the same degree of responsibility, require the same degree of accountability and entail job duties with substantially equal performance requirements.

**School Safety Agents and Special Officers**
**Perform Their Duties Under Similar Working Conditions**

47. School Safety Agents and Special Officers perform their job duties and responsibilities under similar working conditions.

48. School Safety Agents and Special Offers are required to provide security within public buildings, facing similar types of hazards.

49. School Safety Agents secure multi-level public school buildings, and patrol the perimeters of those buildings, including surrounding City streets. In the course of performing their duties, School Safety Agents face potential violence from both students and outsiders and must protect students and school personnel from authorized visitors and unauthorized third parties who enter and attempt to enter the schools and their perimeters.

50. Special Officers secure multi-level public buildings, such as City hospitals and social service centers, and patrol the perimeters of those buildings, including surrounding City streets. In the course of performing their duties, Special Officers face potential violence from visitors and must protect building personnel from authorized visitors and unauthorized third parties who enter and attempt to enter the buildings and their perimeters.

51. School Safety Agents and Special Officers wear substantially similar summer and winter uniforms.

52. School Safety Agent uniforms consist of eight-point cap, long or short sleeve shirt and tie, duty trousers, black shoes or boots, and an optional v-neck sweater, as well as a duty jacket, optional turtle neck, and black gloves in the winter.

53. Special Officer uniforms consist of an eight-point hat or a patched blue baseball cap, short or long sleeve shirt, tie in winter, standard or semi-tactical pants, trouser

belt, duty belt, black socks and black shoes or boots, and a duty jacket and black gloves in winter.

54. School Safety Agents and Special Officers carry substantially similar equipment while on duty.

55. Mandatory equipment for a School Safety Agent includes a black leather pen and pencil holder, memo book and black leather holder, flashlight and flashlight holder, black scabbard holder, handcuffs, black leather handcuffs holder, spare set of handcuffs and a protective mask.

56. Mandatory equipment for a Special Officer includes a black leather pen and pencil holder, memo book and black leather holder, flashlight and flashlight holder; expandable ASP baton 21-inch, black scabbard holder, handcuffs, black leather handcuffs holder, and spare set of handcuffs and a protective mask.

**Compensation**

57. The current maximum annual pay rate for a School Safety Agent is $35,349.

58. The current maximum annual pay rate for a Special Officer is $42,332.

59. Depending upon their seniority, School Safety Agents may be paid up to $6,982 less than their predominantly male counterparts in the Special Officer title despite the fact that School Safety Agents perform substantially similar work under similar working conditions.

60. While the starting salaries of School Safety Agents and Special Officers are approximately equal, within three years of service, they diverge dramatically although School Safety Agents and Special Officers continue to perform substantially similar work under similar working conditions.

61. School Safety Agents and Special Officers are eligible to participate in substantially similar employee benefit programs, such as group health plans and pension plans and receive substantially similar paid time off benefits.

### AS AND FOR PLAINTIFFS' FIRST CAUSE OF ACTION
### (EQUAL PAY ACT)

62. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 60 as if fully set forth herein.

63. This claim is brought under the federal Equal Pay Act, 29 U.S.C. § 206(d) *et seq.*

64. Defendant compensates the predominantly female School Safety Agent workforce at a lower rate of pay than it compensates the predominantly male Special Officers.

65. School Safety Agents and Special Officers perform equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions within the same establishment.

66. The acts, practices and policies of Defendant, as set forth above, constitute ongoing discrimination against the Named Plaintiffs and the class members they represent to whom they are similarly situated in violation of the Equal Pay Act, 29 U.S.C. §§ 206(d) *et seq.*

### AS AND FOR PLAINTIFFS' SECOND CAUSE OF ACTION
### (NEW YORK STATE EQUAL PAY ACT)

67. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 65 as if fully set forth herein.

68. This claim is brought under the New York State Equal Pay Act, N.Y. Labor Law §§ 194 *et seq.*

69. Defendant compensates the predominantly female School Safety Agent workforce at a lower rate of pay than it compensates the predominantly male Special Officers.

70. School Safety Agents and Special Officers perform equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions within the same establishment.

71. The acts, practices and policies of Defendant, as set forth above, constitute ongoing discrimination against the Named Plaintiffs and the class members they represent in violation of the New York State Equal Pay Act, N.Y. Labor Law §§ 194 *et seq.*

**WHEREFORE**, Plaintiffs respectfully request that this Court:

(i) Designate this action as a collective action;

(ii) Designate this action as a class action;

(iii) Certify the class of Plaintiffs described herein pursuant to the New York State Equal Pay Act;

(iv) Declare that Defendant discriminated against Plaintiffs in violation of the Equal Pay Act and the New York State Equal Pay Act;

(v) Enter a permanent injunction enjoining the Defendant from violating the Equal Pay Act and the New York State Equal Pay Act by paying women at rates lower than it pays men;

(vi) Award Plaintiffs back pay together with all other benefits to which Plaintiffs are entitled, with prejudgment interest;

(vii) Award Plaintiffs liquidated damages due to Defendant's willful and intentional conduct directed at Plaintiffs in violation of their rights;

    (viii) Award Plaintiffs reasonable attorneys' fees, expenses and costs of this proceedings; and

    (ix) Grant such other relief as the Court deems is just and proper.

Dated: New York, New York
   March 5, 2010

                MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

                By: _____
                  Barry J. Peek
                  Melissa S. Woods
                  1350 Broadway, Suite 501
                  P.O. Box 822
                  New York, New York 10018-0026
                  (212) 239-4999

                    – and –
                STROOCK & STROOCK & LAVAN LLP

                By: _____
                  Alan M. Klinger
                  180 Maiden Lane
                  New York, New York 10038
                  (212) 806-5400
                  *Co-Counsel for Plaintiffs*

106348

# VERIFICATION

STATE OF NEW YORK     )
                      : ss.:
COUNTY OF NEW YORK    )

      Gregory Floyd, being duly sworn, says: that he is the President of Local 237, International Brotherhood of Teamsters, a plaintiff in the within proceeding, united in interest with the other plaintiffs, he has read the foregoing Complaint and knows the contents thereof; the same is true to plaintiff's own knowledge, except as to matters stated to be alleged upon information and belief, and as to those matters, he believes it to be true.

                                                     _____
                                                     Gregory Floyd

Sworn to before me this
3rd day of March, 2010

_____
Notary Public

LILLIAN RODRIGUEZ
NOTARY PUBLIC, STATE OF NEW YORK
No. 01RO4708079
Qualified in Richmond County
Commission Expires November 30, 2013

106349