UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

CORINTHIANS ANDREWS, PATRICIA ARMSTEAD
and BERNICE CHRISTOPHER, on behalf of themselves
and all other persons similarly situated,

                                       Plaintiffs,    10 Civ. 2426 (SHS)(MD)

              -against-

THE CITY OF NEW YORK,

                                       Defendant.

------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

                                       **MICHAEL A. CARDOZO**
                                       Corporation Counsel of the
                                       City of New York
                                       Attorney for Defendant
                                       100 Church Street, Room 2-139
                                       New York, New York 10007-2601
                                       (212) 788-7970
                                       kcomfrey@law.nyc.gov

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 1 |
| ARGUMENT | 5 |

POINT I

| | |
|---|---|
| THE AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM | 5 |
|    A. Pleading Standard. | 5 |
|    B. No Prima Facie Case Pled | 7 |
|    C. No Single Establishment Pled | 10 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages**

Aldrich v. Randolph Cent. School Dist.,
    963 F.2d 520 (2d Cir.), cert. denied, 506 U.S. 965 (1992)..................................6

Ashcroft v. Iqbal,
    129 S.Ct. 1937 (2009)...........................................................................5, 6

Binyard v. City of New York, 151 A.D.2d 712 (2d Dep't 1989),
    appeal dismissed, 75 N.Y.2d 896 (1990).....................................................10

Cabrera v. New York City, 436 F. Supp. 2d 635 (S.D.N.Y. 2006)..............................10

Corning Glass Works v. Brennan, 417 U.S. 188 (1974)..........................................6, 7

Cortec Indus., Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991), cert. denied,
    503 U.S. 960 (1992)...............................................................................2

Harris v. Mills, 572 F.3d 66 (2d Cir. 2009).............................................................6

Haynes v. Guiliani, 238 A.D.2d 257 (1st Dep't 1997)..........................................10, 11

Hodgson v. Corning Glass Works,
    474 F.2d 226 (2d Cir. 1973), aff'd, 417 U.S. 188 (1974).....................................6

Int'l Audiotext Network v. American Tel. & Tel. Co.,
    62 F.3d 69 (2d Cir. 1995).........................................................................2

Lambert v. Genesee Hosp.,
    10 F.3d 46 (2d Cir. 1993), cert. denied, 511 U.S. 1052 (1994)..............................6

Lennon v. City of New York, 392 F. Supp. 2d 630 (S.D.N.Y. 2005)............................10

Scotti v. City of New York, 1990 U.S. Dist. Lexis 19417
    (S.D.N.Y. Feb. 28, 1990) ........................................................................10

Springer v. City of New York, 2006 U.S. Dist. LEXIS 8857
    (E.D.N.Y. Mar. 3, 2006)..........................................................................10

Vaughn v. New York, 108 Misc. 2d 994 (N.Y. Sup. Ct. 1980) ...................................11

Williams v. City of New York, 97 A.D.2d 372 (1st Dep't 1983)..................................10

Yant v. United States, 688 F.3d 1369 (Fed. Cir. 2009) ...............................................7

## **Statutes**

29 U.S.C. §§ 206(d) ...............................................................................................1, 6

N.Y.C. CBL § 12-311(3)(c)..........................................................................................3

61 R.C.N.Y. § 1-05......................................................................................................3

## **Rules and Regulations**

Fed. R. Civ. P. 12 (b)(6)...............................................................................................1

29 C.F.R. § 1620.18.....................................................................................................8

## PRELIMINARY STATEMENT

Three female school safety agents ("Plaintiffs") brought this collective action against the City of New York ("City") alleging pay discrimination on behalf of all employees holding the civil service title of school safety agent ("School Safety Agent or Agents"). Plaintiffs claim that School Safety Agents, an allegedly female dominated workforce, and Special Officers, a separate civil service title allegedly dominated by males, perform equal work on jobs requiring equal skill, effort and responsibility. The amended complaint asserts only one cause of action based on the Equal Pay Act, 29 U.S.C. §§ 206(d) *et seq.* ("EPA"), an ordinary EPA violation.[1] Plaintiffs commenced this action in New York State Court on March 5, 2010 and the City removed it to this Court.

The City moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), to dismiss the amended complaint because it fails to state a plausible EPA claim given the numerous, substantial differences between the School Safety Agents' and Special Officers' qualifications, duties and responsibilities, and working conditions and the absence of any factual assertions that suggest that the wage differential is based on sex. Therefore, the amended complaint should be dismissed in its entirety.

