UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

CORINTHIANS ANDREWS, et al.,

                                        Plaintiffs,
                                                        Case No. 10 Civ. 2426
                    -against-                           (SHS)(AJP)

THE CITY OF NEW YORK,

                                        Defendant.

------------------------------------------------------------------- X


**JOINT MOTION FOR FINAL CERTIFICATION OF A COLLECTIVE ACTION AND
PRELIMINARY APPROVAL OF A COLLECTIVE ACTION SETTLEMENT,
PROPOSED NOTICE OF SETTLEMENT AND SETTLEMENT PROCEDURE**

Subject to Court approval, Plaintiffs Corinthians Andrews, Patricia Williams, and Bernice Christopher ("Named Plaintiffs"), current or former School Safety Agents ("SSAs") employed by the City of New York ("City or the Defendant"), have settled this pay discrimination action on behalf of themselves and all other similarly situated SSAs (collectively, "Plaintiffs or Class Members").  The proposed settlement resolves Plaintiffs' claims on a class-wide basis and satisfies all of the criteria for preliminary settlement approval under federal law.

The parties respectfully request that the Court: (1) finally certify a collective action consisting of all SSAs employed by the City since March 5, 2007; (2) finally confirm Linsey Law Firm PLLC as Class Counsel; (3) grant preliminary approval of the parties' Stipulation of Settlement ("Settlement"), a copy of which is attached as Exhibit A to the Declaration of James L. Linsey ("Linsey Decl."); (4) approve the Notice of Proposed Settlement Class Action lawsuit, a copy of which is attached as Exhibit B to the Linsey Decl.; and (5) direct that a hearing be held to determine whether the Settlement is fair, adequate and reasonable.

## PROCEDURAL BACKGROUND

On March 5, 2010, the Named Plaintiffs, together with Gregory Floyd, President of City Employees Union Local 237 of the International Brotherhood of Teamsters ("Teamsters Local 237"), filed this lawsuit, individually and on behalf of all others similarly situated, alleging that the City had engaged in unlawful pay discrimination in violation of the Equal Pay Act, 29 U.S.C. §§ 206(d), *et seq.* ("EPA") and the New York State Equal Pay Act, N.Y. Labor Law § 194 ("NYEPA"). Plaintiffs, a predominantly female workforce, claimed that even though their duties and responsibilities were substantially equal to that of Special Officers ("SOs"), a predominantly male workforce, they earned substantially less than SOs.[1]

Defendant moved to dismiss the complaint alleging, in part, that the City was exempt from the NYEPA and that Teamsters Local 237 lacked standing to assert EPA claims on behalf of its members. *See* Dkt. No. 8 - 10. The Parties stipulated to allow Plaintiffs to amend the Complaint. *See* Dkt. No. 14. On July 10, 2010, Plaintiffs filed an Amended Complaint, abandoning their NYEPA claims and removing Teamsters Local 237 President Gregory Floyd as a plaintiff. *See* Am. Compl., Dkt. No. 15.

On August 17, 2010, Defendant moved to dismiss the Amended Complaint alleging, in part, that the numerous differences between the duties and tasks of SSAs and SOs necessarily precluded the relief that Plaintiffs sought. *See* Def.'s Memo. of Law in Support Of Motion to Dismiss, Dkt. No. 22. On March 11, 2011, following oral argument, the Court denied

---

[1] SSAs work for the New York City Police Department ("NYPD"). SOs work for the Administration for Children Services ("ACS"), Department of Homeless Services ("DHS"), the Department of Citywide Administrative Services ("DCAS"), the Department of Health and Mental Hygiene ("DOH"), the Health and Hospitals Corporation ("HHC"), the Human Resources Administration ("HRA") and the Office of the Chief Medical Examiner ("OCME"), a division of DOH.

Defendant's Motion in its entirety.  *See* Dkt. No. 27.

On October 5, 2011, with Defendant's consent, Plaintiffs filed their Second Amended Complaint, which added claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL").  *See* Dkt. No. 38.

