USDC SDNY
DOCUMENT
ELECTRONICALLY
FILED _____
DOC #:        _____
DATE FILED:  8/3/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORINTHIANS ANDREWS, PATRICIA
WILLIAMS,      and      BERNICE
CHRISTOPHER, on behalf of themselves
and other persons similarly situated,

                              Plaintiffs,

            -against-

THE CITY OF NEW YORK

                              Defendant.

10-Cv-2426 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.


## I.  BACKGROUND

In March of this year, the Court approved as fair and reasonable the settlement of this employment discrimination action, which was brought on behalf of a collective of 5,213 individuals employed by the City of New York as School Safety Agents (SSAs), a predominantly female group. (*See* Dkt. No. 324.) Plaintiffs alleged that by paying them less than Special Officers (SOs), a predominantly male group of City employees who performed similar work, the City discriminated against them in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, and the Equal Pay Act, 29 U.S.C. §§ 206(d), *et seq.*

Plaintiffs agreed to settle all claims against the City in exchange for back pay awards ranging from $250 to $7,000 per plaintiff depending upon such factors as their dates and lengths of employment. (*See* Stipulation of Settlement, Dkt. No. 262-1 ¶ 23.)  The parties stipulated and agreed that "the rates of pay for SSAs and SOs shall be equalized according [to] the

provisions of Section 6 of the 2010-2018 Memorandum of Agreement" negotiated between the City and the Local 237, International Brotherhood of Teamsters ("the Union"), just prior to the settlement of this action. (*Id.* ¶ 22; 2010-2018 Memorandum of Agreement ¶ 6, Ex. H to Decl. of James Linsey dated February 6, 2015.) The settlement agreement also provides for service awards of $18,000 for each named plaintiff. (Stipulation of Settlement ¶ 23(f).) The back pay awards total somewhat more than $32 million. (*See* Jnt. Mem. of Law in Supp. of Mot. for Prelim. Approval of a Class Action Settlement at 15; LLF Mem. of Law in Supp. of Mot. for Att'y Fees ("LLF Mem. in Supp.") at 1, Dkt. No. 283-1.) The Court approved this settlement agreement as fair and reasonable on March 26, 2015. (*See* Dkt. No. 324.)

Plaintiffs' attorneys—the Linsey Law Firm, PLLC ("LLF")—seek an award of attorney's fees as well as reimbursement of their costs. LLF requests that the Court order the City to pay statutory fees in the amount of $3,830,466 and statutory costs in the amount of $872,082 pursuant to the fee-shifting provision of the Fair Labor Standards Act (FLSA).[1] (*See* LLF Mem. in Supp. at 1; LLF Updated Billing Summary ("Billing Summary"), Dkt. No. 320-2.) All parties—and the Court—agree that LLF is entitled to *reasonable* statutory attorney's fees. However, LLF then goes on to ask the Court to place the statutory fees it is entitled to into a "common settlement fund," which, according to LLF, consists not only of the $32 million in back pay to plaintiffs provided for in the settlement agreement, but also of $43.3 million in accelerated future pay raises to SSAs that were negotiated between the Union and the City and embodied in the 2010-2018 Memorandum of Agreement. Out of that so-called "common fund," LLF now seeks a total of $11.5 million in fees.

The City and the named plaintiffs—now represented by separate counsel—adamantly oppose LLF's request to be awarded a percentage of

---

[1] LLF reports that $307,838 of the costs it requests are to account for the total amount of predecessor counsel's attorney's fees and costs. (*See* LLF Reply Mem. of Law to Def. Opp'n ("LLF Reply to Def. Opp'n," at 7, n.10, Dkt. No. 314.)

what LLF refers to as the "common fund."[2] The Court has reviewed LLF's request and finds that it is entitled to a reduced award of statutory fees and costs, but not to a percentage of plaintiffs' recovery.

## II. DISCUSSION

### A. LLF is Entitled to Statutory Fees and Costs but is Not Entitled to a Percentage of Plaintiffs' Recovery

The FLSA contains the applicable fee-shifting provision for violations of the Equal Pay Act which provides as follows: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Plaintiffs are the prevailing party for the purposes of the statute "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[3] Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorney's fees. "The fact that [plaintiffs] prevailed through a settlement rather than through litigation does not weaken [plaintiffs'] claim to fees." *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (quoting *Maher v. Gagne*, 448 U.S. 122, 129 (1980)). The Court and the parties agree that plaintiffs are the prevailing party and LLF is therefore entitled to

---

[2] Six other members of the collective action also filed written objections to LLF's request to be awarded a percentage of the "common fund." (*See* Dkt. No. 303-1 at 3, 11, 14, 40; Dkt. No. 257; Dkt. No. 293.)

[3] *Hensley* involved the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. "[C]ases determining awards of attorneys' fees under the FLSA rely interchangeably on cases arising under § 1988." *Kalloo v. Unlimited Mechanical Co. of NY*, 977 F. Supp. 2d 209, 211 (E.D.N.Y. 2013) (citing *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 151–53 (2d Cir. 2008)).

recover reasonable statutory attorney's fees and costs to be paid by the City.