## STATEMENT OF FACTS[2]

The School Safety Agents claim that the City discriminated against them by paying them substantially less that the wages paid to City employees in the predominately male

---

[1] In response to the City's motion to dismiss filed on May 3, 2010, plaintiffs filed an amended complaint which dropped their state law claim and their willful federal EPA.

[2] The amended complaint's material factual allegations are deemed to be true solely for the purposes of this motion to dismiss.

title of Special Officer, particularly those Special Officers who work for the New York City Health and Hospitals Corporation ("HHC"), the City's Department of Homeless Services ("DHS") and the City's Human Resources Administration/Department of Social Services ("HRA"), for the performance of substantially equal work. Amended Complaint ("Comp."), Exhibit ("Ex.") 1, ¶ 1.[3]

The School Safety Agent and Special Officer titles are both classified in the civil service system as competitive titles. Id. ¶ 24. Plaintiffs allege that approximately 70% of the School Safety Agents are female and approximately 66% of the Special Officers are male. Id. ¶¶ 2, 3. The City employs approximately 5,000 School Safety Agents. Id. ¶ 15.

The Office of Labor Relations ("OLR") acts as the City's representative in the conduct of all labor relations. Id. ¶ 22. James F. Hanley, OLR's Commissioner, functions as the lead negotiator for the City, each of its agencies and HHC with respect to the bargaining units covered by the Collective Bargaining Agreement, including School Safety Agents and Special Officers. Id. ¶ 11 and Comp. Ex. A.

Local 237, International Brotherhood of Teamsters (the "Union") represent both the School Safety Agents and Special Officers. Comp. Ex 1, A at 2, § 1. If the Union believed that the School Safety Agents were inadequately compensated, they could have filed for an

---

[3] Unless otherwise noted, all references to "Ex." are to the exhibits annexed to the Declaration of Assistant Corporation Counsel, Kathleen M. Comfrey, dated August 13, 2010 ("Comfrey Decl."). The City has attached to the Comfrey Decl. certain documents that the complaint references but does not attach. The Court may consider these documents because they are incorporated by reference into the complaint. See Int'l Audiotext Network v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," and the Court may consider such documents when deciding a motion to dismiss without converting the motion to one for summary judgment) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)).

impasse. N.Y.C. CBL § 12-311(3)(c); 61 R.C.N.Y. § 1-05 (impasse procedure). The absence of any impasse allegation in the amended complaint is telling.

The most recent Collective Bargaining Agreement between the City, related public employers, HHC and the Union, for the September 13, 2008 through September 25, 2010 period is attached to the amended complaint as Ex. A. Id. ¶ 4. The Collective Bargaining Agreement sets forth the pay rates for both the School Safety Agents and the Special Officers. Id. The hiring rate for School Safety Agents specified in the Agreement is actually higher than that of Special Officers. Id. at Ex. A at 6-12. Effective October 10, 2009, newly hired School Safety Agents earned $31,259 as compared to newly hired Special Officers who earn $30,260, approximately $1,000 less. Id. at A-10. However, the wages for the incumbents in these titles are structured differently. Incumbents in the School Safety Agent title earn a flat rate of $35,323 effective October 10, 2009, whereas incumbent Special Officers have a step pay plan which ranges from $34,194 to $42,332. Id.

The City's Department of Citywide Administrative Services ("DCAS") administers separate civil service examinations for the School Safety Agent and Special Officer titles. Id. ¶ 25. To become either a School Safety Agent or a Special Officer, an applicant must score at least 70% on a multiple-choice test administered by DCAS. Id. ¶¶ 27-28. An applicant's score on the test determines his or her place on an eligible list. Id. The Notices of Examination for the positions of School Safety Agent, Ex. 2, Special Officer (for agencies under the jurisdiction of DCAS), Ex. 3, and Special Officer (HHC), Ex. 4 describe the job qualifications, the tests and the abilities being assessed by the tests. Unlike the Notice of Examination for School Safety Agents, the Notice of Exam for HHC Special Officers does not list spatial orientation and visualization as possible test subjects. Compare Ex. 2 to Ex. 4.