On November 17, 2011, with the consent of the Defendant, the Court entered an order preliminarily certifying the EPA collective action, which includes all SSAs employed by the City since March 5, 2007.  *See* Dkt. No. 42.  Defendant then sent a court-approved notice to those members of the preliminarily-certified EPA collective action who had not already signed consents to join the action.  By the Court-ordered deadline of May 16, 2012, over 5,200 persons filed signed consents to join the action.

Following the failure of mediation under the Local Rules of this Court, *see* Dkt. No. 91, the Court ordered formal discovery to begin in the Fall of 2012.  *See* Dkt. No. 149.  Defendant deposed 135 SSAs in the course of six months.  Additionally, the Parties took depositions of SOs and SSAs.  In total, the Parties conducted 177 depositions.  Moreover, before the close of discovery on May 22, 2013, *see* Dkt. No. 183, Defendant responded to multiple formal and informal interrogatories and document requests made by Plaintiffs with voluminous materials.

On March 28, 2013, with the consent of Defendant, Plaintiffs filed their Third Amended Complaint, Dkt. No. 176, conditioned on Plaintiffs expressly waiving any right to present testimony or seek damages other than backpay (i.e., waiving compensatory damages of any kind as that term is defined in 42 U.S.C. § 1981a, including but not limited to "pain and suffering" damages).  *See* Dkt. No. 175.  The Third Amended Complaint clarified and supplemented the allegations and causes of action in the Second Amended Complaint.  *See* Dkt. No. 175.

On July 8, 2013, after extensive discovery had been concluded, Plaintiffs moved for final certification of the EPA collective action and Rule 23 class certification of Plaintiffs' claims under Title VII and the NYSHRL.  Final briefing was completed and filed with the Court on August 22, 2013.  Dkt. No. 195.  On August 15, 2014, Plaintiffs' motion for class certification was dismissed with leave to renew if settlement efforts failed. *See* Dkt. No. 226.

## SETTLEMENT DISCUSSIONS

Prior to the commencement of formal discovery, the parties tried, but failed to successfully mediate resolution of this action.  Over the course of several months, Class Counsel and the City's counsel conducted informal discovery, interviewing both SSAs and SOs at their worksites in schools, hospitals, office buildings, and homeless shelters.  Counsel for the parties met several times with a court appointed mediator to no avail.  As a result, the parties engaged in formal discovery summarized briefly above.

Beginning around March, 2014, Class Counsel and Georgia Pestana, the Law Department's Executive Assistant Corporation Counsel for Employment and Policy Litigation, communicated by phone and email about the possibility of settling the lawsuit.  On April 22, 2014, the Parties filed a Joint Motion to Stay the Proceedings for 90 days to give the parties an opportunity to settle.  *See* Dkt. No.  212.  On June 19, 2014, Plaintiffs informed the Court that settlement negotiations had stalled and requested the return of the case to the active litigation track.  *See* Dkt. No. 216.  The Court granted Plaintiffs request on June 20, 2014.  *See* Dkt. No. 213.  Following the lifting of the stay, Class Counsel and Ms. Pestana, continued to communicate on settlement issues by phone and email until July 16, 2014.  Class Counsel sent Ms. Pestana drafts of a settlement document.  However, the City did not communicate outlines of its settlement offer until August, as set out below.

Prior to its settlement proposal to Class Counsel and the Named Plaintiffs, the City engaged in collective bargaining negotiations with various unions representing municipal employees, including Teamsters Local 237, which represents both SSAs and SOs. This Union represented both SSAs and SOs during the negotiation of the expired 2008-2010 collective bargaining agreement governing SSA and SO wages. On August 26, 2014, the City and Teamsters Local 237 reached a Memorandum of Agreement covering the period from September 26, 2010 through March 25, 2018 that modifies and extends the collective bargaining agreement that expired on September 25, 2010 ("2010-2018 Memorandum of Agreement"). Pursuant to the terms of this Memorandum of Agreement, SSAs will receive a series of increases over the term of the contract so that the pay rates of incumbent SSAs and SOs will be equalized by the end of the contract in March 2018. Employees hired into both titles on and after September 1, 2014 will have equal salaries. The Memorandum of Agreement was ratified by the members of Teamsters Local 237 on September 11, 2014, and does not require the approval of this Court to be implemented.