As noted above, LLF argues that it should receive a percentage of what it refers to as the "common fund" *in addition to* reasonable statutory attorney's fees. For the reasons that follow, LLF's contention is unprecedented, unsupported and unavailing.

"From time immemorial it has been the rule in this country that litigants are expected to pay their own expenses, including their own attorneys' fees, to prosecute or defend a lawsuit." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). However, there are exceptions to this so-called "American Rule," where instead of attorney's fees being paid pursuant to a fee agreement between a party and counsel, a court determines a fee award based on statutory requirements or equitable doctrines. These exceptions include fee-shifting statutes such as the FLSA, enacted in order to "encourag[e] the private prosecution of certain favored actions, by requiring defendants who have violated plaintiffs' rights to compensate plaintiffs for the costs they incurred to enforce those rights." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 562-63 (7th Cir. 1994) (citing *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990)).

Another exception to the "American Rule" is the "common fund" doctrine, also known as the "equitable fund" doctrine, which LLF seeks to employ. This concept aims to correct the injustice that would result should lead plaintiffs in a class action be solely responsible for paying the entire class's attorney's fees after succeeding in creating a "common fund from which members of a class are compensated for a common injury inflicted on the class." *Goldberger*, 209 F.3d at 47. The common fund doctrine states that "the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Id.* All plaintiffs benefitting from the common fund thereby end up contributing to the cost of the lawsuit, "prevent[ing] unjust enrichment" which would

4

occur if only lead plaintiffs were obligated to pay attorney's fees even though all class members shared in the proceeds of the settlement. *Id.; see also Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003).

An equitable doctrine such as the common fund doctrine is normally not invoked in cases such as this one where a defendant pays statutory attorney's fees and therefore "there is no inequity to redress because the defendant, rather than the plaintiffs, ultimately bore the entire cost of litigation." *U.S. ex rel. Bogart v. King Pharm.*, 493 F.3d 323, 331 (3d Cir. 2007) (internal quotation marks omitted); *see also Green v. City of New York*, No. 05-CV-429, 2009 WL 3063059, at *7 (E.D.N.Y. Sept. 21, 2009) (where "there is nothing to preclude operation of the fee-shifting statutes," there is "no apparent reason to grant equitable relief"). Although LLF claims that because statutory fees are the entitlement of plaintiffs, not plaintiffs' counsel, it has "no means through which to recover a reasonable attorneys' fee other than the equitable doctrine," the retainer agreement in this case specifically assigns any recovery of statutory attorney's fees that plaintiffs may receive to LLF. (*See* LLF Mem. in Supp. at 25-26; Retainer Agreement ¶ 8, Ex. A to Linsey Decl. (Plaintiffs are obligated to "assign any statutory claim to attorney's fees to LLF")). There is no need to invoke an equitable doctrine where, as here, the governing statute obligates the City to pay the reasonable statutory attorney's fees and costs ordered by the Court.

LLF is correct though, that there are cases brought pursuant to fee-shifting statutes where attorney's fees are awarded at least in part out of plaintiffs' recovery. Those cases, however, are distinguishable from this case in one of two ways. The first set of cases are typical common fund cases where "a settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 256 (7th Cir. 1988); *see also Florin* 34 F.3d at 563 (in common fund cases, "the defendant typically pays a specific sum … in exchange for a release of its liability"). In those cases, statutory attorney's fees are not available because the plaintiffs have waived the defendant's liability for those fees in exchange for the

settlement amount. The settlement funds therefore effectively contain attorney's fees. Accordingly, the common fund doctrine is employed to redress the inequity that would result should the lead plaintiffs be solely responsible for paying attorney's fees. *See e.g., Florin*, 34 F.3d at 564; *Skelton*, 860 F.2d at 256; *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 582-83 (3d Cir. 1984).

LLF asserts that this is also a case where the settlement agreement "releases Defendant from liability both for damages and for statutory attorneys' fees, making appropriate the use of equitable fund principals [sic]." (LLF Mem. in Supp. at 29.) This assertion is flatly contradicted by the language of the settlement agreement which states that plaintiffs release defendant from liability for "attorney's fees *other than the fees and costs awarded by the Court*." (Stipulation of Settlement ¶ 46 (emphasis added).) In a transparent attempt to further support its mischaracterization of the settlement as creating a typical common fund, LLF requests that the Court order defendant to pay statutory attorney's fees *into* "the common settlement fund." (LLF Mem. in Supp. at 1.) LLF urges the artificial creation by the Court of a common fund where none exists in order for it to claim a portion of plaintiffs' recovery in addition to statutory attorney's fees. The Court has no basis for doing so.