The amended complaint describes some, but not all of the qualifications for School Safety Agents and Special Officers listed in the Notices of Examination. Comp., Ex. 1 ¶¶ 34-35. Unlike Special Officers, School Safety Agents must be at least 21 years of age. Comp., Ex. 1 ¶ 34(c) with Ex. 3 at 2. Unlike School Safety Agents, all HHC Special Officers must possess and maintain a driver's license. Compare School Safety Agent Notice of Examination, Ex. 2 at 3 (driver's license not required) with HHC Special Officer Notice of Examination, Ex. 4 at 2 (valid driver's license required). Moreover, Special Officers working for City agencies under the jurisdiction of DCAS who hold motor vehicle or commercial driver's licenses are eligible for appointment to Special Officer positions that require such licenses. Ex. 3 at 3.

The amended complaint lists seventeen duties and responsibilities for School Safety Agents and eleven for Special Officers. Comp., Ex. 1 ¶¶ 30-31. The duties enumerated differ in several key respects. Special Officers may control vehicular traffic, make clock rounds as required and keep bulletin boards current. Ex. 1 ¶ 31(h) and (j). Special Officers operate both motor vehicle and commercial vehicles. Ex. 3 at 2 and Ex. 4 at 3. School Safety Agents, on the other hand, may be designated as scanner operators who operate and maintain metal detection devices. School Safety Agent Job Specifications, Ex. 5 at 2-3. Moreover, the Special Officer Notices of Examination list the following physical activities for Special Officers, none of which are included in the School Safety Agent Notice of Examination:

- Driving or sitting in a patrol car during a tour while remaining alert;
- Assist in carrying an injured adult;
- Detecting odors such as those caused by smoke or gas;
- Reading and writing under low light conditions;
- Carrying or wearing heavy equipment; and

4

- Wearing a bullet-resistant vest.

Compare Ex. 2 with Ex. 3 & 4.

Plaintiffs claim that School Safety Agents and Special Officers wear substantially similar uniforms and carry substantially similar mandatory equipment. Comp., Ex. 1 ¶ 49-54 However, unlike School Safety Officers, Special Officers are authorized to carry a weapon, a 21-inch expandable ASP baton. Compare Comp., Ex. 1, ¶ 53 with ¶ 54.

As for working conditions, plaintiffs allege that School Safety Agents and Special Officers perform their job duties under similar working conditions. Id. ¶¶ 42-48. According to plaintiffs, employees in both titles secure public buildings and patrol the perimeters of those buildings, including public streets. Id. ¶¶ 43 & 47. Claiming that both School Safety Agents and Special Officers face similar types and degrees of hazards, plaintiffs point out that ten City schools have been designated persistently dangerous under the Federal No Child Left Behind Act and ninety have permanent metal detectors. Id. ¶¶ 45-46. Although plaintiffs offer some statistics about crime incident reports in City schools, they offer no such data for the facilities secured by Special Officers. Id. ¶¶ 47-48.

## ARGUMENT

### POINT I

**THE AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

A.  **Pleading Standard**

Under the plausibility standard that the United States Supreme Court clarified in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Determining plausibility is a "a context-specific task that requires the reviewing

5

court to draw on its judicial experience and common sense." Id. at 1950. Moreover, the Court must only accept as true the allegations that contain factual matter, and need not accept as true the allegations that merely state legal conclusions. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)(quoting Ashcroft v. Iqbal, 129 S. Ct. at 1949 ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].")).

The Equal Pay Act ("EPA") precludes an employer from discriminating against its employees by paying different wages to males and females who perform "equal work." 29 U.S.C. § 206(d)(1). In order to state a prima facie case of ordinary salary discrimination based on sex, plaintiffs must demonstrate that 1) the defendant pays different wages to employees of the opposite sex because of their sex; 2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and 3) the jobs are performed under similar working conditions. See Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974); Aldrich v. Randolph Cent. School Dist., 963 F.2d 520, 524 (2d Cir.), cert. denied, 506 U.S. 965 (1992). A plaintiff need not demonstrate that her job is identical to a higher paid position, but must show that the two positions are "substantially equal." See Lambert v. Genesee Hosp., 10 F.3d 46, 56 (2d Cir. 1993), cert. denied, 511 U.S. 1052 (1994). However, jobs which are "merely comparable" are insufficient to satisfy a plaintiff's prima facie burden. See id., 10 F.3d at 56 (citing Hodgson v. Corning Glass Works, 474 F.2d 226, 234 (2d Cir. 1973), aff'd, 417 U.S. 188 (1974)).