During the collective bargaining negotiations, the City and Local 237 discussed possible ways of settling this lawsuit. On or about Friday, August 8, 2014, Ms. Pestana contacted Class Counsel and described the outlines of a settlement proposal that had been discussed by the Union and the City's Office of Labor Relations ("OLR"). Class Counsel agreed to discuss the proposal with the Named Plaintiffs. The following Monday, Georgia Pestana and Renee Campion, OLR's First Deputy Commissioner, met with Class Counsel and the Named Plaintiffs. The proposal that Ms. Pestana had described to Class Counsel on August 8th was discussed in greater detail. While Class Counsel and Ms. Pestana's respective accounts of what was said during the negotiations that occurred between August 7, 2014 and August 11, 2014 vary, the relevant and

quite evident fact is that those discussions were at arms-length.  See Linsey  Decl. ¶¶ 18-21 and Declaration of Georgia Pestana ¶ 3.

At Class Counsel's request, the Court held a pre-trial conference on August 15, 2014. During the conference, Class Counsel indicated that he could not opine on the fairness of the City's settlement proposal because he did not have sufficient information.  At the conclusion of that conference, the Court referred the case to Magistrate Judge Andrew J. Peck for a settlement conference.  Dkt. No. 225.

On August 25, 2014, Magistrate Judge Peck scheduled a settlement conference for September 12, 2014 and directed that each party make at least one settlement proposal or response before submitting a confidential settlement memo to the Court.  Dkt. No. 229.  In compliance with that order, the parties exchanged settlement proposals on September 9, 2012. The City also responded to multiple requests by Class Counsel for additional information to assess the fairness of the proposed Settlement.

On September 12, 2014, a settlement conference was held before the Magistrate Judge Peck.   Present were  the  Named Plaintiffs, Class  Counsel, the  City's attorneys, and representatives from the New York City Office of Labor Relations and Office of Management and Budget.  After several hours, at the conclusion of that conference, a settlement of this action was agreed to by the Named Plaintiffs and their respective counsel, and read into the record, subject to approval by this Court**.**  *See* Minute Entry, September 15, 2014 and Transcript, Dkt. No. 234.

## SUMMARY OF THE SETTLEMENT TERMS

The Settlement Agreement provides that solely for purposes of settlement of this action,

the Court will enter an order finally certifying the EPA collective action in accordance with 29 U.S.C. § 216(b) as follows: all persons who worked in the title of School Safety Agent in New York City Schools at any time since March 5, 2007, and finally confirming Linsey Law Firm PLLC as Class Counsel.  The Settlement Agreement further provides that that Plaintiffs' Title VII and NYSHRL claims are to be dismissed with prejudice and, thus, class certification as to those claims is moot.  *See* Linsey Decl. Exhibit A at ¶¶ 18-19.

The Settlement Agreement then prescribes equitable and monetary relief to be provided on Plaintiffs' EPA claims.  Specifically, the Settlement provides for equitable relief by equalization of the wage rates for SSAs and SOs in accordance with the provisions of Section 6 of the 2010-2018 Memorandum of Agreement between the City and Teamsters Local 237.  *See id.* at ¶ 21.  This provision for equalization of wage rates provides considerable economic benefit for the Class Members.

Additionally, the Settlement Agreement provides for monetary payments of backpay within 90 days of the Effective Date[2] of the Agreement.  All backpay and service award amounts will be subject to appropriate federal, state and local withholding taxes, and these payments shall be deemed to be paid solely in the year in which such payments are made.  The backpay amounts will be distributed as follows:

- Group No. 1 includes all active SSAs who have completed three years of

---

[2] The Settlement will be effective only when all of the following events have occurred:  (i) the Stipulation of Settlement has been executed by the named Plaintiffs, Class Counsel, and Defendant's Counsel; (ii) the Notice of Proposed Settlement and Objection and Opt Out Forms have been sent to all Class Members, providing them with an opportunity to opt out and/or object to the Settlement; (iii) the Court has held a final hearing and entered a final order dismissing the action with prejudice, and approving this Stipulation of Settlement; and (iv) the later of the following events: the date thirty  calendar days after entry of an order by the District Court granting final approval to the Settlement, if there are no appeals; or, if there is an appeal of the Court's decision granting final approval, the day after all appeals are finally resolved in favor of final approval.

service in the SSA title as of September 1, 2014; Defendant will pay each person in Group No. 1. seven-thousand dollars ($7,000.00).