The second set of cases LLF cites in support of its efforts to obtain what is in essence a double recovery are cases where courts have honored contractual rights to percentages of recoveries. *See e.g., Venegas v. Mitchell*, 495 U.S. 82, 87 (1990) (holding that plaintiff's counsel should recover the percentage of the recovery specified in the contingent-fee agreement because the fee-shifting provision of 42 U.S.C. § 1988 does not "limit civil rights plaintiffs' freedom to contract with their attorneys"); *Brunson v. City of New York*, No. 94 CIV. 4507, 2000 WL 1876910 (S.D.N.Y. Dec. 22, 2000) (allowing a portion of attorney's fees to be paid from plaintiffs' recovery where the settlement agreement provided that court-awarded fees in excess of $1 million would be paid from the settlement fund). In those

cases, courts were simply holding plaintiffs to the terms of their contractual agreements.

Although LLF refers to the retainer agreement between LLF and named plaintiffs as "The Contingent Fee Agreement" and claims that it "provides for a flat 25% of the value of the recovery," the document itself contains no such provision. (LLF Mem. in Supp. at 2 n.5.) The retainer agreement provides LLF only the entitlement to apply to the Court for a fee of twenty-five percent of the settlement fund and states explicitly that plaintiffs may oppose such an application, which several of them have done. (*See* Retainer Agreement ¶ 4 ("[LLF] shall apply for the greater of (a) one quarter of the settlement fund or (b) LLF's full lodestar amount . . . Clients will retain their rights . . . to approve, oppose, or comment upon any application for reimbursement of costs and award of attorneys' fees."))

LLF argues that disqualifying the use of the common fund doctrine in this action will discourage attorneys from bringing civil rights cases. Importantly, there is a "strong presumption" that statutory fees determined using the lodestar method are "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 554 (2010) (internal citation omitted). However, should attorneys require additional incentive to bring cases pursuant to fee-shifting statutes, they need only obtain contingent-fee agreements to be entitled to a percentage of the recovery. *See e.g.*, *Venegas,* 495 U.S. at 87. The Court is unpersuaded that, in this case, declining to enforce a nonexistent contingent-fee agreement and declining to create a common fund where none exists will have negative policy implications for the prosecution of civil rights cases.

In sum, because there is nothing in this action to preclude the operation of the fee-shifting statute and LLF has no contractual right to a percentage of plaintiffs' recovery, the use of common fund doctrine is not appropriate. Awarding LLF a percentage of plaintiffs' recovery in addition to reasonable statutory fees would provide an unwarranted windfall to

LLF to be taken from money that would otherwise go to members of the collective action.[4]

The Court will now turn to determining what sum constitutes a reasonable attorney's fee in this action.

### B. The Amount of Statutory Attorney's Fees Requested by Collective Action Counsel is Unreasonable

LLF has filed a fee application in which it requests that the Court order the City to pay statutory fees in the amount of $3,830,466. (Billing Summary.) For the reasons explained below, the Court reduces that amount to $1,831,032.

LLF has also requested that the Court award attorney's fees and costs in the amounts of $74,416 to Meyer, Suozzi, English & Klein, P.C.; $52,518 to Cohen, Weiss & Simon, LLP; and $177,519 to Stroock & Stroock & Lavan, LLP.[5]  For the reasons set forth below, the Court declines to award fees or costs for either Cohen Weiss or Meyer Suozzi's work and awards Stroock a reduced amount of $76,300.

#### 1.  Legal Standard

When determining the amount of attorney's fees to award pursuant to federal fee-shifting statutes, the court utilizes the lodestar—"the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Perdue*, 559 U.S. 542 (2010). The FLSA provides that "[t]he court in such action shall . . . allow a reasonable attorney's fee to be paid by the

---

[4] Were the Court to award LLF the $11.5 million in attorney's fees it requests, LLF would be compensated for its work on this case at an average rate of $1,705 per hour for 6,744 hours.

[5] LLF denominates its request for statutory fees for its predecessor counsel as "costs," *see* LLF Reply to Def. Opp'n at 7, n.10, but the Court treats this request more properly as a motion for attorney's fees by LLF on behalf of each predecessor counsel.

defendant, and costs of the action." 29 U.S.C. § 216(b). "A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case . . . [T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Perdue,* 559 U.S. 542, 552 (2010) (internal quotation marks and citations omitted). The court may modify the lodestar only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered." *Id.* at 554.

A reasonable hourly rate is based on "the prevailing market rates in the relevant community," *id.* at 551, for "similar services by lawyers of reasonably comparable skill, experience, and reputation," *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998). An inquiry into the reasonableness of an hourly rate may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (internal quotation marks omitted). The Second Circuit utilizes the "forum rule," which requires use of "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted).

In determining the reasonable number of hours expended, the court "should look at the amount of time spent on each task, and then decide how much of that time was reasonably expended given 'the scope and complexity of the particular litigation.'" *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 256 (S.D.N.Y. 2012) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). The court is obligated to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 434). The question, however, "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would

have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

The party seeking fees bears the burden of demonstrating the reasonableness of its request. *See Blum v. Stevenson*, 465 U.S. 886, 897 (1984). Accordingly, the fee application must include "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Handschu v. Police Dep't of the City of N.Y.*, 679 F. Supp. 2d 488, 505 (S.D.N.Y. 2010) (quoting *Carey*, 711 F.2d at 1148)).