Under Ashcroft v. Iqbal, 129 S. Ct. at 556, a claim is facially plausible when the complaint pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The plausibility standard is not akin to a "probability requirement," as it asks for more than a sheer possibility that a defendant has acted

6

unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 557. Plaintiffs' amended complaint fails to meet this standard.

B.  **No Prima Facie Case Pled.**

This is not the classic EPA case in which an employer is paying differential wage rates to male and female employees who hold the same title or position. E.g., Corning Glass Works v. Brennan, 417 U.S. 188 (1974)(male night shift inspectors paid more than female day shift inspectors performing the same duties). To the contrary, here the wages of both male and female School Safety Agents are governed by the exact same wage scale and no differential exists as between them. Comp., Ex. 1, A at 6-12.

Reliance on gender ratios alone does not establish gender discrimination absent a showing of past or present discrimination. Yant v. United States, 588 F.3d 1369, 1373-74 (Fed. Cir. 2009). In Yant, the Court pointed out that the legislative history clearly evidenced the congressional intent to place the burden on plaintiff to show that discrimination based on sex exists or at one time existed. Id. at 1373.

While the amended complaint repeats in conclusory terms the mantra that School Safety Agents and Special Officers perform equal work on jobs requiring equal skills, effort and responsibility, the factual content of the amended complaint does not support this conclusion. For example, the minimum age requirement for these positions is different. Comp., Ex. 1 ¶¶ 39-40. Unlike School Safety Agents, all HHC Special Officers must possess and maintain a driver's license and licensed City Special Officers are eligible for particular Special Officer jobs. Comp. Ex. 2 at 3 (driver's license not required) with Ex. 4 at 2 (driver's license required) and Ex. 3 at 3 (selective certification for licensed drivers). Special Officers carry 21-inch expandable batons,

7

weapons that are not issued to School Safety Agents. Comp., Ex. 1 ¶¶ 55-56. The Special Officer Notices of Examination list the following physical activities, none of which are included in the School Safety Agent Notice of Examination:

- Driving or sitting in a patrol car during a tour while remaining alert;
- Assist in carrying an injured adult;
- Detecting odors such as those caused by smoke or gas;
- Reading and writing under low light conditions;
- Carrying or wearing heavy equipment; and
- Wearing a bullet-resistant vest.

Exs. 3 & 4.

As for working conditions, the amended complaint does not even allege that they are substantially similar, stating instead that School Safety Agents and Special Officers "perform their job duties and responsibilities under similar conditions." Comp., Ex. 1 ¶ 42. The term "similar working conditions" encompasses two subfactors: "surroundings" and "hazards." "Surroundings" measure the elements, such as toxic chemicals or fumes, regularly encountered by a worker, their intensity and their frequency. "Hazards" take into account the physical hazards regularly encountered, their frequency and the severity of injury they can cause. 29 C.F.R. § 1620.18.

The amended complaint focuses on the "hazards" aspect of this test, alleging that School Safety Agents face potential violence from students and outsiders, while Special Officers face potential violence from visitors and unauthorized intruders. Id. Ex. 1 ¶ 47-48. Common sense suggests, however, that the potential violence faced by School Safety Agents, especially those who patrol kindergartens and elementary schools, is not comparable to that faced by

8

Special Officers who patrol facilities such as homeless shelters, food centers and hospitals that are open to the public. The issuance of expandable 21-inch batons and bullet-resistant vests to Special Officers, but not to School Safety Agents, underscores this point. Id. ¶¶ 53-54.

In an attempt to offer some factual support for their conclusory allegations about the comparative violence faced by School Safety Agents and Special Officers, plaintiffs added only three factual allegations about violence in City schools, none of which provides a basis for inferring that School Safety Agents face substantially the same hazards that Special Officers do. According to plaintiffs, *ten* City schools were designated as persistently dangerous under the "No Child Left Behind Act" for the 2009-2010 school year, *ninety* City schools have permanent metal detectors and 1,042 major crime incidents were reported in City schools for the 2007-2008 school year. Id. ¶¶ 45-46. The first statistic suggests that most School Safety Agents do not work in dangerous environments as the City school system, recognized as the largest public school system in the country, is enormous. The second statistic suggests that a number of School Safety Agents have a protective mechanism, metal detectors, that Special Officers may not have. The third statistic is especially meaningless as it gives no indication as to the nature or locus of the reported crimes or whether they were substantiated. Finally, the amended complaint is devoid of any comparable information about the hazards faced by Special Officers. Therefore, it is impossible from the face of the amended complaint, to draw any plausible inferences regarding the comparative hazards faced by School Safety Agents and Special Officers.