- Group No. 2 includes all persons who retired from service as SSAs between March 5, 2010 and August 31, 2014 and had completed at least three years of service in the SSA title as of the date of retirement; Defendant will pay each person in Group No. 2 seven-thousand dollars ($7,000.00).

- Group No. 3 includes all SSAs who timely opted into this action, have not had their EPA claims dismissed by the Court, who left after at least three years of service and did not retire between March 5, 2010 and August 31, 2014, and who were not dismissed for cause and did not resign in lieu of termination; Defendant will pay each person in Group No. 3. a pro-rated share of three-thousand dollars ($3,000.00) based on the number of months of service between March 5, 2010 and August 31, 2014 (for example, if a SSA had been employed since March 5, 2007 and worked consistently from March 5, 2010 until June 5, 2012 and then voluntarily left service, the former SSA will receive one thousand five-hundred dollars ($1,500.00) because he or she worked 27 of the 54 months).

- Group No. 4 includes all SSAs with three or more years of service as of September 1, 2014 who timely opted into this action and are not active as of September 1, 2014, but are in one of the following City payroll statuses: workers compensation, sick leave without pay, Family and Medical Leave without pay, childcare leave without pay, military leave without pay;

> Defendant will pay each person in Group No. 4. a pro-rated amount of
> seven-thousand dollars ($7,000.00) based on time in paid service status
> between March 5, 2010 and August 31, 2014.

Finally, the Settlement provides for the payment of $18,000 to each of the Named Plaintiffs for their dedicated service in this action.

Class Members who do not timely opt out of the action will release Defendant from all claims that were or could have been asserted in the action.

## ATTORNEYS' FEES AND COSTS

Plaintiffs' Counsel will apply for attorneys' fees and costs, the amount of which will be determined by the Court. All fee applications must be filed by November 3, 2014 and the Court will conduct a hearing on the fee applications at the same time it conducts a hearing on the fairness of the Settlement. Except as may be otherwise determined by the Court, the Settlement is not conditioned on the award of attorneys' fees and the parties agreed at the September 12, 2014 settlement conference that the Court would determine the amount of fees and costs that are payable to Plaintiffs' counsel after a hearing on the matter is conducted by the Court.

## ARGUMENT

## I.    PRELIMINARY APROVAL OF THE SETTLEMENT IS APPROPRIATE.

The law favors settlements of class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context) (quoting *In re Paine Webber Ltd. v. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). The approval of a proposed class action is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "In exercising this discretion, courts should give weight to the parties' consensual

decision to settle the class action because they and their counsel are in unique positions to assess potential risks." *Yuzary v. HSBC Bank USA, N.A*., No. 12 Civ. 3693 (PGG), 2013 U.S. Dist. Lexis 61643, at *2-3 (S.D.N.Y. Apr. 30, 2013)(citation omitted).

As the first step in the settlement approval process, preliminary approval "simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement." *Id.* at *3. "After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input." *Id*. (citation omitted).

To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).  Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).   A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 U.S. Dist. LEXIS 72645 (S.D.N.Y. July 27, 2007).  "If the proposed settlement 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of settlement." *Yuzary*, 2013 U.S. Dist. Lexis 61643, at *4 (citation omitted).

## II.     THE PARTIES REACHED A SETTLEMENT OF A BONA FIDE DISPUTE AS TO THE WAGES OF SSAs AFTER A CONTESTED LITIGATION.

To prove an EPA violation, Plaintiffs must establish that: i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working

conditions.  Proof of discriminatory intent is not required.  Jobs which are merely comparable are insufficient to satisfy Plaintiffs' burden.  While the jobs at issue need not be identical, they must be substantially equivalent.  In assessing substantial equivalence, actual job content rather than job descriptions, titles or classifications control.  While there are many similarities between the SSA and SO jobs, differences exist sufficient to pose serious risk of loss for Plaintiffs in this case.