### 2. *The Hourly Rates Requested are Unreasonable*

#### a.   *LLF*

LLF seeks fees for seven attorneys: James Linsey, Carolyn Linsey, Eyad Asad, Michael Brenner, Michael Kolcun, Andrew Weitz and Matthew Yogg.

LLF requests an hourly rate of $800 for Mr. Linsey, an attorney with more than thirty years of experience litigating labor and employment matters. (Linsey Decl. ¶¶ 2-8.) Mr. Linsey avers that LLF clients pay him a current hourly rate of $800. (*Id.* ¶ 8.) The City points out that Mr. Linsey's requested rate of $800 is almost three times the billing rate of $275 per hour he in fact charged the Union while working on this very litigation as a Cohen Weiss partner from December 2010 to December 2011. (*Id.* ¶ 9; Billing Records of Prior Counsel at 14, 17, 20, 25, 26, 29, 30, 32, 35, 37, Ex. W to Linsey Decl., Dkt. No. 284-1.) Additionally, the City requests that the Court take judicial notice that Mr. Linsey recently sought that exact same hourly rate of $275 for his work on an FLSA case in the Eastern District of New York. *See Finkel v. SMC Elec. Contracting, Inc.*, No. 11-CV-1697, 2013 WL 4070193, at *6 (E.D.N.Y. Aug. 12, 2013). In response, he correctly points out that *Finkel* involved a straightforward default judgment and hourly rates of labor law firms such as LLF that represent employees can differ

greatly from those of labor law firms such as Cohen Weiss that represent
unions. (Supp. Decl. of James Linsey dated March 13, 2015 ¶ 14.)
According to Mr. Linsey, in the latter, "billing practices are often the result
of longstanding relationships between the law firm and union clients," *id.*,
which, he states, leads to lower rates than would otherwise obtain.

Certainly, the amount actually paid to an attorney by paying clients is
strong evidence of a reasonable market rate. *See Danaher Corp. v. Travelers
Indem. Co.*, 10 Civ. 0121, 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014);
*see also Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 508
(S.D.N.Y. 2012). Although there may be some difference in billing rates at
union-oriented labor law firms and employee-oriented firms, that
distinction cannot account for the yawning gap between the two rates Mr.
Linsey claims for work on the same case. An increase from Mr. Linsey's
previous customary hourly rate of $275 is merited due to the four years
that have passed since he was at Cohen Weiss, but this factor cannot justify
the nearly threefold increase in rate he seeks. *See A.R. ex rel. R.V. v. New
York City Dep't of Educ.*, 407 F.3d 65, 83 (2d Cir. 2005) ("[C]urrent rates,
rather than historical rates, should be applied in order to compensate for
the delay in payment.")(internal quotation marks and citations omitted).

Based on a review of the relevant case law and the Court's own
familiarity with, and knowledge of, the prevailing rates for similar legal
services in this district, the Court awards Mr. Linsey an hourly rate of
$450. *See, e.g., Finch v. New York State Office of Children & Family Servs.*, 861
F. Supp. 2d 145, 153-54 (S.D.N.Y. 2012) (awarding an hourly rate of $450 in
a civil rights class action to a lead attorney with forty-two years of
experience); *Davis v. City of New York*, 10 Civ. 699, 2011 WL 4946243, *5
(S.D.N.Y. Oct. 18, 2011) (awarding $425 an hour for partner with thirty-one
years of experience in a civil rights class action); *Handschu v. Special Servs.
Div.*, 727 F. Supp. 2d 239, 246 (S.D.N.Y. 2010) (approving an hourly rate of
$400 for five attorneys admitted to the bar in the 1960s and 1970s for work
on a civil rights class action).

The hourly rates that LLF seeks for its other attorneys are similarly inflated. LLF requests an hourly rate of $575 for Ms. Linsey, an attorney with more than thirty years of experience; $350 for Brenner, an attorney who graduated from law school seven years ago; and $350 for Weitz, an attorney who graduated from law school four years ago. Ms. Linsey, Brenner and Weitz worked for LLF for roughly six months.[6] (Decl. of Carolyn Linsey dated October 31, 2014 ¶ 7; Decl. of Michael Brenner dated October 28, 2014 ¶ 6; Decl. of Andrew Weitz dated October 30, 2014 ¶ 4.) These three attorneys spent the vast majority of their time defending approximately 177 depositions of collective action members, *see generally* LLF Billing Records at 20-72, the focus of which, both sides agree, were basic factual questions regarding the duties and responsibilities of SSAs and the circumstances of their employment. (Supp. Decl. of Andrew Weitz dated March 13, 2015 ¶¶ 2, 3; Def.'s Mem. in Opp'n to Mot. for Att'y Fees ("Def. Opp'n") at 11-12, Dkt. No. 294.) Therefore the Court concludes that a paying client would likely only be willing to pay these attorneys a rate at the low end of the spectrum for junior attorneys at employment firms.