The amended complaint also is devoid of any factual content that explains the history of the collective bargaining negotiations for these titles or the origin of the wage differential. In short, the amended complaint contains no facts from which it can be inferred that the different rate structures for School Safety Agents and Special Officers were based on sex,

either historically or presently. Moreover, the amended complaint fails to acknowledge that the hiring rate specified in the Collective Bargaining Agreement for School Safety Agents exceeds that of Special Officers by approximately $1,000 in the first year, claiming instead that starting salaries are "approximately equal." Compare Comp., Ex. 1 ¶ 58 with Ex. 1 at A-10 ($31,259 hiring rate for School Guard; $30,260 hiring rate for Special Officer).

C.  **No Single Establishment Pled.**

Plaintiffs' amended complaint mixes apples and oranges by lumping together employees of the City and HHC and claiming that they all work in the same establishment for EPA purposes because they all are employed by the City. Comp. ¶¶ 10, 28. As HHC and the City are distinct legal entities, they can not constitute a single establishment for EPA purposes.[4]

New York federal and state courts consistently have recognized that HHC is a separate legal entity from the City. E.g., Cabrera v. New York City, 436 F. Supp. 2d 635, 641 (S.D.N.Y. 2006)(quoting Lennon v. City of New York, 392 F. Supp. 2d 630, 639 (S.D.N.Y. 2005)(finding that because HHC rather than the City was the plaintiff's employer, plaintiff could not sue the City under Title VII, the ADEA or the ADA)); Springer v. City of New York, 2006 U.S. Dist. LEXIS 8857, 29-30 (E.D.N.Y. Mar. 3, 2006)(same); Haynes v. Guiliani, 238 A.D.2d 257, 258 (1st Dep't 1997) (holding, "[t]he New York City Health and Hospitals Corporation is an entity separate and distinct from the City of New York"); Binyard v. City of New York, 151 A.D.2d 712, 712 (2d Dep't 1989)(same), appeal dismissed, 75 N.Y.2d 896 (1990)(same); Williams v. City of New York, 97 A.D.2d 372, 373 (1st Dep't 1983)(same).

---

[4] The issue of whether New York City itself constitutes a single establishment for EPA purposes is still an open question which is not amenable to resolution at the motion to dismiss stage. See, e.g., Scotti v. City of New York, 1990 U.S. Dist. Lexis 19417 (S.D.N.Y. Feb. 28, 1990).

Moreover, New York courts consistently have held that as a separate legal entity, HHC has "[c]omplete autonomy respecting its personnel." See, e.g., Haynes, 238 A.D.2d 257, 258 (internal quotations omitted). After reviewing the legislative history for the creation of HHC as a public benefit corporation, the New York Supreme Court concluded that it "[c]learly demonstrates that [HHC] was intended to function as an independent entity in every regard and was to have complete autonomy respecting its personnel . . ." and that "[a]n employee of this independent agency, was not controlled or subject to employment conditions set by the City for its workers." Vaughn v. New York, 108 Misc. 2d 994, 998 (N.Y. Sup. Ct. 1980). Therefore, the City can not be considered as the employer of the HHC Special Officers under the EPA.

## CONCLUSION

For the reasons set forth above, the City respectfully requests that the Court issue an order granting its motion to dismiss, dismissing the amended complaint in its entirety with prejudice, entering judgment for the City, and granting the City costs, fees, and disbursements together with such other and further relief as this Court may deem just and proper.

Dated:   New York, New York
         August 13, 2010

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the
                                         City of New York
                                        Attorney for Defendant
                                        100 Church Street, Room 2-139
                                        New York, New York 10007
                                        (212) 788-7970
                                        kcomfrey@law.nyc.gov

                                By:     /s/ _____
                                        Kathleen M. Comfrey
                                        Assistant Corporation Counsel

TO:  MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
Attorneys for Plaintiffs
1350 Broadway, Suite 501
P.O. Box 822
New York, New York 10018-0026
(212) 239-4999


STROOCK & STROOCK & LAVAN LLP
Attorneys for Plaintiffs
180 Maiden Lane
New York, New York 10038
(212) 806-5400