This lawsuit, started in March 2010, has been joined by over 5,200 SSAs who filed consents and has been vigorously contested over the course of more than four years.  The City moved successfully to remove the Union as a party plaintiff and to eliminate an equal pay claim based on a state statute that mirrors the federal EPA with one important exception – it exempts municipal governments.  The parties engaged in extensive fact and expert discovery.  Although no summary judgment motions have been made to date, it is unlikely that such motions would end the matter because the most important issue, job equivalence, is a disputed issue of material fact.  Additionally, there is a bona fide issue of law as to whether men may be included with women in a collective action under the EPA or class actions under Title VII and the NYSHRL. These bona fide disputed issues of fact and law represent enormous risk that the litigation if not settled here may produce nothing at all for Class Members.

## III.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

In evaluating class action settlements, courts in the Second Circuit consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Those factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing

liability and damages; (5) the risks of maintaining the class action through the trial; (6) the ability of the Defendant to withstand a greater judgment; (7) the range of reasonableness of the settlement in light of the best possible recovery; and (8) the range of reasonableness of the settlement in light of the attendant risks of the litigation.  *Grinnell Corp.*, 495 F.2d at 463. Although the Court does not have to assess the *Grinnell* factors in conducting its preliminary evaluation of the Settlement, it may be useful to do so as they weigh strongly in favor of approval.

### A. Litigation Through Trial and All Ensuing Appeals Would be Complex, Costly and Time-consuming.

By settling on favorable terms prior to dispositive motions or trial, plaintiffs will avoid significant delay and ensure a speedy, risk-free recovery for Class Members.  Over 5,200 plaintiffs joined the action and are comparing themselves to SOs who work for HHC and six separate and very different entities.  It is highly unlikely that all issues can be resolved through summary judgment and therefore, a trial on the merits is almost inevitable.  Preparing for and conducting a jury trial would consume an extraordinary amount of time and resources of both the parties and the judicial system.  Any judgment would likely be appealed with the result that the litigation would continue for many more years.  This Settlement, on the other hand, ensures that monetary relief will be made available to the Class Members quickly and through an efficient process.  Absent any appeals, the eligible Class Members could receive payments during the first half of 2015.

### B. The Reaction of the Class Is Expected to Be Positive.

The parties expect that the class will overwhelmingly support the Settlement.  The Named Plaintiffs publicly endorsed the Settlement on the record at the conclusion of the September 12, 2014 settlement conference before Magistrate Judge Peck and have signed the

Stipulation of Settlement.  On September 11, 2014, the members of Teamsters Local 237 overwhelming ratified the 2010-2018 Memorandum of Agreement that among other things provides for the equalization of SSA and SO wages by the end of the contract.  After notice of the Settlement is distributed, Class Members will have the opportunity to weigh in on the Settlement and the Court can more fully consider this factor.

      **C. The Parties Completed Discovery and Are Positioned to Responsibly Evaluate the Settlement.**

"Under the third *Grinnell* factor, the question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)(*quoting In Re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)(internal quotation marks omitted).  Here, the parties have developed an extensive evidentiary record upon which to make an informed recommendation to the Court on the fairness, reasonableness, and adequacy of the Settlement.  The City produced voluminous documentary material and the parties conducted 175 depositions of fact witnesses.  In addition, both Plaintiffs and Defendant retained experts who consulted with counsel, examined documents, conducted site visits, wrote reports and sat for depositions on the subject of whether the duties and responsibilities of SSAs and SOs are substantially equivalent.  The experts reached diametrically opposed conclusions on the key issue of job equivalence.

Of significance is the fact that the parties achieved the Settlement with the assistance and persistence of Magistrate Judge Peck.  That factor weighs heavily in favor of preliminary approval as "A settlement . . . reached with the help of third-party [neutral] enjoys a presumption that the settlement achieved meets the requirements of due process." *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145 (KMW), 2013 U.S. Dist. LEXIS 63065, at *8 (S.D.N.Y. Apr. 29, 2013)(internal quotation and citation omitted).