Accordingly, the Court sets a $250 hourly rate for Ms. Linsey, Brenner and Weitz. *See, e.g.*, *Boutros v. JTC Painting & Decorating Corp.*, 12 Civ. 7576, 2014 WL 3925281, at *7 (S.D.N.Y. Aug. 8, 2014) (approving rates of $250 per hour for associates who, at the start of the FLSA suit, had between three and six years of experience); *Pakter v. New York City Dep't of Educ.*, 08 Civ. 7673, 2010 WL 5653397, at *3 (S.D.N.Y. Oct. 26, 2010) *report and recommendation adopted,* 2011 WL 308272 (S.D.N.Y. Jan. 31, 2011) ("[R]easonable hourly rates for junior associates vary: (a) $275 for a junior associate at a well-regarded civil-rights law firm; (b) $250 for junior associates at a mid-size law firm specializing in civil rights employment law; (c) $225 for junior associates in their first-year of experience; and (d)

---

[6] Although Ms. Linsey stated that her work on the case continued beyond six months of defending depositions, the time she expended after depositions concluded is not substantial. (*See generally* LLF Billing Records, Exs. K, L to Linsey Decl.)

$200 to a junior associate who was a first-year attorney during the bulk of the case."); *Saunders v. City of N.Y.*, No. 07 Civ. 830, 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009) (awarding associates between $200 and $300 per hour in an FLSA collective action).

LLF seeks an hourly rate of $345 for the time of Kolcun, an attorney who started working on this case approximately two years after graduating from law school with no prior reported legal experience. (Decl. of Michael Kolcun dated February 5, 2015 ¶¶ 2, 4.) Although Kolcun avers that $345 is currently his standard billing rate at Robins Kaplan LLP for commercial litigation work, *see id*. ¶¶ 1, 8, the appropriate rate here is $250 per hour in accordance with a reasonable rate for a junior attorney at an employment firm as set forth above.

LLF requests an hourly rate of $550 for Asad, who reports nearly fifteen years of experience in labor law and class action litigation. (Decl. of Eyad Asad dated October 27, 2014 ¶ 1.) He previously worked as a partner at Cohen Weiss and is currently Associate General Counsel at the Service Employees International Union, Local 32BJ. (*Id*. at ¶¶ 4, 6.) Though Asad's experience in the field is significant and he worked on such substantive—albeit not crucial—matters as drafting an opposition to an expected motion for summary judgment that never materialized, the bulk of his work on this case was devoted to junior-attorney level tasks such as basic legal research and document review. (*See generally* LLF Billing Records.) Accordingly, the Court finds that an hourly rate of $300, at the higher end of the spectrum for junior attorneys at employment firms, is reasonable. *See Saunders*, 2009 WL 4729948, at *8 (awarding associates between $200 and $300 per hour in an employment matter).

Yogg, who graduated from law school in 2013 and started billing time on this case in May 2014, requests an hourly rate of $325. (Decl. Of Matthew Yogg dated February 6, 2015 ¶¶ 1, 2; LLF Billing Records). Yogg avers that LLF currently charges $325 per hour for his time. (*Id*. ¶ 6.) While $325 may be his current customary rate, the Court finds that $200 is a

reasonable rate for a junior associate at an employment firm with two years of legal experience such as Yogg. *See Agudelo v. E & D LLC*, No. 12 CV 960, 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013) (the market rate for services of junior associates with several years of experience in FLSA cases is $200 per hour); *Pakter*, 2010 WL 5653397, at *3 ($200 is a reasonable hourly rate for the services of a junior associate "who was a first-year attorney during the bulk of the case").

### b.   Predecessor Counsel

In addition to the attorney's fees it requests for its own work, LLF urges that the Court award, as costs, the full amount of predecessor counsel's attorney's fees and costs. (*See* LLF Reply to Def. Opp'n at 7, n.10.) LLF does not provide any support for its novel proposition that the Court should treat a request for attorney's fees as costs.  The Court therefore considers these requests in their more proper form, namely, as requests from each predecessor counsel for statutory attorney's fees and costs.

### i.   Meyer Suozzi and Cohen Weiss

LLF seeks $74,416 for Meyer Suozzi's work and has submitted what appear to be its contemporaneous time records from November 2008 through October 2010. (*See* Linsey Decl. ¶¶ 15, 17; Billing Records of Prior Counsel at 43-74.) Meyer Suozzi has provided no information whatsoever about any employee who worked on the case beyond his or her initials. (*See id*.) The Court lacks basic information such as whether these employees were attorneys or paralegals, and if they were attorneys, what their positions were and how much experience they had. Meyer Suozzi did not even provide the Court with its employees' names.

LLF has also submitted what appear to be contemporaneous time records from March 2011 through May 2013 for Cohen Weiss. (*See* Billing Records of Prior Counsel at 14-42.) LLF requests that the Court award $52,518 for Cohen Weiss's "fees and expenses," but the total costs for Cohen Weiss are not listed separately from its requested total fees. (*See* Linsey Decl. ¶¶ 15, 17; Billing Records of Prior Counsel.) The Court need

not expend its time unpacking and verifying LLF's figures of Cohen Weiss's work. Cohen Weiss's documentation, while providing employees' names and their positions (partner, associate or paralegal), does not supply the Court with any information as to any of the employees' experience or qualifications.