### D. Plaintiffs Would Face A Substantial and Real Risk of Losing if the Case Proceeded to Trial.

If the Plaintiffs proceed to trial, they risk losing a substantial back pay award. Given the fact-intensive nature of Plaintiffs' claims, a trial on the merits would involve substantial risks. The Parties agree that there are bona fide disputes of fact, including but not limited to alleged differences between the jobs of SSAs and SOs, the populations served, work environments, weapons and other equipment used by some SOs, and the authority of some SOs to issue summonses, execute warrants and supervise private security guards, and bona fide disputes of law, including the standing of men to assert claims under the EPA, Title VII and the NYSHRL in this action. These genuine disputes of fact and law are sufficiently substantial to present a serious issue as to whether the jobs are substantially equivalent, the central factual issue in this case, and whether men may be included and entitled to relief in this action.

Unlike many cases, the jury will not be able to cut the proverbial baby in half; if the jury is not convinced that the jobs are substantially equivalent, the SSAs will recover nothing. If the City loses, an appeal most certainly will follow given the sum of money at stake. In any event, a trial and any subsequent appeals are likely to consume many more years of litigation, thereby delaying relief to class members. The proposed Settlement eliminates these risks.

### E. Establishing a Class and Maintaining It Through Trial Would Not Be Easy.

Plaintiffs' class certification motion, dismissed by this Court with leave to renew if the settlement falls apart, presents difficult legal issues that will have to be addressed if the case proceeds to trial. The City contends that male SSAs do not have standing to pursue the pay discrimination claim presented in this action. The Court may well refuse to certify a class including male SSAs or some or all of the proposed classes under Title VII and NYSHRL. If the Court were to certify, over the City's objection, a class either including male SSAs or alleging

Title VII or NYSHRL claims, the City likely would seek permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f). The resulting appellate process would not only delay the resolution of this lawsuit for all Class Members, but pose additional risks to male Class Members.

### F.  Defendant's Ability to Withstand a Greater Judgment Does Not Suggest that the Settlement is Unfair.

The fact that the City may be able to withstand a larger judgment, standing alone, does not warrant disapproval of the proposed settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 178 n.9 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

### G.  The Settlement Fund Is Substantial in Light of the Attendant Risk of Litigation.

Weighing the benefits of settlement against the risks associated with a jury trial of this matter and subsequent appeals warrants the conclusion that the settlement amount is more than reasonable. A settlement fund which Defendant now estimates in the amount of approximately $32-$35 million is substantial given the enormous risks associated with a trial and subsequent appeals.

The Settlement, reached through arms-length negotiations after the completion of fact and expert discovery, falls well within the range of possible approval by the Court as judged by the *Grinnell* factors. Therefore, the Court should grant preliminary approval of the Settlement and authorize notice to the Class.

## IV.    THE PROPOSED CLASS NOTICE IS APPROPRIATE.

The proposed Class Notice fairly and adequately advises the Class Members of the terms of the Settlement, the right to object to those terms or to opt out of the action. In addition, it gives Class Members ample notice of the date of the hearing on the Settlement and the attorney

fee applications.  Finally, using U.S. first class mail to distribute the Class Notice is the most effective method of reaching Class Members as demonstrated by the effective distribution of the Court's order preliminarily certifying the EPA collective action.  Therefore, the Court should approve the Class Notice, the objection form and the opt-out form.

**CONCLUSION**

For the reasons set forth above, the parties jointly and respectfully request that the Court preliminarily approve the settlement, finally certify the settlement class, approve the Settlement Notice, and enter the proposed Order.

Dated:          New York, New York
                October 3, 2014


                                    Linsey Law Firm, PLLC
                                    Attorneys for Plaintiffs and the Class
                                    11 Broadway, Suite 615
                                    New York, New York 10004
                                    (212) 480-8807
                                    james@llfny.com


                                    By:    s/ James L. Linsey_____
                                           James L. Linsey


                                    ZACHARY W. CARTER
                                    Corporation Counsel of the
                                     City of New York
                                    Attorney for Defendant
                                    100 Church Street, Room 2-139
                                    New York, New York 10007
                                    (212) 356-2435
                                    kcomfrey@law.nyc.gov


                                    By:    /s/ Kathleen M. Comfrey_____
                                           Kathleen M. Comfrey
                                           Benjamin E. Stockman
                                           Assistant Corporation Counsels