LLF informs the Court that it was "unable to attain a declaration in support" of either Meyer Suozzi or Cohen Weiss's work. (LLF letter dated February 9, 2015, Dkt. No. 284.) Their failure to support this fee application may be a result of the fact that the Union, an entity that is not a party to this action, has already paid their fees. (*See* Decl. of Todd Rubenstein dated February 6, 2015 ¶ 4.)

The party seeking fees "must provide the Court with sufficient information to determine if the fee assessed is reasonable." *Cordero v. Collection Co.,* No. 10 CV 5960, 2012 WL 1118210, at *3 (E.D.N.Y. Apr. 3, 2012) (citing *Carey,* 711 F.2d 1136); *see also Farbotko v. Clinton Cnty. of New York,* 433 F.3d 204, 209 (2d Cir. 2005) ("[T]he fee applicant has the burden of showing by satisfactory evidence—in addition to the attorney's own affidavits—that the requested hourly rates are the prevailing market rates.") (internal quotation marks and citations omitted). Because neither Meyer Suozzi nor Cohen Weiss has complied with this requirement, nor has LLF done so on their behalf, the Court declines to award attorney's fees for the work of these two firms. *See e.g.,* *Custodio v. Am. Chain Link & Const., Inc.,* No. 06 CIV. 7148, 2014 WL 116147, at *8 (S.D.N.Y. Jan. 13, 2014); *Adorno v. Port Auth. of New York & New Jersey,* 685 F. Supp. 2d 507, 514 (S.D.N.Y. 2010) *on reconsideration in part*, No. 06 CIV. 593, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010); *Yea Kim v. 167 Nail Plaza, Inc.,* No. 05 CV 8560, 2009 WL 77876, at *9 (S.D.N.Y. Jan. 12, 2009).

### ii.   Stroock

Stroock—unlike Meyer Suozzi and Cohen Weiss—has submitted adequate information for the Court to determine the reasonableness of the $166,366 in fees LLF requests on its behalf. (*See* Linsey Decl. ¶ 17; Billing

Records of Prior Counsel at 5-13.) In addition to contemporaneous billing records, Stroock has provided the names and titles of employees as well as the years its attorneys graduated from law school and were first admitted to the bar. (Decl. of Alan Klinger dated October 31, 2014 ¶ 5.) Stroock also informed the Court of its employees' current hourly billing rates, *see id.*, which the Court will consider. *See A.R. ex rel. R.V.*, 407 F.3d at 83.

Stroock, through LLF, seeks fees for eight attorneys and support staff. These personnel are: Mark Wintner, Alan Klinger and Howard Lavin, partners with more than thirty years of experience; Elizabeth DiMichele, "Special Counsel," a member of the bar for eighteen years; Gary Malpeli, paralegal; Eric Kaufman, "Assistant Director of Research and Knowledge Management Services;" Margaret Jones, Reference Librarian; and Judy Dhanraj. (Klinger Decl. ¶ 5; Billing Records of Prior Counsel at 13.) Stroock provides neither Ms. Dhanraj's position nor her qualifications, consequently the Court will strike the 1.6 hours billed for Ms. Dhanraj's time from the fee application.

Stroock's current hourly billing rates are $995 for Wintner and Klinger, $950 for Lavin, $710 for DiMichele, $290 for Malpeli, $275 for Kaufman and $245 for Jones. (Klinger Decl. ¶ 5.) Stroock states that the rates in the invoices "were the regular rates charged for our clients." (*Id*. ¶ 3.) Although the Court has no reason to doubt that Stroock's corporate clients pay the hourly rates that Stroock sets forth, the City should only have to pay Stroock based on prevailing market rates for civil rights and employment litigators in this district. *See e.g., Pastre v. Weber*, 800 F. Supp. 1120, 1125 (S.D.N.Y. 1991) ("[Defendant] should not be required to pay for legal services at the rate [counsel] would charge to, say, General Motors or IBM (should they be among its clients), but should be required to compensate plaintiff only for what would have been charged by a competent attorney specializing in civil rights litigation.")

Accordingly, for the work of Stroock's partners—Wintner, Klinger and Lavin—the Court awards an hourly rate of $450, the same rate it awards to Mr. Linsey, who has more than thirty years of experience in labor and

employment litigation. DiMichele, like Asad, who the Court awards an hourly rate of $300, has roughly a decade and a half of legal experience. Unlike Asad, however, DiMichele appears to have performed the bulk of her firm's substantive legal work on this case. The Court therefore finds that an hourly rate of $350 is reasonable for DiMichele. A reduced rate of $100 is appropriate for Malpeli's time. *See Gonzalez v. Scalinatella, Inc.*, No. 13 CV 3629, 2015 WL 3757069, at *21-22 (S.D.N.Y. June 12, 2015) (awarding $100 and $105 per hour for paralegals in an FLSA case); *Rosado v. City of New York*, No. 11 CIV. 4285, 2012 WL 955510, at *5 (S.D.N.Y. Mar. 15, 2012) (approving an hourly rate of $125 for a paralegal in a section 1983 case). Kaufman, Assistant Director of Research and Knowledge Management Services and Jones, Reference Librarian, performed specific research tasks in support of the litigation and should therefore be compensated at a paralegal rate of $100 per hour. *See Am. Lung Ass'n v. Reilly*, 144 F.R.D. 622, 624, 630 (E.D.N.Y. 1992) (awarding the same hourly rate for paralegals and librarians).

### 3. *The Hours Expended are Unreasonable*

#### a. *LLF*

The City has strenuously contested the reasonableness of the number of hours LLF expended, with good reason. As LLF employed only one other attorney in addition to Mr. Linsey throughout most of this litigation, those two attorneys performed a variety of tasks which otherwise would have been handled by paralegals or secretaries. Yogg in particular shouldered a great deal of such administrative work as compiling and maintaining the list of the 5,213 collective action members, coordinating mailings, assembling binders and posting information to the LLF website. (*See, e.g.*, LLF Billing Records, MRY entries on 5/28/14, 5/29/14, 8/14/14, 9/10/14, 9/11/14, 10/20/14, 11/13/14, 11/14/14, 1/20/15.) In fact, several attorneys performed basic administrative tasks and a reduction in hours is

warranted on that basis.[7] *See e.g., Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at *7 (S.D.N.Y. Sept. 10, 2013); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 509 (S.D.N.Y. 2012) (reducing the total fee award by twenty percent in part because attorneys performed administrative tasks).

A further reduction to the fee application is required owing to LLF's deposition billing practices. For example, Weitz billed more than 50 hours for eight depositions which he admits did not take place. (Supp. Decl. of Andrew Weitz dated March 13, 2015 ¶¶ 5, 6; Weitz Deposition Chart, Ex. 4 to Decl. of Kathleen Comfrey dated March 6, 2015, Dkt. No. 296.)

LLF's travel billing practices also constitute grounds for a reduction. Specifically, LLF's billing entries for travel fail to indicate that such time was billed at a reduced rate. (*See, e.g.,* LLF Billing Records, MAK entries 3/26/13, 3/28/13, 3/5/14, 3/7/14; JLL entries 3/23/12, 4/2/12, 4/5/12; MRY entries 9/5/14, 2/4/15.) Additionally, one of LLF's attorney's represented that many of his time entries which do not mention travel actually include travel in the total time billed. (*See* Weitz Supp. Decl. ¶ 4.)

The Court declines to reduce LLF's hours for work on an opposition to a summary judgment motion that the City never filed and for LLF's communications and collaboration with the Union. At the time Asad was working on LLF's opposition to an expected motion for summary judgment, discovery had begun in earnest. His work on the opposition—while not urgent—was not frivolous. And although LLF did spend a significant amount of time communicating with both Mr. Floyd—the Union president—and the Union while neither were plaintiffs, it is the Court's view that coordination with the Union was integral to the result plaintiffs achieved in this case. Accordingly, the Court finds that this time was reasonably expended in support of the litigation.

---

[7] For example, Kolcun indexed documents and compiled exhibits and Mr. Linsey filed documents. (*See e.g.,* LLF Billing Records, MAK entries on 10/14/12, 10/15/12, 12/11/12, 3/19/13, 6/24/13, 7/11/13; JLL entries on 3/21/12, 10/17/12, 4/1/14, 8/11/14.)

Particularly in cases with voluminous fee applications, "courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application." *Carey*, 711 F.2d at 1146 (collecting cases). Accordingly, courts have endorsed utilizing percentage reductions as a "practical means of trimming fat" from a fee application. *Id.*

Because of the deficiencies set forth above, the Court reduces LLF's total fees by twenty percent.

> b.   *Stroock*

The City contends that Stroock should recover no fees for its work drafting the original complaint and "developing a response" to the City's first motion to dismiss the complaint, which the City characterizes as "unsuccessful steps in the litigation." (Def. Opp'n at 18.) In calculating the compensable hours for attorneys' fees, courts may exclude "hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 433-35, 440). However, attorney's fees may be awarded for unsuccessful claims as well as successful claims where "they are inextricably intertwined and involve a common core of facts or are based on related legal theories." *Quaratino*, 166 F.3d at 425 (internal quotation marks omitted). As the factual and legal theories underlying the New York State Equal Pay Act claim and the Union's representative Equal Pay Act claim, which plaintiffs dropped in response to the City's first motion to dismiss the complaint, are inextricably intertwined with those underlying plaintiffs' successful Federal Equal Pay Act claim, the unsuccessful claims are not severable. Consequently Stroock shall receive full compensation for its work on those claims.

The City urges the Court to reduce Stroock's fees for duplication of effort with Meyer Suozzi. The fact that both firms worked on the original and amended complaints as well as the opposition to the City's second motion to dismiss does not merit an automatic reduction. *See Williamsburg Fair Housing Comm. v. Ross-Rodney Hous.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984). It is difficult though, for the Court to ascertain whether there was in

fact duplication of effort due to the vagueness of many of Stroock's time entries. A significant amount of Stroock's time entries related to the amended complaint or the opposition to the motion to dismiss read only: "Attention to amended complaint;" and "Attention to opposition to motion to dismiss." (*See, e.g.*, Billing Records of Prior Counsel at 9, 11.) These entries do not assist the Court in understanding the nature of the work performed. The Court is therefore unable to determine how much duplication of effort, if any, took place and whether the work performed and time expended were reasonable. Accordingly the Court reduces Stroock's fee award by fifteen percent. *See, e.g., Meriwether v. Coughlin,* 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

### 4. *Neither LLF Nor Stroock is Entitled to an Enhancement of the Lodestar Amount*

An enhancement of the lodestar may only be awarded in "rare and exceptional" circumstances and the fee applicant bears the burden of proving that an enhancement is necessary through "specific evidence." *Perdue,* 559 U.S. at 554 (internal quotation marks omitted).

Neither LLF nor Stroock has introduced such "specific evidence" or even requested an enhancement and the Court finds that no enhancement is warranted.

The following tables illustrate the calculation of LLF and Stroock's fee awards based on the reasonable hourly rates, hours billed and overall percentage reductions discussed above.

**LLF**

| Timekeeper | Hours billed | Reasonable rate | Total |
|---|---|---|---|
| J. Linsey | 3,189.2 | $450 | $1,435,140 |
| C. Linsey | 132.6 | $250 | $33,150 |
| Asad | 182 | $300 | $54,600 |
| Brenner | 43.5 | $250 | $10,875 |
| Weitz | 457 | $250 | $114,250 |
| Kolcun | 1,855.9 | $250 | $463,975 |
| Yogg | 884 | $200 | $176,800 |
| | | Total Fees: | $2,288,790 |

**Total Fees (after 20% reduction):   $1,831,032**


**Stroock**

| Timekeeper | Hours billed | Reasonable rate | Total |
|---|---|---|---|
| Wintner | .2 | $450 | $90 |
| Klinger | 12 | $450 | $5,400 |
| Lavin | 2.2 | $450 | $990 |
| DiMichele | 236.7 | $350 | $82,845 |
| Malpeli | 1.8 | $100 | $180 |
| Kaufman | 1 | $100 | $100 |
| Jones | 1.6 | $100 | $160 |
| | | Total Fees: | $89,765 |

**Total Fees (after 15% reduction):   $76,300**

### C.   The Costs Requested by LLF and Stroock Should be Reduced

A prevailing plaintiff in an action brought pursuant to the FLSA is entitled to recover costs from the defendant, *see* 29 U.S.C. § 216(b), but certain of the $570,002 in statutory costs sought by LLF are unrecoverable. (*See* Disbursement List, Dkt. No. 320-1.)

Specifically, LLF requests $482,417 in costs for expert fees. However, the U.S. Supreme Court has held that absent explicit statutory authorization for taxing expert fees as costs, courts may not award expert fees in excess of the amount specified in 28 U.S.C. § 1821(b), which is currently an attendance fee of $40 per day for testimonial witnesses. *See West Virginia University Hospital v. Casey*, 499 U.S. 83 (1991); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). The statute at issue here, 29 U.S.C. § 216(b), a fee-shifting statute, does not contain the requisite explicit statutory authorization. *See Gortat v. Capala Bros., Inc.*, No. 14-3304-cv (2d Cir. July 29, 2015) (expert fees beyond the allowances in 28 U.S.C. § 1821 may not be awarded pursuant to 29 U.S.C. § 216); *Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 594-95 (10th Cir. 1992); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 411 (7th Cir. 1999). Accordingly, the Court denies LLF's request for reimbursement of expert costs.

The Court denies the request for $6,921 for clerical overtime paid by the Union. Clerical overtime is unrecoverable as it "results from plaintiff[s'] counsel's staffing decisions." *Ginsberg v. Valhalla Anesthesia Associates, P.C.*, No. 96 CIV. 6462, 1998 WL 19997, at *4 (S.D.N.Y. Jan. 20, 1998).

The Court also denies the request for $9,927 in computer research costs charged by Stroock. *See Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 305 (S.D.N.Y. 2001) ("[C]omputer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost.") (quoting *United States v. Merritt–Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996).

Stroock's request for $270 for "O/S Information Services" is stricken as unexplained. *See Prot. One Alarm Monitoring, Inc. v. Executive Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 210 (E.D.N.Y. 2008) ("[T]he burden is on the moving party to explain and justify the costs.")

The Court finds the remainder of the costs reasonable and substantiated.


III. CONCLUSION

In light of the foregoing discussion, the Court awards LLF $1,831,032 in attorney's fees and $80,664 in costs, for a total award of $1,911,696. The Court also awards $76,300 in attorney's fees and $957 in costs to Stroock, for a total award of $77,257.

In addition, the Court approves the City's unopposed request for service awards of $18,000 for each named plaintiff—Corinthians Andrews, Patricia Williams and Bernice Christopher—in recognition of the time and effort they each expended during the course of this litigation.

The Clerk of Court is directed to enter judgment accordingly.


Dated: New York, New York
     August 3, 2015

SO ORDERED:

Sidney H. Stein, U.S.D.J.